UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| FRANKLIN G. ENDICOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:14CV107 DDN |
| ) | |
| JAMES HURLEY, et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court upon the motion of Franklin Endicott (registration no. 157521), an inmate at Northeast Correctional Center, for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $208.73. See 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. Id.

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $11.33, and an average monthly balance of $1,043.67. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $208.73, which is 20 percent of plaintiff's average monthly balance.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis in either law or in fact." Neitzke v. Williams, 490 U.S. 319, 328 (1989). An action is malicious when it is undertaken for the purpose of harassing litigants and not for the purpose of vindicating a cognizable right. Spencer v. Rhodes, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), aff=d 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." Id. at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. Id. at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. The plaintiff is required to plead facts that show

more than the "mere possibility of misconduct." Id. The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. Id. at 1950, 1951-52.

**The Complaint**

Plaintiff brings this action under 42 U.S.C. § 1983 against eighteen prison officials and medical personnel at Northeast Correctional Center ("NECC"). Defendants are sued in their individual capacity only. Plaintiff has listed his claims in several categories, under the letters A through G. The Court will address each of his claims in turn.

1. Claim A

*Plaintiff's Allegations*

In claim A, plaintiff alleges that he was purposefully denied medical care. Plaintiff was playing dodgeball on January 11, 2014, when he felt his left ankle snap. Defendant Dr. Kendis Archer ordered that plaintiff be sent to the emergency room by ambulance. Plaintiff's ankle was X-rayed at the ER, and he was diagnosed with an avulsion fracture. The ER doctor placed plaintiff's leg in a "splint cast" and told him he needed to see an orthopedic surgeon immediately for follow up. Plaintiff was transferred back to NECC.

When plaintiff arrived at the prison infirmary, he was seen by defendant Pasha Allen, a nurse. Allen told Archer about plaintiff's prescriptions from the ER, but she did not tell him about the referral to the orthopedic surgeon. Plaintiff alleges that she deliberately withheld that information from the prison's doctors because he was involved in a prison riot in 2006. After ten days had passed, plaintiff asked Archer about the referral. Archer found it in the computer and scheduled an appointment.

Plaintiff saw an orthopedic surgeon via teleconference on January 29, 2014. The surgeon told him he did not need surgery, but the doctor also told him that he would need to wear a boot cast for up to six weeks. The surgeon said he would have a boot cast shipped overnight, so it would be there the following day. And the surgeon also told him to use the boot cast to start walking immediately, in order to avoid blood clots.

Plaintiff did not get the boot cast for four days. When he asked the nurses if it was there, nobody had seen it. Finally, after asking again, Pasha Allen gave it to him. Plaintiff asserts that Allen deliberately held the boot cast for four days in order to delay his treatment. He believes this violates his constitutional rights because he could have suffered a blood clot.

Plaintiff filed a grievance regarding Allen's deliberate delays to his medical care. Plaintiff also complained to her supervisors that she had delayed his medical care when he had surgery for varicose veins in 2010.

On March 19, 2014, defendant Larry Allen, a correctional officer and Pasha Allen's husband, took plaintiff to administrative segregation because he was allegedly being investigated for gang activities. Plaintiff alleges that Larry Allen was actually retaliating against him because he had filed a grievance about Pasha Allen. Plaintiff was not able to do the exercising that his orthopedic surgeon wanted him to do while he was in administrative segregation.

Plaintiff alleges that defendant Roschell Davis denied his grievance about Pasha Allen in order to "cover up" Pasha Allen's delay in providing him medical treatment.

Plaintiff has not alleged that he was injured or suffered further harm as a result of the delays in his medical care.

*Analysis*

Plaintiff's First Amendment retaliation claim against Larry Allen states a plausible claim for relief under § 1983. As a result, the Court will direct the Clerk to serve process on Larry Allen.

The Eighth Amendment obligates state prison officials to provide inmates with medical care. Estelle v. Gamble, 429 U.S. 97, 103 (1976).

> To prevail on a claim that a delay in medical care constituted cruel and unusual punishment, an inmate must show both that: (a) the deprivation alleged was objectively serious; and (b) the prison official was deliberately indifferent to the inmate's health or safety. When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment.

