UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| FRANKLIN G. ENDICOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:14-CV-107 DDN |
| | ) | |
| James Hurley, Warden,; Larry Allen, | ) | |
| LT./F.S.M.; Pascha Allen, LPN; Richard | ) | |
| S. Griggs, Asst. Warden; William Jones, | ) | |
| Deputy Warden; Chantay Godert, Asst. | ) | |
| Warden; Alan Earls, Deputy Div. | ) | |
| Director; Joyce Edwards, Librarian; | ) | <u>JURY TRIAL DEMANDED</u> |
| Tyree Butler, F.U.M.; James Rhodes, | ) | |
| Investigator; Jacob Baker, CO II; Dr. | ) | |
| Tomas Cabrera, MD; Corizon | ) | |
| Health Inc.; Lisa Ruby, CO I; | ) | |
| George Lombardi, Director; Captain | ) | |
| Calvin; CO I Reid; CO I Avery; Lt. | ) | |
| Cutt; Kristen Cutt, CCM; Roschell | ) | |
| Davis Norton, Health Service | ) | |
| Administrator; and Corizon, L.L.C., | ) | |
| f/k/a Correctional Medical Services, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

## <u>FIFTH AMENDED COMPLAINT</u>

Comes now Plaintiff Franklin G. Endicott, by and through his court-appointed counsel,

Mary L. Reitz of Greensfelder, Hemker and Gale, P.C., and for his causes of action and claims

against Defendants, respectfully states as follows:

## <u>PARTIES</u>

1.    Plaintiff Franklin G. Endicott (No. 157521) is an individual who resides at the

Northeast Correctional Center ("N.E.C.C."), 13698 Airport Road, Bowling Green, Missouri,

63334 in Pike County, Missouri. Plaintiff is and all times pertinent to this litigation was an

inmate in the Missouri Department of Corrections.

2.      Defendant James Hurley is and was at all times pertinent to this litigation the Warden at N.E.C.C.

3.      Defendant Larry Allen is currently the food service manager at N.E.C.C. and was at all times pertinent to this litigation a Lieutenant at N.E.C.C.

4.      Defendant Pascha Allen, L.P.N., ("Defendant Nurse Allen') is a licensed practical nurse in the State of Missouri who is an employee, agent, or servant of Corizon and/or Corizon, L.L.C.  Defendant Nurse Allen provides medical care on behalf of Corizon and/or Corizon, L.L.C. to inmates at the N.E.C.C.

5.      Defendant Richard Scott Griggs ("Defendant Scott Griggs") is and was at all times pertinent to this litigation an Assistant Warden at N.E.C.C.

6.      Defendant William Jones is and was at all times pertinent to this litigation Deputy Warden at N.E.C.C.

7.      Defendant Chantay Godert is and was at all times pertinent to this litigation an Assistant Warden at N.E.C.C.

8.      Defendant Alan Earls is and was at all times pertinent to this litigation the Deputy Division Director of The Missouri Adult Institutions.

9.      Defendant Joyce Edwards is and was at all times pertinent to this litigation the Librarian at N.E.C.C.

10.      Defendant Tyree Butler is and was at all times pertinent to this litigation a Function Unit Manager ("FUM") at N.E.C.C.

11.      Defendant James Rhodes is and was at all times pertinent to this litigation an Investigator at N.E.C.C.

12.     Defendant Jacob Baker is and was at all times pertinent to this litigation a CO II at N.E.C.C.

13.     Defendant Dr. Cabrera ("Defendant Dr. Cabrera") is a physician licensed in the State of Missouri who is an employee, agent or servant of Corizon and/or Corizon, L.L.C.  In his capacity as an employee, agent or servant of Corizon and/or Corizon, L.L.C., Defendant Dr. Cabrera provides medical care to offenders incarcerated at N.E.C.C.

14.     Corizon ("Corizon") is a Delaware corporation registered to do business in the State of Missouri.  Corizon, formerly known as Correctional Medical Services, Inc. a/k/a CMS, contracts with the Missouri Department of Corrections to provide medical care to inmates.  As part of this contract Corizon provides medical services at N.E.C.C.  At all times mentioned herein, Corizon held itself out as a professional health care provider with specialized expertise in providing medical care in correctional institutions.  At all times relevant, Corizon acted by and through its agents, servants and employees, including but not limited to, Defendant Dr. Cabrera, Defendant Nurse Allen, Nurse Melanie Powell, and Nurse Linda Wiley.

15.     Defendant Lisa Ruby is and was at all times pertinent to this litigation a Corrections Officer I ("CO I") at N.E.C.C.

16.     Defendant George Lombardi is and was at all times pertinent to this litigation the Director of the Missouri Department of Corrections, and responsible for the care and treatment of the inmates housed by the Missouri Department of Corrections.

17.     Defendant Calvin is and was at all times pertinent to this litigation a Captain at N.E.C.C.

18.     Defendant Reid is and was at all times pertinent to this litigation a CO I at N.E.C.C.

19.    Defendant Avery is and was at all times pertinent to this litigation a CO I at N.E.C.C.

20.    Defendant Cutt is and was at all times pertinent to this litigation a Lieutenant at N.E.C.C.

21.    Defendant Kristen Cutt is and was at all times pertinent to this litigation a Caseworker, CCM, at N.E.C.C. and at times was an acting Functional Unit Manager and committee chair.

22.    Defendant Roschell Davis Norton was the Health Services Administrator at N.E.C.C. for at least a portion of 2014.

23.    Defendant Corizon, L.L.C. (Corizon, L.L.C.) is a Missouri Limited Liability Company which upon information and belief was formerly known as Correctional Medical Services, Inc. a/k/a CMS.  Corizon LLC f/k/a CMS, Inc. contracts with the Missouri Department of Corrections.  As part of this contract, Corizon, L.L.C. provides medical services at N.E.C.C. At all times mentioned herein, Corizon, L.L.C. held itself out as a professional health care provider with specialized expertise in providing medical care in correctional institutions.  As all times relevant, Corizon, L.L.C. acted by and through its agents, servants and employees, including but not limited to Defendant Dr. Cabrera, Defendant Nurse Allen, Nurse Melanie Powell, Nurse Dennece Ward and Nurse Linda Wiley.

24.    Upon information and belief Corizon and Corizon, L.L.C. are legally related entities.

25.    Upon information and belief, all of the Defendants named here in reside in the State of Missouri.

26.    Each of the Defendants named herein acted individually.

**JURISDICTION AND VENUE**

27.　This Court has original jurisdiction over Plaintiff's claims under 42 U.S.C. § 1983 and the First, Eighth and Fourteenth Amendments to the United States Constitution pursuant to 28 U.S.C. § 1343.

28.　Venue properly lies in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.  All Defendants are either residents of the State of Missouri or otherwise have sufficient contacts with this District to justify them being fairly brought into this District.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

**Varicose Veins And Transient Ischemic Attacks**

29.　Plaintiff was diagnosed with symptomatic varicose veins in his right leg during or before July 2010 by Victor Phillips, M.D.  Dr. Phillips recommended a duplex ultrasound.  He noted that Plaintiff would likely need an ablation procedure on the veins.

30.　Upon information and belief, Dr. Phillips faxed orders to N.E.C.C. on or about September 13, 2010, which reflected that Plaintiff was to be sent to his procedure with Valium and a numbing gel.

31.　According to a "late entry" made in Plaintiff's medical record by an unidentified nurse, now believed to be Dennece Ward, R.N., acting as the agent, servant or employee of Corizon and/or Corizon, L.L.C., the office of Dr. Phillips was told that a schedule II narcotic could not be sent with the patient.

32.　According to the entry, Corizon and/or Corizon, L.L.C., by and through its nurse, now believed to be Dennece Ward, R.N., made no efforts to determine how to supply Plaintiff

with the medication ordered by Dr. Phillips for the day of his procedure or to obtain an order for an appropriate substitute.

33.     On or about September 17, 2010, Plaintiff filed a medical services request form because his right calf was swollen, hardened, red, warm, and painful.

34.     On or about September 17, 2010, records reveal that Defendant Dr. Cabrera requested an ultrasound Doppler be approved.  He noted that Plaintiff was already approved for a vein ablation by Dr. Phillips, but Dr. Phillips required an ultrasound before proceeding with the procedure.

35.     On or about September 20, 2010, Plaintiff was seen by a nurse in sick call. According to the note, the nurse's assessment was that the Plaintiff had phlebitis.  The notes indicate that Defendant Dr. Cabrera ordered that Plaintiff not work, get rest, ice his leg as needed and be given aspirin.

36.     Upon information and belief, no action was taken by Corizon and/or Corizon, L.L.C., by and through its agents, servants and employees, to obtain urgent radiological assessment of the leg.

37.     On or about September 29, 2010, Plaintiff was transferred to Audrain Medical Center where he underwent a venous Doppler of his right leg which revealed a clot just above his ankle.  The results of the Doppler are contained in the chart from Corizon and/or Corizon, L.L.C. for Plaintiff so the results of this examination, which revealed a life threatening clot were available to all of the agents, servants and employees of Corizon and/or Corizon, L.L.C. involved in Plaintiff's care at N.E.C.C., including but not limited to Defendant Dr. Cabrera, Nurse Powell, Nurse Wiley, and others.  Upon information and belief, Defendant Nurse Allen was a Chronic Care nurse at N.E.C.C. at this time and knew or should have known of the blood clot.

38.     On or about October 1, 2010, Plaintiff underwent a partial vein ablation procedure at Dr. Phillips' office in Jefferson City, Missouri.  Although Dr. Phillips had submitted an order for medication to be sent with Plaintiff to his procedure, no efforts were made by Corizon and/or Corizon, L.L.C. to ensure that this medication was provided to Plaintiff or to the physician's office in advance of the procedure.  As a result, Plaintiff did not receive the pre-operative medication ordered by Dr. Phillips and the procedure occurred without the benefit of that medication.

39.     Plaintiff's procedure was therefore more painful and anxiety producing than it otherwise would have been.  Upon information and belief, the treatment was not concluded on October 1, 2010, due at least in part to the absence of the medications Dr. Phillips had ordered for use during the procedure.

40.     Plaintiff was scheduled for a further procedure to treat his varicose veins with Dr. Phillips on October 15, 2010.  The transportation officers assigned to take Plaintiff to the appointment were C/O I Avery and C/O I Reid.  Upon information and belief, these officers were aware of the blood clot in Plaintiff's leg and that he was being transferred for surgery on the leg in which the blood clot was located.  C/O I Avery and C/O I Reid deliberately delayed the transfer of Plaintiff to his appointment and the procedure had to be rescheduled, by not leaving timely and needing to return to the institution to obtain plastic cuffs which they knew were needed when they originally departed.

41.     Further, Captain Calvin and Lt. Cutt contributed to the delay in the departure for Plaintiff's surgical appointment by intentionally preventing C/O I Avery and C/O I Reid from preparing for and leaving for their assignment to transfer Plaintiff by calling them into an office area to prevent them from leaving with Plaintiff prior to count time and holding them there until

well after the count was cleared. Thereby deliberately preventing Plaintiff from leaving in time to arrive for his scheduled surgical appointment which they knew was for treatment of the blood clot in Plaintiff's leg which can be a life-threatening condition. Leaving Plaintiff with a blood clot in his leg causing pain and emotional distress in that Plaintiff thought the blood clot was moving and causing strokes that could result in his disfigurement, injury or death.

42. Due to the failure of the transportation officers to arrange to leave with Plaintiff in a timely fashion so as to avoid unnecessary delays, Plaintiff's second vein ablation procedure was finally rescheduled for November 5, 2010.

43. Prior to the procedure scheduled for October 15, 2010, no health care provider with Corizon and/or Corizon, L.L.C. made any efforts to arrange for the medications that Dr. Phillips had ordered for the first procedure to be available at the October 15, 2010, procedure. Therefore, Corizon and/or Corizon, L.L.C., by and through its agents, servants and employees, knowingly sent Plaintiff to his second vein ablation procedure without the medication recommended by Dr. Phillips manage his pain and anxiety.

44. On October 21, 2010, Plaintiff reported to the infirmary with a self-reported emergency because he had "tingling" of his left hand and fingers and numbness of his face. Plaintiff advised the nurse, Melanie Powell, L.P.N., an agent, servant or employee of Corizon and/or Corizon, L.L.C., that he had a blood clot in his left leg and was concerned it was moving. Despite being aware that Plaintiff had a known blood clot in his lower left extremity, Nurse Powell assessed the situation as "non-emergent, but urgent" and scheduled Plaintiff to be seen at the next available sick call.

45. On October 22, 2010, Plaintiff appeared at the sick call and was again seen by a nurse, Linda Wiley, L.P.N., an employee, agent or servant of Corizon and/or Corizon, L.L.C. At

this visit Plaintiff reported that he had an episode the prior evening in which he had numbness to the top upper left side of his lip and his left upper arm down to his fifth digit. He stated he was dizzy and had a headache with this event. Corizon and/or Corizon, L.L.C. by and through its agent, servant and employee, Nurse Wiley, referred Plaintiff to Chronic Care, but took no other action to treat Plaintiff, obtain immediate physician input, or test to rule out that Plaintiff was having a stroke, a transient ischemic attack ("TIA"), or other complication or condition related to the blood clot in his left lower extremity.

46.     On October 22, 2010, an unidentified nurse spoke with Plaintiff's mother and according to the chart advised that the "valium will be mailed to Dr. Phillips and they will administer the medication. Cream is available and will go with him on next outcount." According to the record, Plaintiff's mother expressed concern that Plaintiff had expressed symptoms of a TIA yesterday and nothing was done. According to the record, the unidentified nurse advised Plaintiff's mother that her son's vital signs were normal and he had been referred to the "CC", presumably Chronic Care at N.E.C.C.

47.     On November 3, 2010, Plaintiff was again seen by Nurse Wiley. Plaintiff reported that he had an episode of feeling flushed and pressure to the brain yesterday evening. He told the nurse that his vision had become dim, his hearing faded, and "felt like he was in a 'void'." Plaintiff reported the pressure in his skull and against his eyes remained. When the Plaintiff reported that he had not seen a physician since his initial complaints of potential stroke-like symptoms on October 21, 2010, the nurse informed him that he had an appointment with the doctor November 5, 2010, and encouraged him to await the appointment. Corizon and/or Corizon, L.L.C. by and through its agent, servant or employee, Nurse Wiley, again took no other action to treat Plaintiff, obtain immediate physician input, or test to rule out that Plaintiff was

having a stroke, a transient ischemic attack ("TIA"), or other complication or condition related to the blood clot in his left lower extremity.