Laughlin v. Shiro, 430 F.3d 927, 929 (8th Cir. 2005) (emphasis in original; citation and quotations omitted). Plaintiff has not alleged that he suffered any ill effects from the alleged delays in care caused by Pasha Allen. He only claims that he could have suffered a blood clot or other injury. Therefore, his claims against Pasha Allen do not rise to the level of plausibility required by Iqbal, and these claims must be dismissed under 28 U.S.C. § 1915(e).

Plaintiff does not allege that defendant Dr. Archer failed to treat his injuries at any time. Plaintiff claims that Archer was responsive to his needs and treated him accordingly. As a result, plaintiff's claims against Archer fail to state a claim upon which relief can be granted.

"Only persons who cause or participate in the [constitutional] violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (citations omitted). As a result, plaintiff's claim against Roschell Davis regarding the denial of his grievance against Pasha Allen is frivolous.

2. Claim B

*Plaintiff's Allegations*

In claim B, plaintiff alleges that defendant Dr. Thomas Cabrera was negligent in switching his prostate medication without a blood test or notifying him first. Plaintiff says he had pain and difficulty urinating because of the change. Plaintiff says defendant Lisa Ruby, a correctional officer, would not allow him into morning sick call on August 29, 2014, because he arrived three minutes late. Plaintiff disputes his tardiness. Plaintiff does not state whether he told Ruby what condition he was in or whether he was suffering from pain. Plaintiff saw Dr. Babich on September 20, 2014, and Dr. Babich switched the medication back to what he had been taking before.

*Analysis*

Plaintiff's claims A and B are unrelated and refer to different defendants. Federal Rule of Civil Procedure 20(a)(2) provides: "Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Thus, "Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." George, at 607. Therefore, these claims are not properly joined under Rule 20, and claim B must be dismissed.

Claim B also fails to state a claim for relief. To state a claim for medical mistreatment, plaintiff must plead facts sufficient to indicate a deliberate indifference to serious medical needs. Estelle, at 106. Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. Id. In order to show deliberate indifference, plaintiff must allege that he suffered objectively serious medical needs and that defendants actually knew of but deliberately

disregarded those needs. <u>Dulany v. Carnahan</u>, 132 F.3d 1234, 1239 (8th Cir. 1997). In order to state a claim against Corizon, plaintiff must allege that there was a policy, custom or official action that caused an actionable injury. <u>Sanders v. Sears Roebuck & Co.</u>, 984 F.2d 972, 95-76 (8th Cir. 1993).

Plaintiff specifically pleads negligence against defendant Dr. Cabrera regarding the change of his prostate medication. And his allegations do not demonstrate that Cabrera knew of but disregarded his serious medical needs. Therefore, plaintiff's claim against Cabrera fails to state a claim upon which relief can be granted.

Plaintiff does not allege that he told defendant Ruby about his medical condition. As a result, he has failed to state a claim for deliberate indifference against Ruby.

Plaintiff does not allege that a policy or custom of Corizon was responsible for any injury or deprivation. Therefore his claims against Corizon do not state a claim for relief.

3. <u>Claim C</u>

*Plaintiff's Allegations*

In claim C, plaintiff restates his claim that defendant Ruby denied his access to morning sick call on August 29, 2014. Plaintiff says he filled out an Internal Resolution Request, the first step in the grievance process, and gave it to defendant C. Hoffman for filing. However, Hoffman did not file it on time. Plaintiff says he tried to file a grievance but that defendant Brooke Kurth would not accept it because his IRR was not timely filed. He believes this violated his right of access to the courts and right to due process.

*Analysis*

The allegations and defendants in claim C are unrelated to those in claim A. As a result, claim C must be dismissed because it is not properly joined under Rule 20(a).

Moreover, the Prison Litigation Reform Act requires prisoners to exhaust all "administrative remedies *as are available*." 42 U.S.C. § 1997e(a) (emphasis added). Where administrative remedies are "effectively unavailable," such as when prison officials interfere with an inmate's ability to proceed with the grievance process, the PLRA does not require exhaustion. E.g., Albino v. Baca, 697 F.3d 1023, 1030-31 (9th Cir. 2012). Therefore, defendants C. Hoffman and Brooke Kurth cannot interfere with plaintiff's right to bring a civil action in this Court by refusing to process his grievances, and plaintiff's claim against these defendants fails.