48. On November 5, 2010, Plaintiff saw Dr. Phillips. Dr. Phillips performed a second venous ablation procedure, which upon information and belief was performed with the previously prescribed valium and numbing cream. During this visit Dr. Phillips recommended a Doppler ultrasound to follow-up from Plaintiff's vein ablation procedure. He also recommended a carotid Doppler to follow-up on Plaintiff's TIA symptoms.

49. On November 8, 2010, Defendant Dr. Cabrera apparently reviewed Dr. Phillips' recommendations and referred them on to the "RMD" for follow-up. Although the request was approved on or about November 8, 2010, the carotid Doppler was not scheduled and did not occur until some 10 days later on November 18, 2010. The follow-up ultrasound was delayed until on or about December 2, 2010 due to an alleged error in obtaining a "referral."

50. Plaintiff was therefore left to worry whether the off and on neurological symptoms he was experiencing were possible indicators of an oncoming stroke or some other yet undiagnosed serious condition for 10 days. He was further required to wait in fear that he still had a potentially life threatening blood clot until at least December 2, 2010 when the follow-up Doppler of his left leg was finally completed.

**Fractured Leg**

51. On January 11, 2014, Plaintiff injured his right ankle. Plaintiff was sent by ambulance to Hannibal Regional Hospital Emergency Department where he was diagnosed with an avulsion fracture of his right ankle. Per policy at NECC, Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, and/or Defendant Chantay Godert were required to personally approve Plaintiff's transfer from NECC to Hannibal Regional Hospital. The discharge

instructions from Hannibal Regional Hospital included, but were not limited to, that Plaintiff was to follow-up with Dr. Curtis Burton, an orthopedic specialist, in five days.

52.    On January 11, 2014, when Plaintiff returned to N.E.C.C., Defendant Nurse Allen performed the Medical Outcount return.  She noted only some of the orders received, and that Plaintiff was to follow-up with Defendant Dr. Cabrera within 10 days.  Defendant Nurse Allen did not note that the emergency department had recommended follow-up with Dr. Burton, an orthopedist, in five days.

53.    Upon information and belief, after consultation with Defendant Nurse Allen on January 11, 2014, Dr. Kendis F. Archer placed the order for the tramadol and Ibuprofen.  There was nothing in the order from Dr. Archer about follow-up with Defendant Dr. Cabrera or cancelling the referral to Dr. Burton, the orthopedic specialist.

54.    Upon information and belief, Defendant Nurse Allen failed to provide the report of the Emergency Department to Dr. Archer upon his request.  Upon information and belief, Defendant Nurse Allen reported to Dr. Archer that she would provide the report to Defendant Dr. Cabrera, but failed to do so.  Defendant Nurse Allen's deliberate and intentional failure to provide the Emergency Report to either Dr. Archer or Defendant Dr. Cabrera caused a delay in Plaintiff receiving treatment for the fracture of his right ankle.  This delay caused Plaintiff unnecessary pain, risk of further injury due to improper healing, immobility which increases the risk of blood clots that could be life threatening and the use of pain medications that due to Plaintiff's pre-existing medical conditions carried an increased risk of organ damage.  Further, this delay in treatment caused such pain and immobility that interfered with Plaintiff's activities of daily living.

55.     On January 21, 2014, Plaintiff saw Dr. Archer for medication refills and to follow-up on his Emergency Department visit on January 11, 2014.  Dr. Archer ordered a referral to an orthopedic specialist on January 21, 2014.

56.     On January 29, 2014, 18 days after Plaintiff fractured his ankle and the emergency department physician recommendation that he be seen by a specialist within 5 days, Plaintiff saw Dr. Galbraith via a telemedicine visit.  Dr. Galbraith ordered a boot cast to treat the fracture.  Upon information and belief, this boot cast was to be shipped via next day express to N.E.C.C. for immediate use by the Plaintiff.

57.     On February 4, 2014, Plaintiff returned to sick call inquiring about his boot cast. Upon information and belief, while Plaintiff was discussing the failure to receive the boot cast with the sick call nurse, Defendant Nurse Allen reportedly said she knew something about the boot cast.  Defendant Nurse Allen and the other nurse left the room and returned with the cast. The x-ray technician fitted the boot and it was given to Plaintiff to wear.

58.     On March 5, 2014, Plaintiff saw Dr. Galbraith for follow-up.   Dr. Galbraith recommended that Plaintiff remain in the boot cast for two more weeks and then wean out of it and begin strengthening exercises.

59.     On March 19, 2014, the day Plaintiff was to begin weaning out of the boot cast, Plaintiff's boot cast was taken from him by staff.  Thus Plaintiff was prevented from following the directions of Dr. Galbraith for the proper recovery from his ankle fracture to wean out of the boot cast.

60.     Plaintiff filed Grievance #NECC 14-136 regarding the conduct of Nurse Allen asserting that she was retaliating and conspiring against him by delaying and denying medical care.  Grievance #NECC 14-136 outlined that pattern of behavior of Defendant Nurse Allen and

her husband, Lieutenant Larry Allen's efforts to conspire against him and deliberately deny him medical care both before and after Defendant Nurse Allen was informed of the alleged "no tolerance" policy for delaying or denying care to Plaintiff and other inmates. Plaintiff's #NECC 14-136 also specifically discusses Defendant Lieutenant Larry Allen's retaliation against Plaintiff for making complaints against Defendant Nurse Allen by having him placed in administrative segregation on a false claim for alleged "gang activity." Per policy, Defendant Corizon and/or its staff is to inform Defendant Warden Hurley of such complaints so they are investigated.

61.     Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert and/or other NECC staff acting in their stead, must personally review all Grievance responses filed and received by Offenders. Plaintiff received the response of Defendant Rochelle Davis to Grievance #NECC on July 25, 2014. Therefor these defendants were personally involved in and aware of the deliberate indifference to Plaintiff's serious medical needs and the Plaintiff's claims of retaliation by Defendant Pascha Allen and Defendant Lieutenant Larry Allen and chose to take no action to correct the First and Eighth Amendment violations of Plaintiff's rights that this conduct constituted.

**Prostate and Blood Pressure Medication**

62.     Upon information and belief, it is the duty of Corizon and/or Corizon, L.L.C.'s employees including, but not limited to, Defendant Nurse Allen, as the chronic care nurse, to schedule Plaintiff and other inmates for recommended lab work and physician visits. However, upon information and belief, Plaintiff was not timely scheduled for his visits.

63.     On or about August 1, 2014, Defendant Dr. Cabrera renewed Plaintiff's medications and, without seeing Plaintiff, changed his medication from Doxazosin Mesylate, a

formula medication that treats both high blood pressure and prostate swelling, to Flomax, a medication that only treats prostate swelling.

64.     Upon information and belief, this change in medication by Defendant Dr. Cabrera without seeing the Plaintiff and discussing his history reveals a deliberate indifference to Plaintiff's medical needs especially since Mo. Rev. Stat. § 334.100.2(4)(h) prohibits prescribing medication without examining a patient and since Dr. Cabrera failed to make any changes in Plaintiff's other blood pressure medications or monitoring when he removed the Doxazosin Mesylate.

65.     On or about September 5, 2014, Plaintiff reported to Nurse Linda Wiley that he needed to see a physician because his prostate medicine had been changed and was not working so he was having difficulty urinating.  Upon information and belief, Nurse Wiley agreed to tell Defendant Nurse Allen.  Upon information and belief, neither Nurse Wiley nor Defendant Nurse Allen discussed Plaintiff's complaints with a physician or scheduled an appointment for him with a physician.

66.     On or about September 20, 2014, Plaintiff saw Dr. Glen Babich for a cardiology appointment and his prostate medication was finally changed.  However, Plaintiff was not able to resume his original prostate medication until September 30, 2014.  It took 7-10 days for the medication to reduce the swelling in Plaintiff's prostate and relieve his symptoms.

67.     Due to the failure of Corizon and/or Corizon, L.L.C., by and through its employees, Nurses Linda Wiley and Defendant Nurse Allen, Plaintiff was denied a timely visit with Defendant Dr. Cabrera resulting in a change of prostate medication that caused Plaintiff to have difficulty urinating, a painful bladder, lack of sleep, emotional stress, and irritability.  These symptoms interfered with Plaintiff's activities of daily living. Further, during the time that

Plaintiff was on the Flomax, his blood pressure control was at risk putting him at greater risk of heart disease, stroke and myocardial infarction.

68.     Upon information and belief, Corizon and/or Corizon, L.L.C. changed its policies so that formula medications could no longer be prescribed for inmates.   Further, upon information and belief, Doxazosin Mesylate is a formula medication.

69.     This policy change resulted in Defendant Dr. Cabrera altering the medication prescribed for Plaintiff's prostate.

70.     The change in policy regarding formula medications was made with deliberate indifference to the specific medical needs and potential suffering of inmates, such as Plaintiff, being successfully treated by a formula medication and for who a non-formula medication might not work.

71.     On December 3, 2015, Defendant Corizon and/or Corizon, L.L.C., by and through its agents, servants and employees, against ordered plaintiff's medication changed from Doxazosin Mesylate to Terazosin, another medication that treats only prostate swelling and not high blood pressure, again exposing the plaintiff to increased risk of heart disease, stroke and myocardial infarction due to a lack of full control of his high blood pressure.  This change in medication was made with deliberate indifference to the specific medical needs of Plaintiff.

**Prison Policy Relating To Time Transfer To Sick Call**

72.     Upon information and belief, the policy that Corizon and/or Corizon, L.L.C. instituted as part of fulfilling its contractual agreement with the Missouri Department of Corrections provides inmates 15 minutes to move from their housing unit to sick call and turn in their Medical Services Request form.

73.     Upon information and belief, N.E.C.C. Warden James Hurley instituted a policy at N.E.C.C. which allowed prisoners only 10 minutes to move from their housing unit to sick call at the beginning of the sick call time slot assigned for their housing unit.

74.     Upon information and belief, N.E.C.C. Warden James Hurley was aware of the 15 minute time frame for movement in the Corizon and/or Corizon, L.L.C. policy.

75.     Due to the excessively short time period and the controlled movement in the prison environment at N.E.C.C., the Warden's 10 minute policy resulted in Plaintiff being denied access to sick call on or about August 29, 2014 by Defendant C/O I Lisa Ruby even though he arrived within the time frame allowed by the Corizon and/or Corizon, L.L.C. policy.  Plaintiff attempted to explain to Defendant C/O Ruby that he needed to turn in his Medical Service Request form to report that his prostate medication was no working, but she advised his ten minute window had expired and if he did not leave to return to his housing unit, he would be written up and receive a conduct violation for creating a disturbance.

76.     The inability to be seen in sick call on or about August 29, 2014 prevented Plaintiff from reporting that the change in his prostate medicine had caused his prostate to swell causing him difficulty urinating, pain, and discomfort.

77.     Upon information and belief, C/O I Ruby was aware that by enforcing the 10 minute movement window that Warden Hurley had instituted, she was denying inmates access to health care regardless of their medical condition.  Further it denied Plaintiff access to nurse sick call daily from August 29 through December 5, 2014.

78.     Plaintiff filed Grievance #NECC 14-1413 asserting that the Warden's 10 minute movement window for access to sick call and C/O I Ruby's failure to allow Plaintiff the right to submit his Medical Services Request Form (MSR), denied him access to medical care.  This

caused continued swelling of Plaintiff's prostate and resulted in continued difficulty urinating, a painful bladder, lack of sleep, emotional stress, and irritability. Defendant Hurley personally answered Grievance #NECC 14-1413 acknowledging that Plaintiff was denied access to sick call due to the policy, but the policy would not be changed. This was true even though from Grievance #NECC 14-1319, to which the Warden also personally responded, he was aware of the issues Plaintiff was having with his prostate medication and the symptoms which it was causing.

79. Furthermore, Defendant Earls upheld Defendant Hurley's 10 minute window to access sick call after reviewing Plaintiff's evidence showing the continued difficulty urinating, a painful bladder, lack of sleep, emotional stress, and irritability it caused Plaintiff.

80. As the Director of the Missouri Department of Corrections, George Lombardi has a duty to provide inmates in Missouri prisons, including N.E.C.C., access to health care services. When contracting for those services with another entity, such as Corizon and/or Corizon, L.L.C., Defendant Lombardi has an obligation to see that the contract obligations of both Corizon and/or Corizon, L.L.C. and the prisons within the Missouri Department of Corrections are met.

81. Upon information and belief, Defendant Lombardi is in contradiction of his responsibilities as the Director of the Missouri Department of Corrections because he has made no meaningful attempt to correct the violations of the contract between the Missouri Department of Corrections and Corizon and/or Corizon, L.L.C. at N.E.C.C.

**Knowledge Of Defendant Roschell Davis Norton**

82. Plaintiff filed multiple Informal Resolution Requests ("I.R.R.s") between September 2010 and the present to address the frequent deliberate indifference to his medical

needs which included complaints against Defendant Nurse Allen. These I.R.R.s have been continually denied with little or no action has been taken to effect change at N.E.C.C.

83. Upon information and belief, Defendant Roschell Davis Norton participated in the review and response to some of the I.R.R.s which Plaintiff made regarding the care by Defendant Nurse Allen.

84. As a result of the I.R.R.s, Defendant Roschell Davis Norton knew or should have known of the deliberate indifference of Corizon and/or Corizon, L.L.C. staff at N.E.C.C., including, but not limited to, that of Defendant Nurse Allen to the medical needs of Plaintiff.

**Transfer To Administrative Segregation**

85. Upon information and belief, on or before March 19, 2014, as a result of the grievances Plaintiff filed and complaints he made to nursing supervisors about Defendant Nurse Allen, she was put on notice not to deny Plaintiff medical care or delay his access to it. Upon information and belief, this notice was placed in Defendant Nurse Allen's file on or before March, 19, 2014.

86. Despite objections by other Correctional Officers that Plaintiff was not involved with the gangs, at the insistence of Defendant Larry Allen, the husband of Defendant Nurse Allen, Plaintiff was included among 19 prisoners placed in Administrative Segregation under investigation by Defendant James Rhodes for gang "activity" on or about March 19, 2014. Per Missouri Department of Corrections ("MDOC") policy, Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, and/or Defendant Chantay Godert must personally approve Plaintiff being placed in TASC under investigation by Defendant James Hurley's AIO Defendant James Rhodes. Such action was taken in retaliation for Plaintiff filing grievances.

87.     Defendant Larry Allen further arranged to be the one who placed Plaintiff in cuffs for transfer to Administrative Segregation.

88.     During the cuffing of Plaintiff for transfer to Administrative Segregation, Defendant Allen treated Plaintiff in a manner intended to instill fear and provoke a reaction.

89.     Upon information and belief, Defendant Allen arranged to have Plaintiff escorted to his wife, Defendant Nurse Allen, in cuffs for his vital signs check before being housed in Administrative Segregation.

90.     Upon information and belief, this was done in an effort to retaliate against Plaintiff for the grievances that he filed about Defendant Nurse Allen.

91.     Prior to his transfer to Administrative Segregation, Plaintiff was on honor status and was afforded the additional privileges and activities that all inmates on such status were provided.

92.     All of the privileges provided to inmates on honor status were denied to Plaintiff due to his transfer to Administrative Segregation.

93.     Upon being transferred to Administrative Segregation, Plaintiff was also stripped of all of the privileges available to similarly situated inmates in the general population.

94.     While in Administrative Segregation, Plaintiff had no way to accomplish physical therapy for his ankle.

**Denial Of Meaningful Hearing Regarding Placement In Administrative Segregation**

95.     Upon information and belief, while in Administrative Segregation, Function Unit Manager (F.U.M.) Tyree Butler, Defendant James Hurley, Defendant William Jones, and Defendant Chantay Godert deprived Plaintiff of his statutorily-protected liberty interest, when they refused to provide Plaintiff with a review hearing concerning the incident which resulted in

his being placed in H.U. 1 under a T.A.S.C. order, within five working days, as mandated under the Mo. Rev. Stat. § 217.375.1.

96.     Upon information and belief, Plaintiff was not taken before the classification committee until March 28, 2014, nine days after being placed in Administrative Segregation.

97.     Upon information and belief, at this "hearing" Plaintiff was not afforded an opportunity to inquire about the reasons for his transfer to Administrative Segregation.  He was told only that the incarceration in Administrative Segregation was due to a pending investigation by Defendant James Rhodes.

98.     Upon information and belief, Plaintiff was told that the requirement of a hearing within five days did not apply to him because he had not received a conduct violation.

99.     At the March 28, 2014 appearance before the classification committee, Plaintiff was assigned to 30 days in Administrative Segregation and provided a review date of April 25, 2014. The Administrative Segregation Committee review hearing failed to identify the conduct rule violation being investigated that led to Plaintiff being assigned to Administrative Segregation pending investigation or what conduct plaintiff engaged that was a threat to the security of the institution.  All other Offenders are provided this information under these circumstances.

100.    On April 25, 2014, Defendant Kristen Cutt participated in Plaintiff's purported 30-day review hearing. On May 23, 2014, June 20, 2014, and July 18, 2014, Defendant Tyree Butler participated in additional purported 30-day review hearings.  At each hearing Plaintiff was summarily informed that the investigation by Defendant Rhodes was not completed and that he would remain in Administrative Segregation until it was finished.

101.     Upon information and belief, the decision to place Plaintiff in Administrative Segregation and the decisions to keep him there were all approved by Defendant Warden Hurley.

102.     Upon information and belief, the decisions to keep Plaintiff in Administrative Segregation were also approved by Defendant Deputy Warden Jones and Defendant Assistant Warden Scott Griggs.

103.     Upon information and belief, the initial decision to keep Plaintiff incarcerated in Administrative Segregation made at the March 28, 2014 appearance before the classification committee was also approved by Assistant Warden Godert.

104.     Upon information and belief, Plaintiff was not released from Administrative Segregation until August 1, 2014.

105.     Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant Tyree Butler and Defendant James Rhodes personally kept Plaintiff assigned to Administrative Segregation from March 19, 2014 through August 1, 2014 in violation of Plaintiff's Due Process rights knowing their actions forced plaintiff to remain in a cell with a cellmate with a steel grate welded to the inside of the cell door.

**Failure To Have Policies Defining "Gang," "Gang Member" Or "Gang Activity"**

106.     Upon release from Administrative Segregation, Plaintiff was told only that Defendant Rhodes' investigation was concluded. Plaintiff was not provided an institutional rule that he allegedly violated, what conduct he allegedly engaged in that created a continuing threat to the security and good order of the institution, or what conduct or individuals to avoid in the future to keep from being placed in Administrative Segregation again.  Plaintiff was provided no definition of what conduct constitutes "gang affiliation" or "gang activity" so he can protect himself from being wrongly identified with a gang in the future.

21

107.    Defendant Warden Hurley, Defendant Director Lombardi, Defendant Deputy Division Director Earls, and the other administrative personnel have failed to establish a uniform definition of "gang affiliation" or "gang activity," or a policy requiring a clear statement of what conduct or rule violation is the basis for an investigation and how that conduct or rule violation creates a risk to the ongoing safety and security of the institution.  These failures created an environment in which "pending investigations" were used as a pretext for violating the rights to due process and equal protection of offenders, including specifically Plaintiff.  Plaintiff's rights to due process and equal protection were violated by the prolonged stay in Administrative Segregation without ever being told what conduct he engaged in that resulted in his incarceration there, information that other offenders are routinely provided.

108.    Upon information and belief, Plaintiff was included in the "investigation" as retaliation for his complaints against Defendant Nurse Allen, the wife of Defendant Larry Allen, and other prison personnel.

**Failure To Provide Findings And Conclusions Of The Investigation**

109.    Upon information and relief, Plaintiff's file references a pending investigation for gang activities, but contains no finding that the allegations that he is or was a "gang member" or involved in "gang activities" were false.  Defendant Rhodes provided no summary of the investigation or statement of his findings in Plaintiff's file.  Plaintiff is not a "gang member" and does not participate in "gang activity."  No evidence to the contrary has been produced.

110.    Under Mo. Rev. Stat. § 217.375.2 the Deputy Division Director Alan Earls and Chief of Custody, Warden James Hurley, shall keep records of all offenders confined in Administrative Segregation, the reason for such confinement and any other information the

Division Director requires. Upon information and belief the absence of any conclusion to the investigation in Plaintiff's file is proof of the violation of § 217.375.2.

111. Under the circumstance, not only has the incarceration in Administrative Segregation itself violated Plaintiff's rights to due process and equal protection, but the Defendants have created a record which will result in a continuing violation of Plaintiff's rights to due process and equal protection in that it will adversely impact the way he is treated in prison, by the parole board and when released from incarceration.

**Steel Grate On Administrative Segregation Cell Doors And Forced Cell Sharing With Known "Gang Members"**

112. Upon transfer to Administrative Segregation, Plaintiff was placed in a cell with a door constructed of solid steel, with a solid glass window 5 inches and 18 inches tall. The inside of these solid steel cell doors have been modified by welding eleven pieces of steel to the inside of each door. These steel pieces are 1/8 inch wide, 2 inches deep, with a 45 degree angle cut in the top and bottom which protrude from the inside of each cell door. These eleven steel slats angled horizontally at about chest level to the floor, are ideally placed to easily penetrate a human skull, causing death or serious facial skull fracturing, if an offender's head was slammed into the steel slats.

113. Upon information and belief, Defendants Warden James Hurley, Deputy Division Director Alan Earls, and Director George Lombardi permitted or required the steel slats to be placed on the inside of these doors.

114. The presence of the steel slats on the inside of the cell doors in Administrative Segregation violates the rights of inmates to be free from cruel and unusual punishment especially given that N.E.C.C. often places two men in cells in Administrative Segregation since there is no legitimate penological purpose to the steel slats.

115.    Upon information and belief, the only restriction on who is housed together in a cell in Administrative Segregation is that the potential cellmates are not already listed as known enemies. This practice continues and results in numerous assaults within these cells.  All of the defendants are personally aware of this and have taken no corrective action to either, use the classification system to determine Offender compatibility to be cellmates and to remove the steel grate from inside the cell doors in Housing Unit 1, the Administrative Segregation Unit.

116.    When Plaintiff arrived in Administrative Segregation, he refused to be double celled with any known gang member because of the danger created by the steel slats on the inside of the doors.  Plaintiff made all NECC staff working in Housing Unit 1, including Defendants Lieutenant Cutt and Sergeant Baker, aware of the serious threat that the cell doors made to his life and that of his potential cellmate.

117.    Upon information and belief, as a result of his failure to agree to be double celled with a known gang member, Plaintiff was physically coerced into agreeing to be placed in a cell with a gang member on more than one occasion.

118.    Upon information and belief, during his stay in Administrative Segregation, at least three declared gang members refused to be housed with Plaintiff in Administrative Segregation between March 19, 2014 and August 1, 2014.  Upon information and belief, some, if not all, of these known gang members declared Plaintiff their enemy.

119.    Upon information and belief, Plaintiff was housed with a non-gang member for only part of his stay in Administrative Segregation and in a single cell for an even briefer period between March 19, 2014 and August 1, 2014.  This was due to the conduct of Defendant Lieutenant Cutt and Defendant Sergeant Baker, who in retaliation for Plaintiff filing grievances against Corizon and NECC Staff deliberately refused to follow protocols and continued to place

Plaintiff in cells with known gang members, with full knowledge of the added threat to Plaintiff's safety from the steel grate on the inside of the cell door.

120.     Upon information and belief, on or about July 13, 2014, Defendant Jacob Baker, Lt. Cutt and other unknown NECC Staff ordered Plaintiff's property removed from his single cell while Plaintiff was in the shower.  Defendant Jacob Baker, Lt. Cutt and other unknown NECC Staff also ordered Plaintiff removed from the shower and placed on the steel bench in shackles and cuffs until he agreed to be double celled.

121.     Upon information and belief, Plaintiff again agreed to be double celled, but requested he not be placed with any gang member.

122.     Upon information and belief, Defendant Jacob Baker, Lt. Cutt and other unknown NECC Staff not only ordered Plaintiff placed in a cell with a known gang member who had been reclassified as a custody level C-5 pending transfer to a maximum security prison, but he ordered him placed in a cell with a member of a prison gang known for assaulting sex offenders.

123.     When Defendant Jacob Baker, Lt. Cutt and other unknown NECC Staff ordered Plaintiff celled with this known gang member, he knew that Plaintiff was a convicted sex offender and classified as a C-2, not to be celled with a C-5 offender per the MDCC Policies and procedures.

124.     Defendant Jacob Baker, Lt. Cutt and other unknown NECC Staff's placement of Plaintiff in a cell with a known gang member who was a C-5 pending transfer to a maximum security prison and affiliated with a gang known for attacking sexual offenders constitutes an act of deliberate indifference to the safety of Plaintiff.  Further, it is a violation of Plaintiff's right to be free from cruel and unusual punishment given the increased threat created by the steel grate

on the inside of the cell doors. It was also a part of the continuing retaliation against Plaintiff for exercising his right to file grievances regarding his treatment.

### Failure To Obtain Enemy Waiver

125. Policies and procedures at N.E.C.C. require that once inmates declare they are enemies in Administrative Segregation, they must each sign a waiver before being placed in general population or one of the inmates must be moved to a new prison.

126. Defendant Tyree Butler, F.U.M. and head of classification in N.E.C.C., violated this policy when he failed to obtain an enemy waiver from Plaintiff for each prisoner who declared him his enemy in Administrative Segregation before releasing him to the general population in August 2014.

127. Violating this policy shows deliberate indifference to the safety of Plaintiff and reveals continuing retaliation against Plaintiff.

128. Defendant James Hurley, Defendant William Jones, and/or other unknown NECC staff are required by MDOC Administrative Segregation policy to personally review Plaintiff's DOC file to ensure all Offender's listed as enemies have signed the mandatory Enemy Waiver prior to approving Plaintiff's release back to general population. Defendant's deliberately failed to do so on August 1, 2014 prior to placing plaintiff back into the general population This exposed Plaintiff to an increase risk of being assaulted by at least three different Offenders who had declared Plaintiff an enemy while assigned to Administrative Segregation from March 19, 2014 to August 1, 2014 without any prior warning.

129. Per Section 217.375.2 of the Missouri Revised Statutes:

> The chief administrative officer of the facility shall keep records of the names of all those offenders confined to administrative segregation, the reason for such confinement, the length of time confined in administrative segregation and any other information required by his division director.

26

Defendant Alan Earls is, therefore, directly responsible for ensuring that all information concerning an inmate confined in Administrative Segregation are properly updated while the offender is assigned to Administrative Segregation Housing Unit 1. This would include the Plaintiff's Enemy List as a current up to date Enemy List is essential to the security of the institution and ensuring that all declared offender enemies have signed the mandatory enemy waiver, prior to being released to general population. Upon information and belief Defendant Alan Earls failed to meet this duty in Plaintiff's case.

130. Further, Plaintiff's rights to due process and equal protection were violated since upon information and belief those inmates who declared themselves enemies of Plaintiff were required to sign Enemy Waivers before they were returned to the general population. However, Plaintiff was not provided the same right to sign or not to sign the mandatory enemy waivers required by MDOC Policy/protocols.

**Denial Of Access To Law Library**

131. While Plaintiff was in Administrative Segregation from March 19, 2014 through August 1, 2014, Plaintiff was denied access to the Prison Law Library and Law Clerk Assistance by Defendant Librarian Joyce Edwards, Defendant Assistant Warden Scott Griggs, Defendant William Jones, and Defendant Warden James Hurley.

132. Prior to being placed in Administrative Segregation, Plaintiff was working on his legal appeal in a state court case and preparing to file this lawsuit. Thus Plaintiff was in need of access to the N.E.C.C. Law Library for case law research in order to prepare and draft pleadings to file in State and Federal Court.

133. While in Administrative Segregation from March 19, 2014 to August 1, 2014, Plaintiff submitted multiple Special Unit Legal Request forms required of inmates in

Administrative Segregation requesting access to case law and law clerk assistance and to one of them attached a note from Defendant Assistant Warden Scott Griggs stating Plaintiff could have access to legal materials while in Administrative Segregation.

134.    Plaintiff's Special Unit Legal Request forms were repeatedly denied by Defendant Librarian Joyce Edwards who indicated that she would not provide any case law without payment from his private funds because he did not have a Qualified Legal Claim form. Defendant Librarian Joyce Edwards did not respond to Plaintiff's request for Law Clerk assistance.

135.    While in Administrative Segregation from March 19, 2014 to August 1, 2014, Plaintiff filed multiple Qualified Legal Claim verification forms that Defendant Librarian Joyce Edwards said were required.

136.    Defendant Assistant Warden Scott Griggs responded by either stating the Qualified Legal Claim verification was not required or by denying it because Plaintiff did not have a court deadline.  Defendant Assistant Warden Scott Griggs also repeatedly noted that Plaintiff could have legal materials available to him while assigned to Administrative Segregation, specifically stating at one point these were available to him via a Special Unit Legal Request form.

137.    Plaintiff also filed an Informal Resolution Request ("I.R.R.") form regarding his denial of access to the Law Library while in Administrative Segregation.  On July 23, 2014, Defendant Kristin Cutt, CCM II, Defendant Tyree Butler, FUM, and Defendant Assistant Warden Scott Griggs denied Plaintiff's I.R.R. regarding the denial of access to case law and offender law clerk assistance, stating he needed an approved Qualified Legal Claim verification to obtain such access.

138.     Plaintiff appealed the denial of his I.R.R. On October 14, 2014, Defendant Deputy Division Director Allen Earls responded to Plaintiff's Grievance Appeal relating to access to the law library stating that Plaintiff failed to provide any evidence to substantiate that he was denied access to the materials in the law library.

139.     Upon information and belief, Defendants provided others in Administrative Segregation similarly situated to Plaintiff with access to the law library and Offender Law Clerks.

140.     The conduct of Defendants Warden James Hurley, Assistant Warden Scott Griggs, N.E.C.C. Librarian Joyce Edwards, and Deputy Division Director Alan Earls as set forth above constitutes deliberate indifference to and violation of Plaintiff's First and Fourteenth Amendment Rights in that they have denied him access to the courts, due process and equal protection.

141.     Due to Plaintiff being denied access to the law library and law clerks he was prevented from preparing and providing motions and research to his then attorney Larry Fleming.   As a result, Plaintiff was prevented from securing the assistance of counsel and research for which he had paid Attorney Fleming and his legal researcher.

142.     As a result of Defendants' denial of Plaintiff's access to the Law Library and his constitutional rights as set forth above, Plaintiff was forced to file his Motion to Recall the Mandate with which attorney Fleming was to assist him pro se.   Plaintiff's Pro Se Motion was filed in January 2015 and subsequently denied.

143.     Defendants' violation of Plaintiff's constitutional rights relating to access to the law library continued once he was released from Administrative Segregation and filed this lawsuit.   Defendant Hurley, Jones, and Earls, policy for controlling movement and limiting

access to the library, including the law library, to just five of fifty offenders per wing each day, the Defendants caused the plaintiff to have all claims in his original 1983 Complaint dismissed except for one.

144. Upon information and belief, Defendant Griggs has also retaliated against the Plaintiff for filing this claim by calling him to mandatory work detail during free time which Plaintiff could have used to go to the law library.

145. Upon information and belief, Defendant Griggs has also retaliated against Plaintiff for filing this claim by delaying approval of Plaintiff's Qualified Legal Claim form by sending it back to Plaintiff's case worker to determine which days Plaintiff wanted to spend time in the law library. Upon information and belief, Defendant Griggs has not delayed approval of any other inmates' Qualified Legal Claim requests in this manner.

## Night Time Visit For Blood Pressure Check

146. Upon information and belief, Defendant Nurse Allen scheduled Plaintiff for a blood pressure check at 9:15 p.m. on November 11, 2014. No other inmates were in medical when Plaintiff arrived.

147. Upon information and belief, blood pressure checks are not ordinarily scheduled at night.

148. Upon information and belief, medical is one of the only areas of N.E.C.C. that is not covered by surveillance cameras.

149. Defendant Larry Allen, Defendant Nurse Allen's husband, and several other officers were in medical when Plaintiff arrived. Upon information and belief, the nurse did not come out to take Plaintiff's blood pressure for approximately 20 minutes, leaving Plaintiff alone with Lt. Allen, the Medical Officer and several other officers.

150.     Once Plaintiff's blood pressure was taken, the Medical Officer and Defendant Larry Allen sat behind the computer, but did not provide Plaintiff his pass to return to his housing unit after Plaintiff specifically requested the pass, at which time the Medical Officer provided it.

151.     Upon information and belief, Defendant Nurse Allen scheduled this blood pressure check in the evening so that her spouse, Defendant Larry Allen, could be present in order to intimidate Plaintiff by making him realize there were places in the prison where Plaintiff was vulnerable because there were no cameras.

152.     Upon information and belief, the conduct of Defendant Larry Allen in arranging to be in the medical area where there were no cameras, and contributing to him being kept there for a substantial period of time was meant to intimidate Plaintiff by illustrating that if he continued to pursue his grievances against him and the medical staff, Plaintiff was not safe.

## DAMAGES

153.     As a direct and proximate result of the actions of Defendants, Plaintiff has incurred the following damages:

a)  Pain, suffering, and anxiety during his vein ablation surgery by Dr. Phillips on or about October 1, 2010;

b)  Pain from delay in the complete treatment of his varicose veins;

c)  Risk of a stroke due to failure of Defendants to investigate and treat the symptoms of a Temporary Ischemic Attack ("TIA") on or about October 21, 2010 and November 2, 2010;

d)  Anxiety and fear associated with the potential from a stroke due to delay in treatment of a blood clot diagnosed at his ankle on or about September 29, 2010;

e) Anxiety and fear associated with the failure to schedule the carotid artery Doppler recommended by Dr. Phillips;

f) Delay in treatment of his fractured ankle which was diagnosed on January 11, 2014 causing Plaintiff unnecessary pain, risk of further injury due to improper healing, immobility which increases the risk of blood clots that could be life threatening and the use of pain medications that due to Plaintiff's pre-existing medical conditions carried an increased risk of organ damage;

g) Delay in correction of his prostate medicine causing Plaintiff difficulty urinating and a painful bladder which caused lack of sleep, emotional stress, and irritability;

h) Interference with his activities of daily living due to pain, immobility, lack of sleep, difficulty urinating;

i) Lack of effective treatment for his high blood pressure to the change in the medication which treated both his prostate and high blood pressure causing an increased risk of heart disease, stroke, and myocardial infarction

j) Retaliation and intimidation for exercise of his constitutional rights to file grievances relating to his treatment by medical and prison personnel and administrators;

k) Deprivation of the rights he had earned on honor status as well as the rights all prisoners in the general population have from March 19, 2014 to August 1, 2014.

l) Violation of his constitutional rights under the First Amendment to the United States Constitution;

m) Violation of his rights to due process and equal protection under the Fourteenth Amendment; and

n) Violation of his right to be free from cruel and unusual punishment under the Eighth Amendment.

**COUNT I**
**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS –**
**VARICOSE VEINS, TIAs, FRACTURED FOOT, AND PROSTATE MEDICATION,**
**(Against Defendant Corizon and/or Defendant Corizon, L.L.C., Defendant Pascha Allen,**
**L.P.N., and Defendant Tomas Cabrera, M.D.)**

154.    Plaintiff incorporates by reference paragraphs 1-153 including subparagraphs (a-n) of this Complaint as if fully set forth herein.

155.    Plaintiff's need for treatment of his varicose veins, blood clot in his left leg, fracture of his right ankle, medication for his swollen prostate, and high blood pressure were actually diagnosed by a physician as a condition necessitating medical attention.

156.    The need for pain medication during a vein ablation procedure was a condition actually diagnosed by a physician and recognizable by a lay person.

157.    The symptoms of a TIA are easily recognizable by a health care professional and a lay person as requiring immediate investigation and treatment.

158.    The need for a carotid Doppler was diagnosed by a physician.

159.    The need for labs and appointments with a physician for filling chronic care medications is required by policy at N.E.C.C. and a need recognizable by lay persons.

160.    The need for medication changes for a swollen prostate following the return of painful symptoms and difficulty urination after a medication is prescribed is something that a health care provider or a lay person should recognize as requiring immediate action to relief the symptoms.

161. Corizon and/or Corizon, L.L.C., Defendant Nurse Allen, Linda Wiley, L.P.N., Melanie Powell, L.P.N., Dennece Ward, R.N. and Defendant Dr. Cabrera were aware of one or more of these conditions and needs as they were occurring as set forth above.

162. Corizon and/or Corizon, L.L.C., Defendant Nurse Allen, Linda Wiley, L.P.N., Melanie Powell, L.P.N., Dennece Ward, R.N. and Defendant Dr. Cabrera consciously refused to take reasonable steps to deal with Plaintiff's conditions and/or to follow through on recommendations for treatment by specialists of which they were aware.

163. Corizon and/or Corizon, L.L.C., Defendant Nurse Allen, Linda Wiley, L.P.N., Melanie Powell, L.P.N., Dennece Ward, R.N. and/or Defendant Dr. Cabrera's deliberate indifference to these medical needs constituted a violation of Plaintiff's rights under the Eighth Amendment to the United States Constitution.

164. Corizon and/or Corizon, L.L.C., Defendant Nurse Allen, Linda Wiley, L.P.N., Melanie Powell, L.P.N., Dennece Ward, R.N., and Defendant Dr. Cabrera's deliberate indifference to Plaintiff's serious medical needs proximately caused or contributed to cause the injuries and damages set forth herein.

165. Plaintiff may seek remedies for the injuries and damages caused by such Constitutional violations pursuant to 42 U.S.C. § 1983. Attorneys' fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

166. Corizon and/or Corizon, L.L.C., Defendant Nurse Allen, Linda Wiley, L.P.N., Melanie Powell, L.P.N., Dennece Ward, R.N. and Defendant Dr. Cabrera were recklessly indifferent to Plaintiff's serious medical conditions and needs thereby justifying the imposition of punitive damages.

Wherefore, Plaintiff seeks damages from Corizon and/or Corizon, L.L.C., Defendant Nurse Allen, and Defendant Dr. Cabrera in an amount that is fair and reasonable, including nominal damages if deemed appropriate, attorneys' fees and costs, punitive damages sufficient to punish and deter these Defendants from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

## COUNT II
### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS - CHANGE IN MEDICATION POLICIES AND MEDICATION
**(Against Defendant Corizon and/or Defendant Corizon, L.L.C. and Defendant Tomas Cabrera, M.D.)**

167.    Plaintiff incorporates by reference paragraphs 1-153 including subparagraphs (a-n) of this Complaint as if fully set forth herein.

168.    Corizon and/or Corizon, L.L.C., as a professional health care provider with specialized expertise in providing medical care in correctional institutions, knows or reasonably should know that changing medication policies that require the discontinuance of known effective formula medications in order to replace them with less expensive and/or non-formula medications will negatively impact certain patients.

169.    Defendant Dr. Cabrera, as a physician prescribing medications to chronic care patients, knows or reasonably should know that changing medication policies that require the discontinuance of known effective formula medications in order to replace them with less expensive and/or non-formula medications will negatively impact certain patients.

170.    As set forth above, despite the fact that these Defendants knew or reasonably should have known that changing from formula medications to non-formulation medications for a swollen prostate can cause the recurrence of a patient's symptoms as occurred with Plaintiff, Corizon and/or Corizon, L.L.C. instituted a policy requiring the use of non-formula medications.

171. Despite knowing that changing from a non-formula to a formula medication for a swollen prostate can cause the recurrence of a patient's symptoms as occurred with Plaintiff, Defendant Dr. Cabrera changed Plaintiff's prostrate medication.

172. Corizon and/or Corizon, L.L.C., and Defendant Dr. Cabrera's deliberate indifference to these medical needs of Plaintiff by instituting and carrying out a policy requiring non-formula medications, constituted a violation of Plaintiff's rights under the Eighth Amendment to the United States Constitution.

173. Corizon and/or Corizon, L.L.C. and Defendant Dr. Cabrera's deliberate indifference to the Plaintiff's serious medical needs proximately caused or contributed to cause the injuries and damages set forth herein.

174. Plaintiff may seek remedies for the injuries and damages caused by such Constitutional violations pursuant to 42 U.S.C. § 1983. Attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

175. Corizon and/or Corizon, L.L.C. and Defendant Dr. Cabrera were recklessly indifferent to Plaintiff's serious medical conditions and needs thereby justifying the imposition of punitive damages.

Wherefore, Plaintiff seeks damages from Corizon and/or Corizon, L.L.C. and Defendant Dr. Cabrera in an amount that is fair and reasonable, including nominal damages if deemed appropriate, attorneys' fees and costs, punitive damages sufficient to punish and deter these Defendants from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

**COUNT III**
**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS –**
**CHANGE IN POLICIES REGARDING ARRIVAL AT SICK CALL**
**(Against Defendant James Hurley and Defendant Lisa Ruby)**

176.     Plaintiff incorporates by reference paragraphs 1-153  including subparagraphs (a-n) of this Complaint as if fully set forth herein.

177.     Defendant James Hurley knows that the inmates at N.E.C.C. need and are entitled to medical care.

178.     Defendant James Hurley knows or reasonably should know that the Missouri Department of Corrections contracts with Corizon and/or Corizon, L.L.C. for these services.

179.     Defendant James Hurley knows or reasonably should know that the contract between the Missouri Department of Corrections and Corizon and/or Corizon, L.L.C. allows Corizon and/or Corizon, L.L.C. to make certain policies relating to the medical care provided in the prison.

180.     Defendant James Hurley knew or reasonably should have known that Corizon and/or Corizon, L.L.C. had a policy that allowed inmates 15 minutes to arrive in sick call.

181.     Despite this knowledge, Defendant James Hurley instituted a contradictory policy allowing inmates only 10 minutes to arrive in sick call.

182.     Defendant James Hurley knew that by instituting this policy, some inmates would be denied medical care that the contract between the Missouri Department of Corrections and Corizon and/or Corizon, L.L.C. required Corizon and/or Corizon, L.L.C. to provide and which the inmates were entitled under the under the Eighth Amendment to the United States Constitution.

183. Defendant Lisa Ruby knew of the 15 minute policy for arrival at sick call which Corizon and/or Corizon, L.L.C. had, but still refused Plaintiff and others access to turn in their medical service request forms regardless of their medical needs.

184. Defendant Lisa Ruby knew that by following Defendant Hurley's 10 minute policy, some inmates would be denied medical care that the contract between the Missouri Department of Corrections and Corizon and/or Corizon, L.L.C. required Corizon and/or Corizon, L.L.C. to provide and which the inmates were entitled under the under the Eighth Amendment to the United States Constitution.

185. Defendant James Hurley and Defendant Lisa Ruby's deliberate indifference to these medical needs of Plaintiff by instituting and carrying out a policy requiring 10 minutes for inmates to move from their housing units to sick call, in violation of the 15 minute policy of Corizon and/or Corizon, L.L.C. for arrival in sick call constituted a violation of Plaintiff's rights under the Eighth Amendment to the United States Constitution.

186. Defendant James Hurley and Defendant Lisa Ruby's deliberate indifference to the Plaintiff's serious medical needs proximately caused or contributed to cause the injuries and damages set forth herein.

187. Plaintiff may seek remedies for the injuries and damages caused by such Constitutional violations pursuant to 42 U.S.C. § 1983. Attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

188. Defendant James Hurley and Defendant Lisa Ruby were recklessly indifferent to Plaintiff's serious medical conditions and needs thereby justifying the imposition of punitive damages.

Wherefore, Plaintiff seeks damages from Defendant James Hurley and Defendant Lisa Ruby in an amount that is fair and reasonable, including nominal damages if deemed appropriate, attorneys' fees and costs, punitive damages sufficient to punish and deter these Defendants from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

### COUNT IV
### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS –
### TRANSFER TO SURGICAL PROCEDURE
### (Against Defendant Captain Calvin, Defendant Lieutenant Cutt, Defendant CO I Reid, and Defendant CO I Avery)

189.    Plaintiff incorporates by reference paragraphs 1-153  including subparagraphs (a-n) of this Complaint as if fully set forth herein.

190.    Defendant Captain Calvin, Defendant Lieutenant Cutt, Defendant CO I Reid, and CO I Avery know that the inmates at N.E.C.C. need and are entitled to medical care.

191.    Plaintiff's need for ablation treatment of his varicose veins containing a blood clot was diagnosed by a physician.

192.    Defendants CO I Reid and CO I Avery knew this as they were assigned to transfer the Plaintiff to Dr. Phillips' office for the procedure on or about October 15, 2010.

193.    Upon information and belief, Defendant Captain Calvin and Defendant Lieutenant Cutt knew that Defendants CO I Reid and CO I Avery were assigned to transfer the Plaintiff to Dr. Phillips' office for the procedure on or about October 15, 2010. All were aware the procedure was to treat the serious medical need of the blood clot in plaintiff's leg.

194.    Upon information and belief, all of these Defendants knew when "count time" occurred and that no inmate movement was allowed during this time.

195. Upon information and belief, these Defendants also knew that being on time for outpatient procedures is important.

196. Despite this knowledge, Defendant Captain Calvin, Defendant Lieutenant Cutt, Defendant CO I Reid, and Defendant CO I Avery, with deliberate indifference to the medical needs of Plaintiff, all delayed the transfer of Plaintiff to his appointment with Dr. Phillips on or about October 15, 2010, in the manner outlined above, to the point that Plaintiff's appointment for his vein ablation needed to be rescheduled.

197. Defendant Captain Calvin, Defendant Lieutenant Cutt, Defendant CO I Reid, and Defendant CO I Avery's deliberate indifference to these medical needs constituted a violation of Plaintiff's rights under the Eighth Amendment to the United States Constitution.

198. Defendant Captain Calvin, Defendant Lieutenant Cutt, Defendant CO I Reid, and Defendant CO I Avery's deliberate indifference to the Plaintiff's serious medical needs proximately caused or contributed to cause the injuries and damages set forth herein.

199. Plaintiff may seek remedies for the injuries and damages caused by such Constitutional violations pursuant to 42 U.S.C. § 1983. Attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

200. Defendant Captain Calvin, Defendant Lieutenant Cutt, Defendant CO I Reid, and Defendant CO I Avery were recklessly indifferent to Plaintiff's serious medical conditions and needs thereby justifying the imposition of punitive damages.

Wherefore, Plaintiff seeks damages from Defendant Captain Calvin, Defendant Lieutenant CO I Cutt, Defendant CO I Reid, and Defendant CO I Avery in an amount that is fair and reasonable, including nominal damages if deemed appropriate, attorneys' fees and costs,

punitive damages sufficient to punish and deter these Defendants from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

## COUNT V
## RETALIATION – TRANSFER TO ADMINISTRATIVE SEGREGATION
### (Against Defendant Larry Allen and Defendant Pascha Allen, L.P.N.)

201.    Plaintiff incorporates by reference paragraphs 1-153 including subparagraphs (a-n) of this Complaint as if fully set forth herein.

202.    Plaintiff filed multiple grievances against various Corizon and/or Corizon, L.L.C. and Missouri Department of Corrections personnel, including but not limited to Defendant Nurse Allen, the spouse of Defendant Larry Allen, regarding the deliberate indifference to his medical needs.  Plaintiff had a right to petition for redress of his grievances and seek justice under the First Amendment of the United States.

203.    Plaintiff suffered adverse actions from Defendant Larry Allen, including but not limited to, identifying Plaintiff as a gang member resulting in his removal from general population and placement in Administrative Segregation; participating in the transfer of Plaintiff from the general population in a manner designed to provoke Plaintiff; and attempting to intimidate Plaintiff upon his release from Administrative Segregation by being present when Plaintiff was transferred to medical at approximately 9:00 p.m. for a vital signs check.

204.    Plaintiff suffered adverse actions from Defendant Nurse Allen, including, but not limited to:  attempts to interfere with Plaintiff's scheduling appointments with his physicians, interfering with Plaintiff obtaining prescribed medications and medical devices; and failing to report recommendations from Plaintiff's medical providers outside the institution.

205.    These actions on the part of Defendant Larry Allen and Defendant Nurse Allen were taken in retaliation for Plaintiff filing grievances regarding his medical care and treatment

by Defendant Nurse Allen, other Corizon and/or Corizon, L.L.C. medical staff, and the N.E.C.C. staff.

206. The retaliatory actions of Defendant Larry Allen and Defendant Nurse Allen, constituted violations of Plaintiffs rights under the First Amendment to the United States Constitution.

207. The retaliatory actions of Defendant Larry Allen and Defendant Nurse Allen caused or proximately caused or contributed to cause the injuries and damages set forth herein.

208. Plaintiff may seek remedies for the injuries and damages caused by such Constitutional violations pursuant to 42 U.S.C. § 1983. Attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

209. The conduct, acts and omissions of Defendant Larry Allen and Defendant Nurse Allen were maliciously and recklessly indifferent to Plaintiff's constitutional rights thereby justifying the imposition of punitive damages.

Wherefore, Plaintiff seeks damages from Defendant Larry Allen and Defendant Nurse Allen in an amount that is fair and reasonable, including nominal damages if deemed appropriate, attorneys' fees and costs, punitive damages sufficient to punish and deter Defendant Larry Allen and Defendant Nurse Allen and others from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

**COUNT VI**
**RETALIATION –TRANSFER TO ADMINISTRATIVE SEGREGATION, FAILURE TO PROVIDE HEARING AND FAILURE TO IDENTIFY CHARGES**
**(Against Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Kristen Cutt, CCM, and Defendant Tyree Butler)**

210. Plaintiff incorporates by reference paragraphs 1-153 including subparagraphs (a-n) of this Complaint as if fully set forth herein.

211.    Plaintiff filed multiple grievances against various Corizon and/or Corizon, L.L.C. and Missouri Department of Corrections personnel regarding the deliberate indifference to his medical needs and various Missouri Department of Corrections personnel regarding violation of his rights pursuant to the First, Eighth, and Fourteenth Amendments to the U.S. Constitution. Plaintiff had a right to petition for redress of his grievances and seek justice under the First Amendment of the United States.

212.    Plaintiff suffered adverse actions from Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Kristen Cutt, and Defendant Tyree Butler, including but not limited to, identifying Plaintiff as a gang member, removing Plaintiff from general population and placing him in Administrative Segregation without providing him with a hearing pursuant to Section 217.375.1, keeping Plaintiff in Administrative Segregation without providing him a valid and meaningful hearing and without identifying the specific charges against him as set forth herein in violation of plaintiff's due process rights under the Fourteenth Amendment.

213.    These actions on the part of Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Kristen Cutt, and Defendant Tyree Butler were taken in retaliation for Plaintiff filing grievances regarding his medical care and treatment by Defendant Nurse Allen, other Corizon and/or Corizon, L.L.C. medical staff and the NECC staff and as retaliation for Plaintiff filing grievances against the NECC staff for violation of his rights pursuant to the First, Eighth, and Fourteenth Amendments to the U.S. Constitution.

214.    The retaliatory actions of Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant

Kristen Cutt, and Defendant Tyree Butler constituted violations of Plaintiffs rights under the First Amendment to the United States Constitution.

215. The retaliatory actions of Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Kristen Cutt, and Defendant Tyree Butler and their violation of plaintiff's constitutional rights caused or proximately caused or contributed to cause the injuries and damages set forth herein.

216. Plaintiff may seek remedies for the injuries and damages caused by such Constitutional violations pursuant to 42 U.S.C. § 1983. Attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

217. The conduct, acts, and omissions of Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Kristen Cutt and Defendant Tyree Butler were maliciously and recklessly indifferent to Plaintiff's constitutional rights thereby justifying the imposition of punitive damages.

Wherefore, Plaintiff seeks damages from Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Kristen Cutt and Defendant Tyree Butler in an amount that is fair and reasonable, including nominal damages if deemed appropriate, attorneys' fees and costs, punitive damages sufficient to punish and deter Defendants and others from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

## COUNT VII
## RETALIATION - PLACEMENT IN SEGREGATION CELL WITH DOORS WITH STEEL GRATES WITH SHARP POINTS
**(Against Defendant George Lombardi, Defendant Alan Earls, Defendant Larry Allen Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Tyree Butler, Defendant Jacob Baker, and Defendant Lt. Cutt)**

218.    Plaintiff incorporates by reference paragraphs 1-153 including subparagraphs (a-n) of this Complaint as if fully set forth herein.

219.    Plaintiff filed multiple grievances against various Corizon and/or Corizon, L.L.C. and Missouri Department of Corrections personnel regarding the deliberate indifference to his medical needs and various Missouri Department of Corrections personnel regarding violation of his rights pursuant to the First, Eighth, and Fourteenth, Amendments to the U.S. Constitution. Plaintiff had a right to petition for redress of his grievances and seek justice under the First Amendment of the United States.

220.    Plaintiff suffered adverse actions from Defendant George Lombardi, Defendant Alan Earls, Defendant Larry Allen, Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Tyree Butler, Defendant Jacob Baker, and Defendant Lt. Cutt including but not limited to, placing him in an Administrative Segregation cell knowing that the doors in these cells have steel plates with sharp points on the interior of the door and knowing that it was the policy of NECC to double cell inmates in Administrative Segregation as set forth herein in violation of Plaintiff's Eighth Amendment Rights.

221.    These actions on the part of Defendant George Lombardi, Defendant Alan Earls, Defendant Larry Allen, Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Tyree Butler, Defendant

Jacob Baker, and Defendant Lt. Cutt were taken in retaliation for Plaintiff filing grievances regarding his medical care and treatment by Defendant Nurse Allen, other Corizon and/or Corizon, L.L.C. medical staff, and the N.E.C.C. staff and as retaliation for Plaintiff filing grievances against the N.E.C.C. staff for violation of his rights pursuant to the First, Eighth, and Fourteenth Amendments to the U.S. Constitution.

222.    The retaliatory actions of Defendant George Lombardi, Defendant Alan Earls, Defendant Larry Allen, Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Tyree Butler, Defendant Jacob Baker, and Defendant Lt. Cutt constituted violations of Plaintiff's rights under the First Amendment and the Eighth Amendment to the United States Constitution.

223.    The retaliatory actions of Defendant George Lombardi, Defendant Alan Earls, Defendant Larry Allen, Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Tyree Butler, Defendant Jacob Baker, and Defendant Lt. Cutt and the violations of Plaintiff's Constitutional rights proximately caused or contributed to cause the injuries and damages set forth herein.

224.    Plaintiff may seek remedies for the injuries and damages caused by such Constitutional violations pursuant to 42 U.S.C. § 1983.  Attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

225.    The conduct, acts, and omissions of Defendant George Lombardi, Defendant Alan Earls, Defendant Larry Allen, Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Tyree Butler, Defendant Jacob Baker, and Defendant Lt. Cutt were maliciously and recklessly indifferent to Plaintiff's constitutional rights thereby justifying the imposition of punitive damages.

Wherefore, Plaintiff seeks damages from Defendant George Lombardi, Defendant Alan Earls, Defendant Larry Allen, Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Tyree Butler, Defendant Jacob Baker, and Defendant Lt. Cutt an amount that is fair and reasonable, including nominal damages if deemed appropriate, attorneys' fees and costs, punitive damages sufficient to punish and deter Defendants and others from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

## COUNT VIII
## RETALIATION –PLACEMENT IN CELL WITH KNOWN GANG MEMBERS IN ADMINISTRATIVE SEGREGATION
### (Against Defendant Jacob Baker and Defendant Lt. Cutt)

226.    Plaintiff incorporates by reference paragraphs 1-153 including subparagraphs (a-n) of this Complaint as if fully set forth herein.

227.    Plaintiff filed multiple grievances against various Corizon and/or Corizon, L.L.C. and Missouri Department of Corrections personnel regarding the deliberate indifference to his medical needs and various Missouri Department of Corrections personnel regarding violation of his rights pursuant to the First, Eighth, and Fourteenth Amendments to the U.S. Constitution. Plaintiff had a right to petition for redress of his grievances and seek justice under the First Amendment of the United States Constitution.

228.    Plaintiff suffered adverse actions from Defendant Jacob Baker, Defendant Lt. Cutt and other unknown NECC staff, including but not limited to, placing him in an Administrative Segregation cell with known gang members as set forth herein constitutes a failure to protect Plaintiff as required by the Eighth Amendment of the United States Constitution.

229.    These actions on the part of Defendant Jacob Baker, Defendant Lt. Cutt and other unknown NECC staff, were taken in retaliation for Plaintiff filing grievances regarding his

medical care and treatment by Defendant Nurse Allen, other Corizon and/or Corizon, L.L.C. medical staff, and the N.E.C.C. staff and as retaliation for Plaintiff filing grievances against the NECC staff for violation of his rights pursuant to the First, Eighth, and Fourteenth Amendments to the U.S. Constitution.

230.    The retaliatory actions of Defendant Jacob Baker, Defendant Lt. Cutt and other unknown NECC staff, constituted violations of Plaintiff's rights under the First Amendment to the United States Constitution.

231.    The actions of Defendant Jacob Baker, Defendant Lt. Cutt and other unknown NECC staff as set forth herein caused or proximately caused or contributed to cause the injuries and damages set forth herein.

232.    Plaintiff may seek remedies for the injuries and damages caused by such Constitutional violations pursuant to 42 U.S.C. § 1983. Attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

233.    The conduct, acts, and omissions of Defendant Jacob Baker, Defendant Lt. Cutt and other unknown NECC staff were maliciously and recklessly indifferent to Plaintiff's constitutional rights thereby justifying the imposition of punitive damages.

Wherefore, Plaintiff seeks damages from Defendant Jacob Baker and Defendant Lt. Cutt in an amount that is fair and reasonable, including nominal damages if deemed appropriate, including nominal damages if deemed appropriate, attorneys' fees and costs, punitive damages sufficient to punish and deter Defendants and others from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

## COUNT IX
## RETALIATION- DENIAL OF LIBRARY PRIVILEGES
### (Against Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Alan Earls, Defendant Tyree Butler, Defendant Kristen Cutt and Defendant Joyce Edwards)

234.     Plaintiff incorporates by reference paragraphs 1-153 including subparagraphs (a-n) of this Complaint as if fully set forth herein.

235.     Plaintiff filed multiple grievances against various Corizon and/or Corizon, L.L.C. and Missouri Department of Corrections personnel regarding the deliberate indifference to his medical needs and various Missouri Department of Corrections personnel regarding violation of his rights pursuant to the First, Eighth, and Fourteenth Amendments to the U.S. Constitution. Plaintiff had a right to petition for redress of his grievances and seek justice under the First Amendment of the United States Constitution.

236.     Plaintiff suffered adverse actions from Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Alan Earls, Defendant Tyree Butler, Defendant Kristen Cutt and Defendant Joyce Edwards, including but not limited to, denying him access to the law library while he was in Administrative Segregation and thereafter as set forth herein.

237.     These actions on the part of Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Alan Earls, Defendant Tyree Butler, Defendant Kristen Cutt and Defendant Joyce Edwards were taken in retaliation for Plaintiff filing grievances regarding his medical care and treatment by Defendant Nurse Allen, other Corizon and/or Corizon, L.L.C. medical staff, and the NECC staff and as retaliation for Plaintiff filing grievances against the NECC staff for violation of his rights pursuant to the First, Eighth, and Fourteenth Amendments to the U.S. Constitution.

238. The retaliatory actions against Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Alan Earls, Defendant Tyree Butler, Defendant Kristen Cutt and Defendant Joyce Edwards constituted violations of Plaintiff's rights under the First Amendment to the United States Constitution.

239. Further, the actions of Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Alan Earls, Defendant Tyree Butler, Defendant Kristen Cutt and Defendant Joyce Edwards constituted violations of Plaintiff's rights to equal protection as they afforded other inmates situated similarly to Plaintiff access to the law library.

240. The retaliatory actions of Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Alan Earls, Defendant Tyree Butler, Defendant Kristen Cutt and Defendant Joyce Edwards and their violation of Plaintiff's rights to equal protection caused or proximately caused or contributed to cause the injuries and damages set forth herein.

241. Plaintiff may seek remedies for the injuries and damages caused by such constitutional violations pursuant to 42 U.S.C. § 1983. Attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

242. The conduct, acts, and omissions of Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Alan Earls, Defendant Tyree Butler, Defendant Kristen Cutt and Joyce Edwards were maliciously and recklessly indifferent to Plaintiff's constitutional rights thereby justifying the imposition of punitive damages.

Wherefore, Plaintiff seeks damages from Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Alan Earls, Defendant Tyree Butler, Defendant Kristen Cutt and Defendant Joyce Edwards in an amount that is fair and reasonable, including nominal damages if deemed appropriate, attorneys' fees and costs, punitive damages sufficient to

punish and deter Defendants and others from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

## COUNT X
### TACIT AUTHORIZATION – DELIBERATE INDIFFERENCE TO MEDICAL NEEDS
(Against Defendant James Hurley, Defendant Roschell Davis Norton, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant Alan Earls, And Defendant George Lombardi)

243.    Plaintiff incorporates by reference paragraphs 1-153 including subparagraphs (a-n) of this Complaint as if fully set forth herein.

244.    Defendant James Hurley, Defendant Roschell Davis Norton, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant Alan Earls, and Defendant George Lombardi had actual knowledge of the deliberate indifference to Plaintiff's serious medical needs through Plaintiff's grievances.

245.    As members of the administration of N.E.C.C. and the Missouri Department of Corrections, these Defendants had the responsibility to oversee the care provided to inmates in the care of MDOC by Corizon and/or Corizon, L.L.C. and its employees or agents.

246.    Defendants completely abdicated these responsibilities by failing to investigate the allegations set forth by Plaintiff and responding solely by referring the matter to Corizon and/or Corizon, L.L.C. the very organization accused of providing the constitutionality inadequate care.

247.    Defendants' complete abdication of their oversight responsibilities constituted tacit authorization of the deliberate indifference to Plaintiff's rights under the Eighth Amendment to the United States Constitution.

248. Defendants' authorization of Corizon and/or Corizon, L.L.C. and its employees and agents' deliberate indifference to the serious medical needs of Plaintiff caused or contributed to cause the injuries and damages set forth herein.

249. Plaintiff may seek remedies for the injuries and damages caused by such Constitutional violations pursuant to 42 U.S.C. § 1983. Attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

250. Defendants' conduct, acts, and omissions were maliciously and recklessly indifferent to Plaintiff's constitutional rights thereby justifying the imposition of punitive damages.

Wherefore, Plaintiff seeks damages from Defendant James Hurley, Defendant Roschell Davis Norton, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant Alan Earls, and Defendant George Lombardi in an amount that is fair and reasonable, including nominal damages if deemed appropriate, attorneys' fees and costs, punitive damages sufficient to punish and deter Defendants and others from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

**COUNT XI**
**TACIT AUTHORIZATION - RETALIATION**
**(Against Defendant James Hurley, Defendant Roschell Davis Norton, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant Alan Earls, And Defendant George Lombardi)**

251. Plaintiff incorporates by reference paragraphs 1-153 including subparagraphs (a-n) of this Complaint as if fully set forth herein.

252. Defendant James Hurley, Defendant Roschell Davis Norton, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant Alan Earls, and Defendant George Lombardi had actual knowledge of the retaliation against Plaintiff.

253.    As members of the administration of N.E.C.C. and the Missouri Department of Corrections, these Defendants had the responsibility to oversee the treatment provided to inmates in the care of MDOC by Corizon and/or Corizon, L.L.C. and its employees or agents.

254.    Defendants completely abdicated these responsibilities by failing to fully investigate the allegations set forth by Plaintiff.

255.    Defendants' complete abdication of their oversight responsibilities constituted tacit authorization of the deliberate indifference to Plaintiff's rights under the Eighth Amendment to the United States Constitution.

256.    Defendants' authorization of the N.E.C.C. and Corizon and/or Corizon, L.L.C. retaliatory actions against Plaintiff caused or contributed to cause the injuries and damages set forth herein.

257.    Plaintiff may seek remedies for the injuries and damages caused by such Constitutional violations pursuant to 42 U.S.C. § 1983.  Attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

258.    Defendants' conduct, acts, and omissions were maliciously and recklessly indifferent to Plaintiff's constitutional rights thereby justifying the imposition of punitive damages.

Wherefore, Plaintiff seeks damages from Defendant James Hurley, Defendant Roschell Davis Norton, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant Alan Earls, and Defendant George Lombardi in an amount that is fair and reasonable, including nominal damages if deemed appropriate, attorneys' fees and costs, punitive damages sufficient to punish and deter Defendants and others from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

**COUNT XII**

**VIOLATION OF PLAINTIFF'S EIGHTH AMENDMENT RIGHTS-STEEL GRATES ON ADMINISTRATIVE SEGREGATION DOORS**
**(Against Defendant George Lombardi, Defendant Alan Earls, Defendant Larry Allen Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Tyree Butler Defendant Jacob Baker, and Defendant Lt. Cutt)**

259.    Plaintiff incorporates by reference paragraphs 1-153 including subparagraphs (a-n) of this Complaint as if fully set forth herein.

260.    The inside of the doors to the cells in Administrative Segregation have steel grates with sharp points directed to the inside of the cell where inmates reside.

261.    Double celling is a common practice at N.E.C.C.

262.    The steel grates on the inside of the doors in Administrative Segregation create a physical hazard for inmates.

263.    The doors in Administrative Segregation are not so weak that the personnel at N.E.C.C. are at risk of the doors being kicked down by the inmates secured in the cells.

264.    The placement of the steel grates serves no legitimate safety or security purpose in the prison.

265.    The placement of the steel grates serves only to install unreasonable fear to inmates in Administrative Segregation.

266.    The placement of the grates constitutes deliberate indifference to the safety and security of the inmates.

267.    The conduct of Defendant George Lombardi, Defendant Alan Earls, Defendant Larry Allen Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Tyree Butler, Defendant Jacob Baker, and Defendant Lt. Cutt including but not limited to, placing him in an Administrative

Segregation cell knowing that the doors in these cells have steel plates with sharp points on the interior of the door and knowing that it was the policy of NECC to double cell inmates in Administrative Segregation as set forth herein was deliberately indifference to the safety of Plaintiff.

268.    The placement of these steel plates with sharp points on the inside of the door where the inmates reside constitutes cruel and inhumane punishment in violation of the Plaintiff's Eighth Amendment rights.

269.    The housing of inmates in cells in which such deliberately indifferent conditions exists constitutes cruel and inhumane punishment in violation of the Plaintiff's Eighth Amendment rights.

270.    Plaintiff may seek remedies for the injuries and damages caused by such Constitutional violations pursuant to 42 U.S.C. § 1983.   Attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

271.    The conduct, acts, and omissions of Defendant George Lombardi, Defendant Alan Earls, Defendant Larry Allen, Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Tyree Butler, Defendant Jacob Baker, and Defendant Lt. Cutt in placing the steel grates and/or housing Plaintiff in a cell with these steel strips were maliciously and recklessly indifferent to Plaintiff's Constitutional rights thereby justifying the imposition of punitive damages.

Wherefore, Plaintiff seeks damages from Defendant George Lombardi, Defendant Alan Earls, Defendant Larry Allen, Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Tyree Butler, Defendant Jacob Baker, and Defendant Lt. Cutt in an amount that is fair and reasonable,

including nominal damages if deemed appropriate, attorneys' fees and costs, punitive damages sufficient to punish and deter Defendants and others from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

**COUNT XIII**
**VIOLATION OF PLAINTIFF'S RIGHTS TO DUE PROCESS AND EQUAL PROTECTION - FAILURE TO HAVE POLICIES**
**(Against Defendant George Lombardi, Defendant Alan Earls, Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, and Defendant Tyree Butler)**

272.     Plaintiff incorporates by reference paragraphs 1-153 including subparagraphs (a-n) of this Complaint as if fully set forth herein.

273.     N.E.C.C. lacks any policies defining "gang," "gang member" or "gang activity."

274.     The absence of such policies results in disparate treatment between inmates for the same or similar conduct.

275.     The absence of such policies creates the opportunity for personnel at N.E.C.C. to retaliate against inmates for the exercise of their constitutional rights to file grievances and seek justice under the First Amendment of the United States Constitution.

276.     Plaintiff filed multiple grievances against various Corizon and/or Corizon, L.L.C. and Missouri Department of Corrections personnel regarding the deliberate indifference to his medical needs and various Missouri Department of Corrections personnel regarding violation of his rights pursuant to the First, Eighth, and Fourteenth Amendments to the U.S. Constitution. Plaintiff had a right to petition for redress of his grievances and seek justice under the First Amendment of the United States Constitution.

277.     As a result of the absence of policies defining "gang," "gang member" or "gang activity", these terms were used by the personnel within N.E.C.C. to retaliate against Plaintiff as set forth herein.

278. This retaliation violated Plaintiff's rights to due process and equal protection.

279. Plaintiff may seek remedies for the injuries and damages caused by such Constitutional violations pursuant to 42 U.S.C. § 1983. Attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

280. The conduct, acts, and omissions of Defendant George Lombardi, Defendant Alan Earls, Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, and Defendant Tyree Butler in not having policies defining the terms "gang," "gang member" or "gang activity" were maliciously and recklessly indifferent to Plaintiff's constitutional rights thereby justifying the imposition of punitive damages.

Wherefore, Plaintiff seeks damages from Defendant George Lombardi, Defendant Alan Earls, Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, and Defendant Tyree Butler in an amount that is fair and reasonable, including nominal damages if deemed appropriate, attorneys' fees and costs, punitive damages sufficient to punish and deter Defendants and others from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

## COUNT XIV
### VIOLATION OF PLAINTIFF'S EIGHTH AMENDMENT, DUE PROCESS AND EQUAL PROTECTION RIGHTS - FAILURE TO FOLLOW POLICIES
### (Against Defendant Hurley, Defendant Alan Earls, Defendant William Jones and Defendant Tyree Butler)

281. Plaintiff incorporates by reference paragraphs 1-153 including subparagraphs (a-n) of this Complaint as if fully set forth herein.

282. N.E.C.C. has policies regarding keeping records on inmates placed in Administrative Segregation.

283. N.E.C.C. has policies requiring inmates that have declared themselves enemies while in Administrative Segregation to sign waivers before being placed back in the general population.

284. These policies are designed to protect the rights to equal protection and due process of the inmates and to protect the rights of offenders, including Plaintiff, to be protected from unknown assaults from other offenders who have declared them an enemy.

285. Defendant James Hurley, Defendant Alan Earls, Defendant William Jones and Defendant Tyree Butler violated these policies concerning Plaintiff's incarceration in Administrative Segregation as set forth herein.

286. This failure to follow these policies violated Plaintiff's Eighth Amendment rights and his Fourteenth Amendment rights to due process and equal protection.

287. Plaintiff may seek remedies for the injuries and damages caused by such Constitutional violations pursuant to 42 U.S.C. § 1983. Attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

288. The conduct, acts, and omissions of Defendant James Hurley, Defendant Alan Earls, Defendant William Jones and Defendant Tyree Butler in violating these policies and Plaintiff's Eighth Amendment rights and rights to due process and equal protection were maliciously and recklessly indifferent to Plaintiff's constitutional rights thereby justifying the imposition of punitive damages.

Wherefore, Plaintiff seeks damages from Defendant James Hurley, Defendant Alan Earls, Defendant William Jones and Defendant Tyree Butler in an amount that is fair and reasonable, including nominal damages if deemed appropriate, attorneys' fees and costs, punitive damages

sufficient to punish and deter Defendants and others from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

## COUNT XV
## CONSPIRACY
### (Against Defendant Larry Allen and Defendant Pascha Allen, L.P.N.)

289. Plaintiff incorporates by reference paragraphs 1-153 including subparagraphs (a-n) of this Complaint as if fully set forth herein.

290. Defendants Larry Allen and his wife, Defendant Nurse Allen, conspired together to deprive Plaintiff of his constitutional rights to due process, equal protection and access to medical care after Plaintiff filed several complaints against Defendant Nurse Allen, and others relating to his care and treatment while in N.E.C.C.

291. To deprive Plaintiff of his constitutional rights, Defendant Larry Allen and Defendant Pascha Allen conspired together to have Plaintiff brought to an area in medical sick call with no camera coverage to intimidate him and prevent him from pursuing grievances and filing lawsuits.

292. To deprive Plaintiff of his constitutional rights, Defendant Larry Allen identified Plaintiff as a "gang member" when he was informed by other members of the staff at N.E.C.C. that Plaintiff did not have any gang affiliations.

293. As a result of Defendant Larry Allen identifying Plaintiff as a "gang member," Plaintiff was moved to Administrative Segregation from March 19, 2014 to August 1, 2014 and stripped of his Honor status and denied those rights given to inmates on honor status and to those rights given to members of the general population.

294. Plaintiff may seek remedies for the injuries and damages caused by such Constitutional violations pursuant to 42 U.S.C. § 1983. Attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

295. The conduct, acts, and omissions of Defendant Larry Allen and Defendant Nurse Allen were maliciously and recklessly indifferent to Plaintiff's constitutional rights thereby justifying the imposition of punitive damages.

Wherefore, Plaintiff seeks damages from Defendant Larry Allen and Defendant Nurse Allen in an amount that is fair and reasonable, including nominal damages if deemed appropriate, attorneys' fees and costs, punitive damages sufficient to punish and deter Defendants and others from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

## COUNT XVI
## ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF REQUIRING PHYSICIANS AT NECC TO MEET WITH AND CONSULT WITH INMATES PRIOR TO PRESCRIBING NEW, ADDITIONAL OR DIFFERENT MEDICATION
### (Against Defendant Corizon and/or Defendant Corizon, L.L.C. and Defendant Tomas Cabrera, M.D.)

296. Plaintiff incorporates by reference paragraphs 1-28, 62-71, 153 including subparagraphs (a-n), and 168-175 of this Complaint as if fully set forth herein.

297. An actual and justiciable controversy ripe for adjudication has arisen between Plaintiff and these Defendants as set forth in this Complaint.

298. Plaintiff has no adequate or sufficient remedy at law with which to address the policy of Defendants that mandate the changing of medications without the offender being seen by the prescribing physician to discuss the differences in the medication, the patient history and side effects of the medication.

299.    Plaintiff will suffer irreparable harm unless the Court grants injunctive relief in the form of a preliminary and permanent injunction requiring Defendants to institute a policy that prevents physicians from changing an offender's medications without first meeting with the offender, examining him, discussing the medication options and side effects even if another Defendant Corizon or Defendant Corizon, LLC policy would require discontinuance of known effective formula medications in order to replace them with less expensive and/or non-formula medications.

300.    The harm in to t Plaintiff from not granting an injunction outweighs any harm to Defendants in granting same.

301.    Plaintiff will succeed on the merits of his claim that Defendants Corizon and/or Corizon, L.L.C., and Defendant Dr. Cabrera acted with deliberate indifference to the medical needs of Plaintiff by instituting and carrying out a policy requiring non-formula medications and violated Plaintiff's rights under the Eighth Amendment to the United States Constitution.

302.    The granting of an injunction will not harm the public interest, but will serve the public interest in keeping inmates, including Plaintiff, safe from reasonably anticipated harm.

WHEREFORE, Plaintiff prays for relief as follows:

(1) That the Court determine and enter judgment declaring that the current policy of Defendant Corizon and/or Defendant Corizon, LLC requiring automatic medication changes without an examination and discussion with the offender violated Plaintiff's rights under the Eighth Amendment to the United States Constitution;

(2) That upon hearing, the Court issue a preliminary and permanent injunction enjoining Defendants, their employees, agents, and successors from carrying out a change in medication for an offender without a physical examination by the physician and a discussion of the

medication change and potential risks of the change so the physician can make a judgment as to whether the change would be appropriate for a particular offender regardless of other policies of Defendant Corizon and/or Defendant Corizon, LLC seeking to require a change from current formula medications in order to replace them with less expensive and/or non-formula medications;

(3) For attorneys' fees and costs, punitive damages sufficient to punish and deter Defendants and others from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

## COUNT XVII
### ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF CONCERNING TASC REVIEW COMMITTEE HEARINGS
**(Against Defendant George Lombardi, Defendant Alan Earls, Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Kristen Cutt, CCM, and Defendant Tyree Butler)**

303.    Plaintiff incorporates by reference paragraphs 1-28, 85-111, 153 including subparagraphs (a-n), 202-217, of this Complaint as if fully set forth herein.

304.    Each and all of the acts Defendant George Lombardi alleged herein were done by Defendant under the color and pretense of the statutes, regulations, customs and usages of the State of Missouri, and under the authority of his office as Director of the Missouri Department of Corrections.  Defendant Lombardi is responsible for the administration, operation, supervision of the state corrections institutions and facilities within the State of Missouri, including the NECC, and for the promulgation and enforcement of rules, regulations, policies and practices thereto. Defendant George Lombardi is sued in this Count in his official capacity.

305.    Each and all of the acts Defendant James Hurley alleged herein were done by Defendant under the color and pretense of the statutes, regulations, customs and usages of the State of Missouri, and under the authority of his office as Warden of the NECC. Defendant

Hurley is responsible for the administration, operation, supervision of the NECC, and for the promulgation and enforcement of rules, regulations, policies and practices thereto. Defendant Hurley is sued in this Count in his official capacity.

306.    Each and all of the acts Defendants Richard Griggs, and Chantay Godert alleged herein were done by Defendants under the color and pretense of the statutes, regulations, customs and usages of the State of Missouri, and under the authority of their office as Assistant Wardens at NECC. Defendants Griggs and Godert are responsible for the administration, operation, supervision of the NECC, and for the promulgation and enforcement of rules, regulations, policies and practices thereto. Defendants Griggs and Godert are sued in this Count in their official capacity.

307.    Each and all of the acts Defendant William Jones alleged herein were done by Defendants under the color and pretense of the statutes, regulations, customs and usages of the State of Missouri, and under the authority of his office as Deputy Warden at NECC. Defendant Jones is responsible for the administration, operation, supervision of the NECC, and for the promulgation and enforcement of rules, regulations, policies and practices thereto. Defendant Jones is sued in this Count in his official capacity.

308.    Each and all of the acts Defendant Alan Earls alleged herein were done by Defendant under the color and pretense of the statutes, regulations, customs and usages of the State of Missouri, and under the authority of his office as Deputy Division Director of Missouri Adult Institutions. Defendant Earls is responsible for the administration, operation, supervision of the state corrections institutions and facilities within the State of Missouri, including the NECC, and for the promulgation and enforcement of rules, regulations, policies and practices thereto. Defendant Earls is sued in this Count in his official capacity.

309. An actual and justiciable controversy ripe for adjudication has arisen between Plaintiff and these Defendants as set forth in this Complaint.

310. Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, Defendant James Rhodes, Defendant Kristen Cutt, CCM, and Defendant Tyree Butler violated the prison policies and Missouri Statutes requiring inmates who are placed in TASC to receive a hearing within five days and to provide a written reason and/or identify the prison rule Plaintiff allegedly violated.

311. The failure to follow this policy violated Plaintiff's rights to due process and equal protection as upon information and belief, other offenders incarcerated in Administrative Segregation were allowed the hearing required by Section 217.375 R.S.Mo. which is adopted in the Missouri Department of Corrections TASC policy. Upon information and believe, these offenders were also provided the institutional rule they allegedly violated or the conduct that purportedly justified their incarceration in Administrative Segregation. Plaintiff has never been notified of the institutional rule he allegedly violated or the conduct allegedly justifying his continued assignment to Administrative Segregation from March 19, 2014 to August 1, 2014.

312. Defendants Lombardi and Earls have allowed the violations of Section 217.375 R.S.Mo. to occur at NECC and other institutions in the Missouri Department of Corrections so that Plaintiff will be subject to the same violations of his rights to due process and equal protection if transferred to another facility.

313. Plaintiff has no adequate and sufficient remedy at law with which to address the violation of his rights to due process and equal protection due to Defendants' failure to uniformly enforce the policies and rules within NECC.

314.     Plaintiff will suffer irreparable harm unless the Court grants injunctive relief in the form of a preliminary and permanent injunction requiring Defendants to uniformly enforce the policies and rules regarding TASC hearings within NECC because Plaintiff is at risk of being returned to Administrative Segregation at any time since no reason for his incarceration there was ever provided  and no definition or description of the purported conduct that resulted in his lengthy stay in Administrative Segregation was ever provided.

315.     The harm in to Plaintiff from not granting an injunction outweighs any harm to Defendants in granting same.

316.     Plaintiff will succeed on the merits of his claim that the violation of his rights to due process and equal protection due to Defendants' failure to uniformly enforce the policies and rules within NECC.

317.     The granting of an injunction will not harm the public interest.

WHEREFORE, Plaintiff prays for relief as follows:

(1) That the Court determine and enter judgment declaring that the failure of Defendants to equally apply the TASC hearing rule, provide notice of the institutional rule purportedly violated, rather than a claim that he was under investigation, to all inmates being violated Plaintiff's rights to due process and equal protection under the United States Constitution;

(2) That upon hearing, the Court issue a preliminary and permanent injunction enjoining Defendants, their employees, agents, and successors in office from failing to uniformly enforce the TASC hearing rules for all inmates placed in TASC, including identifying the institutional rule allegedly violated or the reason the offender is a threat to the safety and good order of the institution; and

(3) For attorneys' fees and costs, punitive damages sufficient to punish and deter Defendants and others from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

## COUNT XVIII
## ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF CONCERNING THE FAILURE TO HAVE OFFENDER INVESTIGATION POLICIES
### (Against Defendant George Lombardi, Defendant Alan Earls and Defendant James Hurley)

318.    Plaintiff incorporates by reference paragraphs 1-28, 85-111, 153 including subparagraphs (a-n), 202-217, 304, 305, and 308 of this Complaint as if fully set forth herein.

319.    An actual and justiciable controversy ripe for adjudication has arisen between Plaintiff and these Defendants as set forth in this Complaint.

320.    Defendant Hurley, Defendant Lombardi, and Defendant Earls and the other administrative personnel in the Missouri Department of Corrections have failed to establish a uniform Offender Investigation policy requiring a clear statement of what conduct or rule violation is the basis for an investigation and how that conduct or rule violation creates a risk to the ongoing safety and security if the institution.  These failures have created an environment in which "Pending Investigation" is used as a pretext for violating the rights to due process and equal protection of offenders, including specifically Plaintiff.

321.    Plaintiff's rights to due process and equal protection were violated by a prolonged stay in Administrative Segregation without him ever being told what conduct he engaged in that resulted in his incarceration there.

322.    Upon information and believe, other offenders in Administrative Segregation were provided a written reason for their incarceration there.

323.     The absence of an Investigation Policy results in disparate treatment of inmates who have been involved in the same or similar conduct.

324.     Defendant Lombardi and Defendant Earls have continued to allow Missouri Department of Corrections Wardens, Functional Unit Managers, Case Managers, and institutional Investigators to assign offenders to long term Administrative Segregation under the mere claim of "Pending Investigation" which is a direct violation of the due process rights of offenders.

325.     Plaintiff is at risk of being returned to Administrative Segregation at any time since the reasons for his assignment to Administrative Segregation were never made clear to him.   This risk existed at NECC and at any other facility in the Missouri Department of Corrections system.

326.     Plaintiff has no adequate and sufficient remedy at law with which to address the violation of his rights due to Defendants' failure to have and Offender Investigation Policy and the resulting violation of his rights to due process and equal protection.

WHEREFORE, Plaintiff prays for relief as follows:

(1) That the Court determine and enter judgment declaring that the failure of Defendants to have an Investigation Policy violated Plaintiff's rights to due process and equal protection;

(2) That upon hearing, the Court issue a preliminary and permanent injunction enjoining Defendants, their employees, agents, and successors in office from incarcerating offenders in Administrative Segregation under a claim of "Pending Investigation" until policies are established that require (a) the identification of the charge or conduct being investigated or a written justified reason why the inmate is a threat to the safety or security of the institution (b) that offenders may not be held in Administrative Segregation for more than 90 days without

being found guilty of violating an institutional rule or a justified reason why the inmate is a

threat to the safety or security of the institution and (c) that if there is no finding of a violation of

an institutional rule or a justified threat to the safety and security if the institution, the offender

will be released to the general population, subject to other prison policies, such as the Enemy

Waiver policy being complied with, and that a report will be prepared concerning the process

and findings of the investigation including that no violation of an institutional rule or threat to the

safety and security of the facility was supported; and

(3) For attorneys' fees and costs, punitive damages sufficient to punish and deter Defendants and

others from similar conduct in the future, and such other and further relief as this Court deems

just and appropriate.

## COUNT XIX
### ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF CONCERNING ACCESS TO THE OFFENDER LAW CLERK AND CASE LAW AND PERSONAL LEGAL PAPERS WHILE IN ADMINISTRATIVE SEGREGATION
**(Against Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, and Defendant Alan Earls)**

327.    Plaintiff incorporates by reference paragraphs 1-28, 131-145, 153 including

subparagraphs (a-n), 234-242, and 305-308 of this Complaint as if fully set forth herein.

328.    An actual and justiciable controversy ripe for adjudication has arisen between

Plaintiff and these Defendants as set forth in this Complaint.

329.    Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones,

and Defendant Alan Earls retaliated against Plaintiff for filing grievances against various

members of the staff of the prison and Defendant Corizon and/or Corizon, LLC by denying him

access to the law library while he was in Administrative Segregation and thereafter as set forth

herein.

330.    The retaliation by these Defendants constituted violations of Plaintiff's rights under the First Amendment to the United States Constitution.

331.    Plaintiff has no adequate and sufficient remedy at law with which to address the violation of his rights due to Defendants' denying him access to the law library while in Administrative Segregation.

332.    Plaintiff will suffer irreparable harm unless the Court grants injunctive relief in the form of a preliminary and permanent injunction requiring Defendants to permit all offenders assigned to Administrative Segregation access to an Offender Law Clerk, copies of legal papers, and copies of case law in order to prepare legal action in criminal and civil cases.

333.    The harm in to Plaintiff from not granting an injunction outweighs any harm to Defendants in granting same.

334.    Plaintiff will succeed on the merits of his claim that the violation of his rights under the First Amendment of the Constitution as set forth in Count IX herein.

335.    The granting of an injunction will not harm the public interest.

WHEREFORE, Plaintiff prays for relief as follows:

(1) That the Court determine and enter judgment declaring that the failure of Defendants to allow Plaintiff and others in Administrative Segregation access to the law library and Offender Law Clerks violates the First Amendment of the United States Constitution;

(2) That upon hearing, the Court issue a preliminary and permanent injunction enjoining Defendants, their employees, agents, and successors in office from failing to allow offenders housed in Administrative Segregation access to the law library, possession of legal papers and case law and access to the Offender Law Clerk or requiring Defendants to hire a qualified person to assist offenders with legal research and drafting legal papers; and

(3) For attorneys' fees and costs, punitive damages sufficient to punish and deter Defendants and others from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

**COUNT XX**
**ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF CONCERNING VIOLATION OF PLAINTIFF'S EIGHTH AMENDMENT RIGHTS-STEEL GRATES ON ADMINISTRATIVE SEGREGATION DOORS**
**(Against Defendant George Lombardi, Defendant Alan Earls, Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert)**

336.    Plaintiff incorporates by reference paragraphs 1-28, 112-124, 153 including subparagraphs (a-n), 260-271, and 304-308 of this Complaint as if fully set forth herein.

337.    An actual and justiciable controversy ripe for adjudication has arisen between Plaintiff and these Defendants as set forth in this Complaint.

338.    Plaintiff was incarcerated in Administrative Segregation with in the NECC.  Upon transfer to Administrative Segregation, Plaintiff was placed in a cell with a door constructed of solid steel, with a solid glass window 5 inches and 18 inches tall.  The inside of these solid steel cell doors have been modified by welding eleven pieces of steel to the inside of each door.  These steel pieces are 1/8 inch wide, 2 inches deep, with a 45 degree angle cut in the top and bottom which protrude from the inside of each cell door.  These eleven steel slats angled horizontally at about chest level to the floor, are ideally placed to easily penetrate a human skull, causing death or serious facial skull fracturing, if an offender's head was slammed into the steel slats.

339.    Upon information and belief, Defendants Warden James Hurley, Deputy Division Director Alan Earls, and Director George Lombardi permitted or required the steel slats to be placed on the inside of these doors.

340. Upon information and belief, Defendants William Jones, Richard Griggs, Chantay Godert, Alan Earls, Tyree Butler, and James Rhodes were all aware of the steel slats placed on the inside of the cell doors in Administrative Segregation.

341. The presence of the steel slats on the inside of the cell doors in Administrative Segregation violates the rights of inmates to be free from cruel and unusual punishment especially given that N.E.C.C. often places two men in cells in Administrative Segregation since there is no legitimate security purpose to the steel slats.

342. Defendants have taken no action to remove the steel slats despite being aware of the steel grates and the frequency of violence in the cells within Administrative Segregation. Defendants have taken no action to cease double celling inmates in these cells. Defendants have taken no action to protect inmates housed in Administrative Segregation from the potential harm that can occur due to the presence of the steel slats.

343. Plaintiff was housed in Administrative Segregation from March 19, 2014 to August 1, 2014, more than four months, with various cellmates, some of whom were reportedly members of gangs known to assault sex offenders and who had declared Plaintiff and enemy.

344. Plaintiff is at risk of being returned to Administrative Segregation at any time since the reasons for his assignment to Administrative Segregation were never made clear to him.

345. Plaintiff has no adequate and sufficient remedy at law with which to address the presence of the steel grates on the Administrative Segregation cell doors and the violation of the constitutional rights of an inmate to be housed in a safe cell and free from cruel and unusual punishment.

346. Plaintiff will suffer irreparable harm unless the Court grants injunctive relief in the form of a preliminary and permanent injunction requiring Defendants to remove the steel grates from the doors on the interior of the Administrative Segregation cell doors.

347. The harm in to Plaintiff from not granting an injunction outweighs any harm to Defendants in granting same.

348. Plaintiff will succeed on the merits of his claim that the steel grates on the inside of the Administrative Segregation cell doors violates the constitutional rights of an inmate to be housed in a safe cell and free from cruel and unusual punishment.

349. The granting of an injunction will not harm the public interest, but will serve the public interest in keeping inmates, including Plaintiff, safe from reasonably anticipated harm.

WHEREFORE, Plaintiff prays for relief as follows:

(1) That the Court determine and enter judgment declaring that the presence of the steel grates on the inside of the cell doors in Administrative Segregation, as set forth above, violate rights secured to Plaintiff by the Eighth Amendment to the United States Constitution prohibiting cruel and inhumane punishment;

(2) That upon hearing, the Court issue a preliminary and permanent injunction enjoining Defendants, their employees, agents, and successors in office from housing multiple inmates in the Administrative Segregation cells until the steel grates are removed;

(3) That upon hearing, the Court issue a preliminary and permanent injunction requiring the removal of the steel grates from the inside of the Administrative Segregation cell doors; and

(4) For attorneys' fees and costs, punitive damages sufficient to punish and deter Defendants and others from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

## COUNT XXI
### ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF CONCERNING VIOLATION OF PLAINTIFF'S RIGHTS TO DUE PROCESS AND EQUAL PROTECTION - FAILURE TO HAVE POLICIES RELATING TO THE TERMS "GANG MEMBER," GANG AFFILIATION," OR "GANG ACTIVITY"
(Against Defendant George Lombardi, Defendant Alan Earls, Defendant James Hurley, Defendant Richard Griggs, Defendant William Jones, Defendant Chantay Godert, and Defendant Tyree Butler)

350.    Plaintiff incorporates by reference paragraphs 1-28, 106-111, 153 including subparagraphs (a-n), 273-280, and 304-308 of this Complaint as if fully set forth herein.

351.    Plaintiff was falsely identified as being a "gang member" and as allegedly being involved in "gang activities" by Defendant Larry Allen, and other unknown Missouri Department of Corrections staff members, without any evidence other that Defendant Allen's word.

352.    Presently, throughout Missouri's prison system any Missouri Department of Corrections staff member can write a report stating that they think an offender may be a "gang member" and from that point on the offender is labeled as a "gang member" and the offender is not notified of this label or given an opportunity to dispute the label.

353.    The label of "gang member" follows the offender throughout the system, including into parole hearings and life after being in prison.

354.    If Plaintiff is ever transferred to another prison, he will have the label of "gang member" and is subject to being incarcerated in Administrative Segregation for "gang membership," "gang affiliation" or "gang activity" without being provided any information on the conduct being labeled as such so it can be avoided in the future.

355.    An actual and justiciable controversy ripe for adjudication has arisen between Plaintiff and these Defendants as set forth in this Complaint.

356.     Upon release from Administrative Segregation, Plaintiff was told only that Defendant Rhodes' investigation was concluded. Plaintiff was not provided an institutional rule that he allegedly violated, what conduct he allegedly engaged in that created a continuing threat to the security and good order of the institution, or what conduct or individuals to avoid in the future to keep from being placed in Administrative Segregation again.  Plaintiff was provided no definition of what conduct constitutes a "gang member," "gang affiliation," or "gang activity" so he can protect himself from being wrongly identified with a gang in the future.

357.     Defendant Warden Hurley, Defendant Director Lombardi, Defendant Deputy Division Director Earls, and the other administrative personnel have failed to establish a uniform definition of a "gang member," "gang affiliation," or "gang activity," or a policy requiring a clear statement of what conduct or rule violation is the basis for an investigation and how that conduct or rule violation creates a risk to the ongoing safety and security of the institution. These failures created an environment in which "pending investigations" were used as a pretext for violating the rights to due process and equal protection of offenders, including specifically Plaintiff.  Plaintiff's rights to due process and equal protection were violated by the prolonged stay in Administrative Segregation without ever being told what conduct he engaged in that resulted in his incarceration there.

358.     Plaintiff is at risk of being returned to Administrative Segregation at any time since the reasons for his assignment to Administrative Segregation were never made clear to him and there is not clear definition.

359.     The absence of such policies results in disparate treatment between inmates for the same or similar conduct.

360.    Plaintiff has no adequate and sufficient remedy at law with which to address the absence of definitions of what conduct constitutes a "gang member," "gang affiliation," or "gang activity" and the resulting violation of his rights to due process and equal protection.

361.    Plaintiff will suffer irreparable harm unless the Court grants injunctive relief in the form of a preliminary and permanent injunction requiring Defendants to establish definitions of a "gang member" and what conduct constitutes "gang affiliation" or "gang activity."

362.    The harm in to Plaintiff from not granting an injunction outweighs any harm to Defendants in granting same.

363.    Plaintiff will succeed on the merits of his claim that absence of definitions of "gang member", what conduct constitutes "gang affiliation" or "gang activity" resulted in violation of his rights to due process and equal protection and leaves Plaintiff subject to further such violations as he was never told what conduct he engaged in that was considered "gang affiliation" or "gang activity".

364.    The granting of an injunction will not harm the public interest, but will serve the public interest in keeping inmates reasonably safe and preventing unnecessary increase in the expense of housing prisoners in more costly Administrative Segregation cells.

WHEREFORE, Plaintiff prays for relief as follows:

(1) That the Court determine and enter judgment declaring that the absence of a definition of what conduct constitutes a "gang member," "gang affiliation," or "gang activity" as set forth above, violate his rights to due process and equal protection under the United States Constitution;

(2) That upon hearing, the Court issue a preliminary and permanent injunction enjoining Defendants, their employees, agents, and successors in office from placing inmates into

Administrative Segregation for being under investigation for "gang membership," "gang affiliation" or "gang activity" until policies defining those terms are created and instituted;

(3) That upon hearing, the Court issue a preliminary and permanent injunction requiring Defendants to establish a procedure for validating an offender's status as a "gang member", notifying the offender that he has been validated as a "gang member", identifying the punishments available against and offender validated as a "gang member" and providing an appeal process for offender's validated as "gang members" which includes methods for removing the designation as "gang member" from the offender's Missouri Department of Corrections and Parole Files;

(4) That upon hearing, the Court issue a preliminary and permanent injunction requiring Defendants to establish and Offender Investigation Policy that requires investigations of offenders being housed in Administrative Segregation due to being under investigation be concluded within 90 days with a written result and either a formal violation or the release of inmate to the general population and that the results of the investigation be made available to the offender at the conclusion of said 90 days and placed in offender's Missouri Department of Corrections file

(5) For attorneys' fees and costs, punitive damages sufficient to punish and deter Defendants and others from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

## COUNT XXII
## ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF CONCERNING VIOLATION OF PLAINTIFF'S EIGHTH AMENDMENT, DUE PROCESS AND EQUAL PROTECTION RIGHTS FAILURE TO FOLLOW POLICIES REGARDING ENEMY WAIVERS
### (Against Defendant Hurley, Defendant Alan Earls, and Defendant Tyree Butler)

365.     Plaintiff incorporates by reference paragraphs 1-28, 125-130, 153 including subparagraphs (a-n), 282-288, and 304 to 308 of this Complaint as if fully set forth herein.

366.     An actual and justiciable controversy ripe for adjudication has arisen between Plaintiff and these Defendants as set forth in this Complaint.

367.     Defendant James Hurley, Defendant Alan Earls, and Defendant Tyree Butler violated the prison policies requiring inmates who declared one another enemies while in Administrative Segregation before being released into the general population when they did not ask Plaintiff to sign an enemy waiver, but did request some of those declaring Plaintiff their enemy to sign such waivers.

368.     The failure to follow this policy violated Plaintiff's rights to due process and equal protection and his Eighth Amendment rights due to a "failure to protect" as this policy is designed to notify an inmate of the potential threat to his safety from another offender who has identified him as an enemy by allowing an opportunity to sign the waiver, be placed in protective custody and/or transferred to another prison.

369.     Plaintiff has no adequate and sufficient remedy at law with which to address the violation of his rights to due process and equal protection and his Eighth Amendment rights due to a failure to protect because Defendants' failure to uniformly enforce the policies and rules within NECC.

370.     Plaintiff will suffer irreparable harm unless the Court grants injunctive relief in the form of a preliminary and permanent injunction requiring Defendants to uniformly enforce the policies and rules regarding enemy waivers within NECC

371.     The harm in to Plaintiff from not granting an injunction outweighs any harm to Defendants in granting same.

372.     Plaintiff will succeed on the merits of his claim that the violation of his rights to due process and equal protection as well as  his Eighth Amendment rights due to the failure to protect because Defendants' failure to uniformly enforce the policies and rules within NECC.

373.     The granting of an injunction will not harm the public interest, but will serve the public interest in keeping inmates, including Plaintiff, and prison personnel safe from reasonably anticipated violence.

WHEREFORE, Plaintiff prays for relief as follows:

(1) That the Court determine and enter judgment declaring that the failure of Defendants to equally apply the waiver rule to all inmates being released from Administrative Segregation violated Plaintiff's rights to due process and equal protection and his Eighth Amendment rights under the United States Constitution;

(2) That upon hearing, the Court issue a preliminary and permanent injunction enjoining Defendants, their employees, agents, and successors in office from failing to uniformly enforce the Enemy Waiver Rule for all inmates being released from Administrative Segregation into the general population at NECC who either were declared someone's enemy or declared someone to be his enemy; and

(3) For attorneys' fees and costs, punitive damages sufficient to punish and deter Defendants and others from similar conduct in the future, and such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

GREENSFELDER, HEMKER & GALE, P.C.

    /s/Mary L. Reitz
Mary L. Reitz, #37372MO
mlr@greensfelder.com
10 S. Broadway, Suite 2000
St. Louis, MO  63102
Ph: 314-241-9090; Fax: 314-241-1265

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 30th day of August, 2016, the foregoing document was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

    /s/Mary L. Reitz

1616379