  4. Claim D

*Plaintiff's Allegations*

In claim D, plaintiff claims that he was forced to cell with a gang member while he was in administrative segregation. He claims the doors in the cells made them unsafe if he were to get into a fight with the gang member. He does not claim that they fought or that he suffered any injuries.

*Analysis*

Claim D involves different defendants and is unrelated to claim A. As a result, it will be dismissed as improperly joined under Rule 20(a).

Furthermore, plaintiff does not have a constitutional right to a single man cell. Nor does § 1983 protect prisoners from hypothetical harms, like plaintiff's claims about the doors in administrative segregation. Therefore, plaintiff's allegations in claim D fail to state a cause of action under § 1983.

5. Claim E

*Plaintiff's Allegations*

In claim E, plaintiff alleges that he was denied access to the law library while he was in administrative segregation, from March 19 through August 1, 2014, in violation of his right of access to the courts. Plaintiff claims that defendant Joyce Edwards, the law librarian, would not give him access to law books or to a prison law clerk because he did not have an authorized Qualified Legal Claim.

Plaintiff says he tried to get an authorized Qualified Legal Claim because he wanted to file a motion to recall the mandate in his direct appeal from his criminal conviction, Missouri v. Endicott, 881 S.W. 2d 661 (1994). Plaintiff was also trying to draft a complaint raising the issue in claim A, and he believed that there is a one-year statute of limitations for § 1983 cases.

*Analysis*

Claim E is unrelated to claim A and will be dismissed as improperly joined under Rule 20(a).

Furthermore, "[t]o state a claim [for denial of meaningful access to the courts], inmates must assert that they suffered an actual injury to pending or contemplated legal claims." Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996). Even if the filing of his motion to recall the mandate in his 1994 direct appeal was delayed, plaintiff cannot show actual injury. The Missouri courts do not permit motions to recall the mandate in felony conviction cases because Missouri Supreme Court Rule 29.15 is the exclusive means for relief in felony conviction cases. See Missouri v. Turner, 972 S.W.2d 438, 440 (Mo. Ct. App. 1998). And plaintiff filed the instant action well within Missouri's five-year statute of limitations for personal injury cases. Therefore, plaintiff's claim E fails to state a claim upon which relief can be granted.

6. Claim F

*Plaintiff's Allegations*

In claim F, plaintiff claims that his right to due process was violated because he was held in administrative segregation pending an investigation into alleged "gang activities" but he was never given any information about the findings of the investigation. He says that defendants James Rhodes, George Lombardi, and James Hurley all had a duty to tell him about the nature of the investigation and what the findings were. And he complains that there is no policy directing prison investigators to complete their investigations within a prescribed time frame.

*Analysis*

To state a claim under § 1983 for unconstitutional placement in administrative segregation, a prisoner "must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003). Plaintiff has made no such allegations. E.g., Hemphill v. Delo, 124 F.3d 208 (8th Cir. 1997) (unpublished) (four days locked in housing unit, thirty days in disciplinary segregation, and approximately 290 days in administrative segregation not atypical or significant). As a result, plaintiff's claim F fails to state a claim upon which relief can be granted.

7. Claim G

*Plaintiff's Allegations*

In claim G, plaintiff alleges that he tried to file IRRs and grievances about the delay in his medical care and his placement in administrative segregation but that defendants Brook Kurth and C. Hoffman refused to process his complaints. He says he was therefore denied the opportunity to exhaust his administrative remedies and preserve his claims for federal court.

*Analysis*

This claim fails to state a claim upon which relief can be granted for the same reasons as claim C.

For each of these reasons, all of plaintiff's claims will be dismissed except for plaintiff's retaliation claim against defendant Larry Allen.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $208.73 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that if plaintiff fails to pay the initial partial filing fee within thirty (30) days of the date of this Order, then this case will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to defendant Larry Allen.

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), defendant Larry Allen shall reply to plaintiff's claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that defendants James Hurley, Scott Griggs, Jacob Baker, Alan Earls, George Lombardi, Corizon, Inc., Pasha Allen, Kendis Archer, Thomas Cabrera,

Michelle Kelly, Roschell Davis, Lisa Ruby, Joyce Edwards, Kristin Cutt, C. Hoffman, Brooke Kurth, and James Rhodes are **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that this case is assigned to Track 5B: Prisoner Standard.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 9th day of January, 2015.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE