UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| FRANKLIN G. ENDICOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:14-CV-107 DDN |
| | ) | |
| JAMES HURLEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS

Comes now Plaintiff, by and through his appointed counsel of record, Mary L. Reitz and

Greensfelder, Hemker and Gale, P.C., and for his opposition to the Motion to Dismiss of

Defendants Larry Allen, Roger Avery, Jacob Baker, Tyree Butler, Lori Calvin, David Cutt,

Kristin Cutt, Alan Earls, Joyce Edwards, Chantay Godert, Richard Griggs, James Hurley,

William Jones, George Lombardi, Jeffrey Reid, James Rhodes, and Lisa Ruby ("Defendants")

states as follows:

## INTRODUCTION

Defendants' Motion to Dismiss Counts III, IV, VII, VIII, IX, X, XI, XII, XIII, XIV,

XVII, XVIII, XX, XXI, and XXII of Plaintiff's Fifth Amended Complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6) for an alleged failure to plead sufficient facts to support his

claims of deliberate indifference, retaliation, deprivation of Due Process and Equal Protection,

and cruel and unusual punishment. Defendants' Motion to Dismiss is without merit and should

be denied.

## STANDARD OF REVIEW

"[W]hen reviewing a motion to dismiss for failure to state a claim under FED.R.CIV.P.

12(b)(6), a court must accept as true all factual allegations contained in the complaint, and

review the complaint to determine whether its allegations show the pleader to be entitled to relief. *Banks v. HSBC Bank USA, N.A.,* 2015 WL 476316, *3, U.S. Dist. MO W.D. (2015) *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 1964-65 (2007). The pleadings need not show that the right to relief is probable, but only that the claims are "plausible." *Id.* at *3 *citations omitted*. While a plaintiff must plead sufficient facts to bring a right to relief above the speculative level, a complaint that does so must be allowed to proceed even if it appears that a recovery is very unlikely. *See Bell Atl.Corp v. Twombly* at 555-56. Plaintiff's pleadings meet the plausibility requirement and his claims should all be permitted to proceed.

## DISCUSSION

### A. COUNT III STATES A CLAIM OF DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED BASED ON THE PRISON POLICY CHAGES RELATED TO ARRIVAL AT SICK CALL.

Plaintiff has alleged sufficient facts in Count III to state a claim for deliberate indifference to his medical needs by Defendants Hurley and Ruby. Plaintiff alleged a serious medical condition and facts sufficient to permit a jury to conclude that Defendants Hurley and Ruby were aware of that condition at the time he was denied access to medical care on August 29, 2014.

"A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or ....'" *Coleman v. Rahija,* 114 F3d 778, 784 citing *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). Plaintiff was diagnosed with and prescribed treatment for a swollen prostate while in the Northeast Correctional Center. Plaintiff alleged that an unwarranted change in the medication for his prostate on August 1, 2014 resulted in "difficulty urinating, a painful bladder, lack of sleep, emotional stress, and irritability" that interfered with his activities of daily living. (Doc. 114, ¶¶ 65, 76, 78.) The medical need of the prisoner need not be life

threatening in order to be the basis of a claim for deliberate indifference. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds, WMX Technologies v. Miller,* 1997 WL 1218 (9th Cir. Jan. 2, 1997) (citing *Estelle,* 429 U.S. at 104). An example of a serious medical need includes the presence of a medical condition that significantly affects an individual's daily activities or the existence of chronic and substantial pain. *See McGuckin,* 974 F.2d at 1059-1060. A delay in treatment may also constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain. *McGowan v. Hulick*, 615 F3d 636, 640 (7th Cir. 2010), citing *Estelle,* 429 U.S. at 104–05; *Gayton v. McCoy*, 593 F.3d 610, 619 (7th Cir. 2010); *Edwards v. Snyder,* 478 F.3d 827, 832 (7th Cir.2007). Plaintiff alleged pain and an impact on his daily activities of urinating and sleep. (Doc. 114, ¶¶ 65, 76, 78.) See *Walton v. Dawson*, 752 F3d 1109, 1120 (8th Cir. 2014). Regardless of the precise definition of "serious medical" need or condition used, Plaintiff has alleged sufficient facts to establish that one existed on August 29, 2014 relating to his prostate condition.

Plaintiff further alleges he attempted to be seen by the physician to report that the new medication was not effective at sick call on August 29, 2014, but was denied access to care due to the 10-minute movement restriction on reporting to sick call. (Doc. 114, ¶ 75.) By seeking medical care, Plaintiff made Defendants aware he had a serious medical condition.

The Eighth Amendment requires prison officials to provide a system of ready access to adequate medical care. *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (1982) abrogated in part on other grounds by *Sandin v. Conner*, 515 U.S. 472, 481–84 (1995) citing *Estelle v. Gamble*, supra, 429 U.S. at 103-104, 97 S.Ct. 285, 290-291 (1976). Prison officials show deliberate indifference to

serious medical needs if prisoners are unable to make their medical problems known to the medical staff. *Hoptowit*, 682 F2d at 1253. By turning him away without any investigation of the reason he was present at sick call based on a policy, Defendants were deliberately indifferent to his condition. (Doc. 114, ¶ 75) "An official may not escape liability by "refus[ing] to verify underlying facts that [s]he strongly suspect[s] to be true." *Conley v. Birch*, 796 F.3d 742, 747 (7th Cir. 2015) (citations omitted.) This is exactly what occurred August 29, 2014 when Plaintiff was denied access to medical care based on an arbitrary policy written by Defendant Hurley and enforced by Defendant Ruby with no penal interest. (Doc. 114, ¶¶ 72-79). The fact that Plaintiff alleges he was seen by nurses subsequent to being arbitrarily turned away from sick call on August 29, 2014 without any investigation of his medical needs, does not change the fact he was denied access to sick call which reflects a deliberate indifference to his medical needs. Here Plaintiff alleged that Defendants knew of his medical conditions and that Defendants blocked his attempts to obtain care by not allowing him to turn in his written medical request form. As a result, Defendants' motions must fail. See *Morphis v. Smith.*

Further, the fact that his continued pain, difficulties urinating, and interference with his activities of daily living were prolonged and eventually relieved does not change the fact he was denied care and it caused him an injury, which is actionable according to the cases cited above. See *Parrish v. Johnson,* 800 F.2d 600, 610 (6th Cir.1986) citations omitted (holding that an actual injury is not a necessary predicate to receiving damages for an Eighth Amendment violation and that a plaintiff may recover for any injury caused by the delay in care and any concomitant pain, suffering, or mental anguish.)

Additionally, despite Defendants' suggestion to the contrary, the Complaint does allege that Warden Hurley was made aware of the denial of access to medical care by the Greivance filed by Plaintiff. Defendant Hurley's personal response to the Grievance shows he had

knowledge of the denial of access to medical care, but had no intention to change the policy regardless of its impact. (Doc. 114, ¶¶ 78, 79.) While prison officials are granted wide latitude in implementing policies and practices which are needed to preserve internal order and discipline and to maintain institutional security, this latitude is not unfettered and should not prevent the review of actions taken for no legitimate purpose. *See Whitley v. Albers,* 475 U.S. 312, 322, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). This would include an arbitrary 10-minute rule for appearing at sick call such as that instituted by Warden Hurley. Further, a claim under § 1983 alleging deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment may be brought against a prison official if he has a personal role in implementing or enforcing a policy in a way that deprives an individual of his constitutional rights. See *Estate of Young v. Martin*, 70 Fed.Appx. 256, 260 n. 3 (6th Cir.2003), citing, *Taylor v. Michigan Department of Corrections*, 69 F.3d 76, 81 (6th Cir.1995); *Hill v. Marshall*, 962 F.2d 1209 (6th Cir.1992). Thus, Warden Hurley can be held liable for the implementation of this policy.

Defendants Hurley and Ruby are not entitled to qualified immunity on the claims in Count III. Qualified immunity shields a government official from liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Krout v. Grommer*, 583 F.3d 557, 564 (8th Cir. 2009) citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). To determine whether Defendants are entitled to qualified immunity, the court looks at (1) whether the facts alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional or statutory right, and (2) whether that constitutional right was clearly established as of the time of Defendant's conduct, such that a reasonable official would have known that his actions were unlawful. *See Krout*, 583 F.3d at 564 (8th Cir. 2009); *see also Pearson v. Callahan,* 555 U.S. 223 (2009); *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson,* 129 S.Ct. at

818. Plaintiff has alleged sufficient facts to establish a violation of his constitutional rights and access to health care by inmates is such a recognized constitutional right that any reasonable official would know that arbitrarily denying Plaintiff access to it was unlawful.

For all of the forgoing reasons, the Motion of Defendants Hurley and Ruby to Dismiss Count III should be denied.

## B. COUNT IV STATES A CLAIM OF DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED BASED ON THE FAILURE TO TIMELY TRANSFER PLAINTIFF FOR HIS SURGICAL PROCEDURE.

Plaintiff has alleged sufficient facts in Count IV to state a claim for deliberate indifference to his medical needs by Defendants Calvin, Cutt, Reid, and Avery.  Plaintiff alleged a serious medical condition and facts sufficient to permit a jury to conclude that Defendants were aware of that condition at the time these Defendants failed to timely transport him for surgery on October 15, 2010.

Plaintiff alleged that he had been diagnosed with a blood clot in his leg on October 15, 2010 and that Defendants knew of this diagnosis. (Doc. 114, ¶¶ 37, 40, 41) "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Coleman* 114 F3d at 784 (citations omitted).  The medical need of the prisoner need not be life threatening in order to be the basis of a claim for deliberate indifference. See *Estelle,* 429 U.S. at 104 (1976).  The blood clot in this case was not only diagnosed by a physician as requiring treatment, but also the type of condition a layperson would recognize needed a physician's care.  If prison guards or wardens "delay or deny access to medical care or intentionally interfere with treatment once prescribed, the Eighth Amendment is violated." *Estelle,* 429 U.S. at 104-05.  A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain. *McGowan,* 615 F.3d at 640 (citations omitted.)

Defendants Calvin, Cutt, Reid and Avery delayed the surgery that was ordered by Dr. Phillips with complete disregard for the serious consequences that can develop from a blood clot such as stroke, loss of circulation, and pain or for the swelling and pain caused by the clot itself and Plaintiff's longstanding symptomatic varicose veins. (Doc. 114, ¶¶ 29, 33). "Federal courts have frequently found that medical needs of prisoners which require surgery constitute serious medical needs and when combined with deliberate indifference shown by prison officials constitute an Eighth Amendment violation. " *Brewer v. Blackwell*, 836 F. Supp. 631(S.D. IA, 93) 639 referencing, *Johnson v. Lockhart*, 941 F.2d 705 (8th Cir.1991) (inguinal hernia); *Warren v. Fanning*, 950 F.2d 1370 (8th Cir.1991), cert. denied, 506 U.S. 836, 113 S.Ct. 111, 121 L.Ed.2d 68 (1992) (toenails which had become infected and had turned black); *Dace v. Solem*, 858 F.2d 385 (8th Cir.1988) (painful nasal condition); *Toombs v. Bell*, 798 F.2d 297 (8th Cir.1986) (painful gallstones); *Taylor v. Bowers*, 966 F.2d 417 (8th Cir.1992), cert. denied, 506 U.S. 946, 113 S.Ct. 394, 121 L.Ed.2d 302 (1992) (ruptured appendix); *Mandel v. Doe*, 888 F.2d 783 (11th Cir.1989) (fracture in the hip joint which required surgery). "Deliberate indifference may be shown by prison official's attitude and conduct in response to a prisoner's serious medical need." *Id.* The conduct of Defendants Calvin, Cutt, Reid and Avery, in this instance was the equivalent of doing nothing after they were aware of Plaintiff's serious medical condition, and this is simply not permitted under the Constitution. ". . . [A] guard who is aware of complaints of pain and does nothing to help a suffering prisoner obtain treatment is likewise exhibiting deliberate indifference." *Dobbey v. Mitchell-Lawshea,* 806 F.3d 938, 940 (7th Cir. 2015). *See also Lewis v. Johnson,* 2016 WL 3092996, *3 (USDC ED Arkansas, 2016) (Plaintiff plead that Defendant was informed of his need for medical attention, but refused to allow him to leave prison for treatment until he said he could and that plaintiff also alleged that during the delay he was in pain and his arm became discolored and numb. The court ruled that based on defendant

was not entitled to a dismissal.)  In addition to allowing the pain from the clot to remain, the continued existence of the blood clot caused Plaintiff unnecessary anxiety and fear because he believed that the clot caused his symptoms, such as "tingling" of his left hand and fingers, numbness of his face, numbness to the top upper left side of his lip and left upper arm down to his fifth digit, dizziness, headaches, vision dimming and hearing fading, resulted from the clot. (Doc. 114, ¶¶ 44, 45, 47 and 50.)

"[W]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."  *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citations omitted.)  Plaintiff has alleged sufficient facts from which the jury could infer that these Defendants had the knowledge of a substantial risk.

Plaintiff has alleged all of the necessary elements for a deliberate indifference claim and Defendants are not entitled to the dismissal of Count IV.

Defendants Calvin, Cutt, Reid and Avery are not entitled to qualified immunity on the claims in Count IV.  *See Krout*, 583 F.3d at 564. Plaintiff has alleged sufficient facts to establish a violation of his constitutional rights and access to health care prescribed by a physician to inmates is such a recognized constitutional right that any reasonable official would know that failing to provide it was unlawful.  "Generally, officials who perform discretionary functions have at least qualified immunity from individual liability for damages that have resulted from the exercise of their discretionary functions." *Boretti v. Wiscomb*, 930 F 2d 1150, 1156 (6th Cir., 1991) citations omitted. However, "[c]omplying with a doctor's prescription or treatment plan is a ministerial function, not a discretionary one. *Boretti,* Id. citing *Estate of Burks v. Ross,* 438 F.2d 230, 235 (6th Cir.1971).  The duty to transport Plaintiff to a surgery ordered by a physician is a

ministerial task and not a discretionary one. Therefore, these Defendants are not entitled to qualified immunity.

For all of the forgoing reasons, the Motion of Defendants Calvin, Cutt, Reid and Avery to Dismiss Count IV should be denied.

### C. THE COMPLAINT STATES A CLAIM OF RETALIATION IN:

1. **COUNT VII REGARDING PLAINTIFF'S PLACEMENT IN A CELL WITH STEEL GRATES ON THE DOOR;**
2. **COUNT VIII REGARDING PLAINTIFF'S PLACEMENT IN A CELL WITH A STEEL GRATE ON THE DOOR WITH A GANG MEMBER AS A CELLMATE; AND**
3. **COUNT IX RELATED TO THE DENIAL OF PLAINTIFF'S ACCESS TO THE LAW LIBRARY.**

Plaintiff has alleged that he exercised his protected right to file grievances against Defendant Pascha Allen, Defendant Griggs, and others to address his complaints about deliberate indifference to his medical care and denial of other constitutional rights. He further alleges that as a result of those grievances, including specifically his grievance against Defendant Pascha Allen, Defendant Larry Allen and others retaliated against him by disciplining him. The discipline included among other things transferring him to Administrative Segregation ("Ad. Seg.") and placing him in cells with sharp steel grates on the inside of the doors. (Doc. 114, ¶¶ 85-90, 105, 112-116, 120-124, 219-225.) He further alleges this retaliation took the form of placing him in a cell with a steel grate on the inside of the door with inmates known to be gang members, some of which had the reputation of attacking sex offenders, such as Plaintiff or had specifically declared Plaintiff an enemy. (Doc. 114, ¶¶ 112-124.) Additionally, he alleges the retaliation included Defendants Earls and Hurley denying him access to the law library. (Doc. 114, ¶¶ 131-145, 234-242.)

To establish a retaliatory discipline claim, a plaintiff must show that: "(1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3)

exercising the right was the motivation for the discipline." *Meuir v. Green County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007). Plaintiff has alleged the necessary elements of a retaliatory discipline case and Defendants' Motion to Dismiss Count VII should be denied.

Filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity. *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994). A prison official may not retaliate against a prisoner because that prisoner filed a grievance. This is true even if the retaliatory or adverse action does not independently violate the Constitution. See *Dewalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) (citations omitted.) To state a claim for retaliatory action, an inmate must only allege a chronology of events from which retaliation may be inferred. See *Dewalt*, 224 F.3d at 618. Plaintiff has clearly done that in his Complaint as the retaliation began in earnest after Nurse Allen was put on notice not to deny Plaintiff medical care. (Doc. 114, ¶¶ 85, 86.)

Being placed in a cell with a steel grate with points on it which could penetrate a human skull and cause death or serious injury, would be sufficient to "chill" a "person of ordinary firmness from engaging" in the activity which prompted the retaliation, especially when one knows they may be housed in such a cell with another inmate. Additionally, the act of placing Plaintiff, a convicted sex offender, in a cell with a known gang member, especially a member of a gang reputed to assault sex offenders, was sufficient to "chill" a person of ordinary firmness from engaging in the protected act. (Doc. 114, ¶¶ 112-124.) Furthermore, whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his rights is a question of fact. See *Bell v. Johnson*, 300 F.3d 594, 603 (6th Cir. 2002). The so-called extreme case requirement referenced by Defendants is not an element of a retaliation claim. Placing Plaintiff in Ad. Seg. in a cell with steel spikes on the door with a member of a gang known for attacking sex offenders such as Plaintiff is an "extreme" case. Further, while Defendants assert

that Plaintiff must file an "extreme" case in order for this court to "interfere with the conduct of a prison", this position is contrary to the fact that "[c]omplaints or petitions alleging deprivations of constitutionally and legally protected rights are accepted as presenting justiciable issues or questions where the facts are set forth with sufficient particularity." *Childs v. Pegelow*, 321 F2d 487, 490 (4th Cir. 1963).

"[F]ailure to respond to the known danger of assault upon a member of an identifiable group of prisoners that are targeted by gangs, with the institution of reasonable screening procedures and safeguards to protect the safety of prisoners from the risk of gang-related violence reaches the Eighth Amendment standard of liability—deliberate indifference to a known hazard. . .". *Walsh v. Mellas*, 837 F.2d 789, 797 (7th 1988) Additionally, the failure to keep Plaintiff separated from gang members in protected custody and/or Ad. Seg. after he expressed fear of being attacked constitutes deliberate indifference. *See Miller v. Shelby Co.,* 93 F. Supp. 2d 892, 899-900 (W.D. Tenn 2000). Earlier decisions holding that prison officials must know of a specific danger from a specific assailant have been overruled. *See Krein v. Norris*, 309 F3d 487, 491-492 (8th Cir. 2002).

Plaintiff has alleged that Defendants Hurley, Griggs, Jones and Godert all participated in retaliation when they approved Plaintiff's incarceration in Ad. Seg. and the decisions to keep him there. (Doc. 114, ¶¶ 86, 101-103) Plaintiff has also alleged that Defendants Earls and Hurley were directly involved in denial of Plaintiff's access to the library when they responded to Grievances related to the denial of access (Doc. 114, ¶ 138.) and establishment of movement policies limiting access to the law library. (Doc. 114, ¶ 143.) Defendants' assertion that Plaintiff did not allege these Defendants were personally involved in or responsible for the retaliation or personally violated his constitutional rights is without merit. These Defendants were all personally responsible for keeping Plaintiff in the cell in Ad. Seg. with the steel grate on it,

placing him in a cell with gang members, including one who was known to be violent toward sex offenders such as Plaintiff, and denying Plaintiff access to the law library.

As to the grates themselves, the Defendants would have either personally approved placement of the dangerous grates or have allowed them to remain in place despite their known dangerous propensity. Defendants are aware of and responsible for the double celling of inmates in these cells and are further aware that inmate on inmate violence is a problem and/or strong potential in a prison. These grates serve no valid security interest and can cause serious, life threatening injury. The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement and provide reasonable measures to guarantee the safety of the inmates. See *Farmer v. Brennan*, 511 U.S. 825, 832-833 (1994) (internal citations omitted.) Placing and maintaining steel grates with points that can pierce a human skull on the inside of a cell door where inmates are housed violates the duty to protect the safety of inmates and instead creates an unnecessary risk of harm which would shock the conscious of most civilized individuals. Being placed in unnecessary risk of serious harm is not a part of the penalty that inmates are expected to pay for their offenses. Further, "an inmate has a constitutional right to a safe prison cell." *Wayland v. City of Springdale, Ark*, 933 F.2d 668, 671 (8th Cir., 1991). A prisoner does not need to wait for harm to occur to seek a remedy for unsafe conditions. See *Helling v. McKinney*, 509 U.S. 25, 33-34, (1993); *Rhodes v. Chapman*, 452 U.S. 337, 352, n. 17, (1981); *Gates v. Collier*, 501 F.2d 1291 CA5 (1974) and *Ramos v. Lamm*, 639 F.2d 559, 572 (CA10 1980). ". . . [A] state does owe to convicts the duty to use ordinary care for their safety, and a state cannot be permitted to maintain a penal institution in which conditions are so dangerous that the inmates must exist in dread of imminent injury or death inflicted by other inmates." *Finney v. Hutto*, 410 F. Supp. 251, 263-264, (8th Cir. 1976).

Further, qualified immunity shields a government official from liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Krout v. Grommer,* 583 F.3d 557, 564 (8th Cir. 2009) citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). To determine whether Defendants are entitled to qualified immunity, the court looks at (1) whether the facts alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional or statutory right, and (2) whether that constitutional right was clearly established as of the time of Defendant's conduct, such that a reasonable official would have known that his actions were unlawful. See *Krout*, 583 F.3d at 564 (8th Cir. 2009) (citations omitted). Qualified immunity does not apply in cases of retaliatory acts against prisoners for reporting grievances. See *Penrod v. Zavaras,* 94 F.3d 1399, 1404–05 (10th Cir.1996). The right to be free from retaliation is a well-established right. Prison officials in the positions of Defendants should not be permitted to claim that they did not know violating that right would be against the law. Additionally, the duty of prison officials to protect those in their custody is well established from at least 1995 when the Supreme Court held that the Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement and provide reasonable measures to guarantee the safety of the inmates. See *Farmer,* 511 U.S. at 832-833 (internal citations omitted).

Plaintiff has clearly alleged sufficient facts to establish a violation of his constitutional rights due to the alleged retaliation by Defendants.

For all of the foregoing reasons, the Motion of the Defendants to Dismiss Counts VII, VIII and IX should be denied.

### D.  COUNT X STATES A CLAIM OF TACIT AUTHORIZATION OF:

### 1.  DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEED RELATING TO HIS VARICOSE VEINS, TIAs, FRACTURED FOOT, AND PROSTATE MEDICATION, THE SICK CALL POLICY

**CHANGES, AND PLAINTIFF'S TRANSFER FOR A SURGICAL PROCEDURE; AND**

**2. RETALIATION IN THE TRANSFER OF PLAINTIFF TO AD. SEG., FAILURE TO PROVIDE HEARING AND FAILURE TO IDENTIFY CHARGES, PLACEMENT IN CELL WITH KNOWN GANG MEMBERS IN AD. SEG., AND THE DENIAL OF LIBRARY PRIVILEGES.**

Plaintiff alleges several serious medical needs in the Complaint, including symptomatic varicose veins, phlebitis, a blood clot, stroke-like symptoms, a fractured ankle and a swollen prostate. (Doc. 114, ¶¶ 29, 35, 37, 44, 45, 47, 51, 65 and 67.) All of the paragraphs alleging these serious medical conditions were adopted by reference in Count X. (Doc. 114, ¶ 243.) Therefore Defendants' assertions that Plaintiff did not allege he has a serious medical conditions are without merit.

Plaintiff also pled in great detail how the medical staff and the non-medical staff acted with deliberate indifference to his medical needs by failing to give him prescribed medication, failing to get him to scheduled operative procedure, ignoring signs and symptoms of stroke or TIA, failing to timely obtain tests ordered by specialists, failing to provide timely treatment for his fractured leg, failing to provide information to the physicians at the prison, and failing to allow him access to medical care. (Doc. 114, ¶¶ 30-31, 38, 40, 44, 45, 47, 49, 52-57, 62-67, 72-75.) All of these allegations were adopted in Count X. Thus, Defendants' assertions that Plaintiff did not allege how the medical staff acted with deliberate indifference are also without merit. These allegations, when taken together, show a pattern of deliberate indifference by the medical staff and guards at the Northeast Correctional Center.

Plaintiff alleged that Defendants in this count knew of the deliberate indifference to his serious medical needs via the grievances he filed relating to his care. (Doc. 114, ¶¶ 61, 244). Defendants' assertion that Plaintiff did not allege Defendants knew of the serious medical condition is without merit.

The law has clearly established that "[w]here a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Langford v. Norris*, 614 F.3d 445, 460 citing *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir.1989) (citing *Estelle*, 429 U.S. at 103). These Defendants, who held supervisory positions at the Northeast Correctional Center, had the duty to supervise and administer services at the prison, including medical services. Courts have also held that "where the duty to furnish treatment is unfulfilled, the mere contracting of services with an independent contractor does not immunize the State from liability for damages in failing to provide a prisoner with the opportunity for such treatment." *Langford*, 614 F.3d at 460 (citations omitted.); see also *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir.1995).

Further, Plaintiff has alleged in Count XI that Defendants had actual knowledge of the retaliation against him due to the grievances filed by Plaintiff and failed to fully investigate complaints about the retaliation that he made. Further some of these Defendants, such as Defendants Griggs, Godert, Earls are alleged to have directly participated in the retaliation by denying him access to the law library (Doc. 114, ¶¶ 136, 137, 138, 144.) Additionally, Plaintiff has alleged that Defendants Hurley, Griggs, Jones and Godert all participated in retaliation when they approved Plaintiff's assignment to TASC and Ad. Seg. and the decisions to keep him there. (Doc. 114, ¶¶ 101-102.) Obviously, since Plaintiff has alleged direct involvement of these individuals in the retaliation, it is only fair to infer that these Defendants had knowledge of the retaliation.

"Supervisors can, . . . 'incur liability ... for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices.'" *Langford*, 614 F.3d at 460, citing *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir.1993) (internal quotation marks and citation omitted) (quoting *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir.1990), and *Howard v. Adkison*, 887 F.2d 134, 137 (8th

Cir.1989). Many examples exist of prison supervisors being held liable for their conduct in such situations. A summary of examples is found in *Langford*, 614 F.3d at 464: *See, e.g., Crooks*, 872 F.2d at 804 (holding that prison supervisors may be held liable for "inadequate prison policies or medical supervision ... just as if they had refused to deliver [medical] services themselves"); *Messimer v. Lockhart*, 702 F.2d 729, 732 (8th Cir.1983) (holding that the Director of the Arkansas Department of Correction could be held liable for failing to override "policy decisions" that allegedly led to unconstitutional conditions of confinement); see also *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir.1983) (holding that deliberate indifference "can be demonstrated by 'proving there are such systemic and gross deficiencies in ... procedures that the inmate population is effectively denied access to adequate medical care' " (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980)).

Here, these Defendants had a duty to provide medical care needed and supervise and oversee that the care for which it contacted was provided. Their failure to act when being made aware of the deficiencies in the care Plaintiff was receiving via multiple grievances Plaintiff filed, each and every one of them failed to take action to see that he received care or to correct inadequacies in the system created by the individuals identified by Plaintiff in his grievances. The failure to act of these Defendants constitutes deliberate indifference and tacit authorization of the conduct that violated Plaintiff's constitutional rights. Furthermore, Defendants completely abdicated their responsibilities when they failed to conduct any investigation or take any action to correct the pattern of deliberate indifference existing in the prison. These Defendants also abdicated their responsibilities when they failed to investigate Plaintiff's assignment to Ad. Seg., failed to provide a hearing and/or identify charges relating to his assignment to Ad. Seg., allowed Plaintiff's placement in a cell with known gang members in Ad. Seg., and denied Plaintiff library privileges.

Plaintiff has sufficiently pled all of the elements necessary to his claim for tacit authorization in Counts X and XI, and his claims should not be dismissed.

Defendants are not entitled to qualified immunity in this case. *See Krout*, 583 F.3d at 564. These Defendants were made aware of the Plaintiff's serious medical conditions – some of which were obvious – broken bone – and others which were diagnosed as needing treatment by a physician – varicose veins and prostate swelling – by the grievances Plaintiff filed. These Defendants were directly involved in failing to fulfill their duties to provide medical care to Plaintiff and other inmates by not investigating complaints made in the grievances or by abdicating responsibility for investigating the complaints to the very individuals against whom the criticisms were made. To obtain the benefit of qualified immunity, a supervisory defendant must show that they "reasonably relied" on the opinions of the medical staff. *McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009 (citations omitted). Here, there is no evidence that reliance on the medical staff's failure to follow orders from outside providers or failing to allow access to medical care guaranteed by the constitution was reasonable. Failure to provide care for serious medical conditions, such as those diagnosed as needing treatment by a physician, is a violation of the Plaintiff's constitutional rights. To say that Defendants reasonably relied on the decisions of the medical personnel when there is no evidence that an investigation was performed to see why the care ordered was not provided is illogical. Prison employees who don't provide medical care are shielded from liability only if they responded reasonably to complaints, e.g., by investigating and relying on the medical staff's assessment that adequate treatment is being provided. See *Riley v. Kolitwenzew*, 2016 WL 1077168, *3, (7th Cir.2016) referencing *Johnson v. Doughty*, 433 F.3d 1001, 1010-11 (7th Cir.2006) and *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir.2005).

Further, qualified immunity shields a government official from liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Krout v. Grommer,* 583 F.3d 557, 564 (8th Cir. 2009) citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). To determine whether the Defendants are entitled to qualified immunity, the court looks at (1) whether the facts alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional or statutory right, and (2) whether that constitutional right was clearly established as of the time of Defendant's conduct, such that a reasonable official would have known that his actions were unlawful. *See Krout*, 583 F.3d at 564 (8th Cir. 2009) (citations omitted). Qualified immunity does not apply in cases of retaliatory acts against prisoners for reporting grievances. *See Penrod v. Zavaras,* 94 F.3d 1399, 1404–05 (10th Cir.1996). The right to be free from retaliation is a well-established right and prison officials in the positions of Defendants should not be permitted to claim that they did not know violating that right would be against the law. Additionally, the duty of prison officials to protect those in their custody is well established from at least 1995 when the Supreme Court held that the Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement and provide reasonable measures to guarantee the safety of the inmates. See *Farmer,* 511 U.S. at 832-833 (internal citations omitted.) Since Plaintiff has clearly stated sufficient facts to support his claims of retaliatory action and plead Defendants' personal involvement in those actions, he has also adequately plead a claim for tacit authorization of those retaliatory actions. For all of the foregoing reasons, Defendants are not entitled to qualified immunity on the claims for tacit authorization in Counts X and XI.

**E. COUNT XII DATES A CLAIM OF CRUEL AND UNUSUAL PUNISHMENT RELATED TO PLAINTIFF'S PLACEMENT IN A CELL IN AD. SEG. WITH ANOTHER INMATE AND A STEEL GRATE ON THE DOOR.**

Plaintiff has pled sufficient facts to state a violation of his Eighth Amendment rights. Plaintiff alleged that Defendants were personally involved in ordering the steel grates placed and knew of the routine housing of more than one inmate in these cells. (Doc. 114, ¶¶ 113, 267.) These grates and the potential of harm from them as well as the fear they cause are violations of the Eighth Amendment protection against cruel and unusual punishment. The conditions alleged by Plaintiff constitute more than a mere "discomfort", but establish the existence of a clearly dangerous condition that serves no safety or security interest. These Defendants were aware of the risk created by the grates because they either ordered the grates placed, had seen them, or had received grievances describing the grates, such as that filed by the Plaintiff. Plaintiff has alleged a description of the grates and the dangers they create. (Doc. 114, ¶ 112.) Plaintiff has also alleged deliberate indifference to the safety risk posed by these grates by each of the Defendants. (Doc. 114, ¶ 267.) Plaintiff has not only alleged that Defendants ordered the grates placed or allowed them to remain, but also that Defendant Allen actually participated in and influenced the decision to place Plaintiff in a segregation cell. (Doc. 114, ¶ 203.)

A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to an individual such as an inmate. *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 198-200, (1989). The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement and provide reasonable measures to guarantee the safety of the inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832-833 (1994) (internal citations omitted.) ". . .[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (internal citations omitted.) "Whether a prison official had the requisite knowledge of a

substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* A prisoner does not need to wait for harm to have occurred to seek a remedy for unsafe conditions. See *Helling*, 509 U.S. at 33-34 (1993). ". . . [A] state does owe to convicts the duty to use ordinary care for their safety, and a state cannot be permitted to maintain a penal institution in which conditions are so dangerous that the inmates must exist in dread of imminent injury or death inflicted by other inmates." *Finney v. Hutto*, 410 F. Supp. 251, 263-264 (8th Cir. 1976).

"Supervisors can, . . . 'incur liability ... for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices.'" *Langford*, 614 F.3d at 460 (citations omitted). Many examples exist of prison supervisors being held liable for their conduct in such situations. A summary of examples is found in *Langford*, 614 F. 3d at 464.

> *See, e.g., Crooks,* 872 F.2d at 804 (holding that prison supervisors may be held liable for "inadequate prison policies or medical supervision ... just as if they had refused to deliver [medical] services themselves"); *Messimer v. Lockhart,* 702 F.2d 729, 732 (8th Cir.1983) (holding that the Director of the Arkansas Department of Correction could be held liable for failing to override "policy decisions" that allegedly led to unconstitutional conditions of confinement); *see also Wellman v. Faulkner,* 715 F.2d 269, 272 (7th Cir.1983) (holding that deliberate indifference "can be demonstrated by 'proving there are such systemic and gross deficiencies in ... procedures that the inmate population is effectively denied access to adequate medical care' " (quoting *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir.1980)).

Contrary to Defendants' assertions, Plaintiff has alleged sufficient personal action by these Defendants to state a claim against each of them for violation of his constitutional rights. Here, Defendant Lombardi was responsible to ensure the structure of and housing of each prison in Missouri. (*See* Section 217.025 R.S.Mo.) The other Defendants in supervisory positions, including Defendants Earls, Hurley, Jones, Griggs and Godert, were personally involved in the

maintenance of NECC. The actions of each of these Defendants were directly involved in allowing the steel grates to remain in place and were the only ones with the authority to remove them. (Doc. 114, ¶¶ 85, 86, 87, 95, 100, 102, 103.) Defendants Allen, Rhodes, Baker, and Cutt were all involved in placing or keeping Plaintiff in Ad. Seg. by physically participating in his transfer or selection of his cellmates or in the decisions to place or keep him in Ad. Seg. (Doc. 114, ¶¶ 85, 86, 87, 120, 228).

Defendants are not entitled to qualified immunity as to Count XII. Plaintiff has alleged sufficient facts to establish the personal involvement of each of these Defendants in the placement of Plaintiff in Ad. Seg. in a cell with a steel grate with points sufficient to cause injury and which created an unnecessarily dangerous condition that served no security or safety interest. See *Whalen v. City of Springdale, Arkansas,* 933 F2d 668, 671 (8th Cir. 1991) (an inmate has a constitutional right to a safe prison cell.) Further, Defendants clearly knew that to place the Plaintiff in an unnecessarily dangerous condition was a violation of his constitutional right to be free from cruel and unusual punishment. The duty of prison officials to protect those in their custody is well established from at least 1995 when the Supreme Court held that the Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement and provide reasonable measures to guarantee the safety of the inmates. See *Farmer*, 511 U.S. at 832-833 (internal citations omitted).

For all of the foregoing reasons, the Motion of the Defendants for Judgment on the Pleadings in Count VIII should be denied.

## F.  PLAINTIFF STATES A CLAIM FOR VIOLATION OF PLAINTIFF'S DUE PROCESS AND EQUAL PROTECTION RIGHTS

### 1.  IN COUNT XIII RELATING TO THE FAILURE TO HAVE A POLICY DEFINING THE TERM "GANG"; AND

## 2. IN COUNT XIV RELATING TO THE VIOLATION OF THE ENEMY WAIVER POLICY.

Plaintiff has alleged sufficient facts to support his claim for violation of his Due Process and the Equal Protection rights relating to his confinement to Ad. Seg. pending investigation allegedly due to "gang activity" and the failure of the prison personnel to follow the enemy waiver policy. (Doc. 114, ¶¶ 86, 95-105, 125-130.) The Due Process Clause prevents the State from depriving any person of life, liberty or property without due process. The Equal Protection Clause requires that the government treat similarly situated individuals alike. Plaintiff has alleged sufficient facts to state a claim for both violation of Due Process and Equal Protection relating to the lack of a "gang" policy and his incarceration in Ad. Seg. as well as the violation of the "enemy waiver" policy.

To put it as simply as possible, Plaintiff alleged that he was incarcerated in Ad. Seg. for alleged gang activity without an opportunity to be heard or even be informed of the the the conduct that allegedly resulted in his incarceration there. (Doc. 114, ¶¶ 86, 95-105, 106-112.) He also alleged that this treatment differed from others transferred from the general population to Ad. Seg. (Doc. 114, ¶¶ 86, 95-105, 106-112.) Plaintiff has further alleged that he was never given an opportunity to sign or refuse to sign an enemy waiver concerning those who declared him an enemy in Ad. Seg. before he was released back to general population. (Doc. 114, ¶¶ 125-130). Plaintiff alleged that other prisoners, including those who declared him an enemy in Ad. Seg. were given that opportunity as required by the policy. (Doc. 114, ¶¶ 125-130.) These allegations are more than sufficient to state a claim for violation of Plaintiff's Due Process and Equal Protection rights.

Determining whether Plaintiff's confinement to Ad. Seg. and/or the failure to follow the enemy waiver policy violated Plaintiff's due process rights involves a two-step inquiry: the

Court must first address whether a liberty interest was at stake and then it must determine what process is needed to protect that liberty interest. See *Williams v. Hobbs,* 662 F.3d 994, 1000 (8th Cir.2011) (citations omitted). See also *Williams v. Norris*, 277 Fed. Appx. 647, 649 (8th Cir., 2008) *citing Wilkenson v. Austin*, 545 US 209, 224 (US 2005).

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "To determine what process is due in a particular case, a court determines whether the plaintiff was deprived of a property or liberty interest and, if so, whether the procedures followed were sufficient to satisfy constitutional due process requirements." *State ex rel. Nixon v. Peterson*, 253 S.W.3d 77 (Mo banc, 2008) (*citations omitted*).

### **"Gang" Policy and Incarceration in Ad. Seg.**

Missouri state inmates have a state-created liberty interest in the hearing process provided in Sections 217.375.1 and 217.375.2. In pertinent part, Section 217.375.1 and Section 217.375.2 state:

> 217.375. 1. When an offender is an immediate security risk, or an offender is violent, struggling and creating sufficient disturbance to indicate he is not in control of himself, or an offender is physically violent, or an offender is in urgent need to be separated from others for his own safety or that of others, or for the security and good order of the correctional facility, the chief administrative officer of the correctional facility or his designee may immediately place the offender in an administrative segregation unit which shall be situated so that the segregation of such offender from the other offenders of the correctional facility is complete. A review hearing shall be held concerning the incident within five working days.
> 2. A review hearing shall be held for each offender detained in administrative segregation thirty days after the initial period of confinement and every ninety days thereafter. The chief

> administrative officer of the facility shall keep records of the
> names of all those offenders confined to administrative
> segregation, the reason for such confinement, the length of time
> confined in administrative segregation and any other information
> required by his division director.

A state may create a liberty interest protested by the Due Process Clause through enactment of certain statutory or regulatory measures. *Hewitt v. Helms*, 459 US 460, 469 (US, 1983). The court can consider the Missouri Department of Corrections Policies and Procedures in making the analysis of whether a liberty interest exists. The State of Missouri has created such a liberty interest to be free from Ad. Seg. in Statute 217.375.1. See *Howard v. Armontrout*, 729 SW2d 547, 549 (HN 5&6) (Mo. App. 1987) Plaintiff plead a protective liberty interest to remain in the general population pursuant to statute as incorporated into the Missouri Department of Corrections TASC policy. Defendants violated the statute by not holding the mandatory review hearing within five working days. (Doc. 114, ¶ 95.) The Supreme Court has outlined the procedures a correctional facility must follow to conduct an impartial due process hearing in *Wolf v. McDonnell*, 418 US 539, 563-66, 570 (1974). The procedures include listing written notice of charge and written statement of evidence required upon for transfer to Ad. Seg. Due Process requires that there be some evidence of a prison board decision to place an inmate in segregation for an administrative reason such as gang affiliation. See *Superintedent v. Hill* 472 US 445, 455 (1985).

A state may not simply re-label action requiring due process as something else in order to avoid the requirements of due process. See *Parker v. Cook*, 645 F.2d 865, 975 (5th Cir. 1981) (citations omitted). While Section 217.375 does not use the words "pending investigation," it is clear that **plaintiff**'s transfer to Ad. Seg. falls under this section. The alleged investigation was of purported "gang" membership or activity, which undoubtedly relates to prison security or safety or a perceived risk of violence. This statute makes the 5-day, 30-day and continuing 90-day

review hearings mandatory as the statute contains the word "shall" with respect to these hearings. See *Knight v. Armontrout, 878 F. 2d 1093, 1095 (8th Cir. 1989).* A state-created liberty interest arises in situations in which the state has placed substantive limitations on the exercise of official discretion. *Clark v. Brewer*, 776 F.2d 226, 230 (8th Cir. 1985) citing *Olim v. Wakinekona,* 461 U.S. 238, 249 (1983). Liberty interests created by the state may be "found not only in a state's statutes or administrative code, but also in official policy pronouncements that are intended to guide the exercise of discretion." *Id.* (citations omitted). In determining whether state statutes, regulations, or policy statements place substantive limitations on the ability of penitentiary officials to retain an inmate in close management, there must exist in the statute, regulation, or policy statement particularized substantive standards or criteria that guide the exercise of discretion by penitentiary officials. *Clark v. Brewer*, 776 F.2d 226, 230 (8th Cir. 1985) (citations omitted). In making this determination, an important factor that must be considered is whether the statute, regulation, or policy statement in question contains language of a mandatory nature such as "shall", "will" or "must". See *Clark v. Brewer*, 776 F.2d 226, 230 (8th Cir. 1985). See also *Knight* at 1095.

The Supreme Court has outlined the procedures a correctional facility must follow to conduct an impartial due process hearing in *Wolf v. McDonnell*, 418 US 539, 563-66, 570 (1974). The procedures include listing written notice of charge and written statement of evidence required upon for transfer to Ad. Seg. (Doc. 114, 95.) "A fundamental tenet of due process is that to be sanctioned one must have received fair notice that one's allegedly violative conduct was prohibited." *Coffman, v. Trickey*, 884 F.2d 1057, 1060 (citations omitted).

Neither the Missouri Department of Corrections nor the Northeast Correctional Center have rules or policies that define what constitutes "gang" activity, membership or association. Therefore, Plaintiff was given no notice of what conduct he engaged in that made him subject to

investigation for "gang" activity and thus no way to protect himself from future activities that would subject him to further confinement in Ad. Seg. The assignment merely stating it is due to pending investigation" fails to meet the due process requirements outlined in *Wolf*. See *Morgan v. Wallace* 2014 WL 3557643, *4, (where incarceration and continued assignment to Ad. Seg. was due to a pending investigation, a question of fact was created as to whether plaintiff's due process rights were violated.) Not only are officials "to provide a brief summary of the factual basis for the classification review and allow[ ] the inmate a rebuttal opportunity," but if the recommendation is special confinement, "the decision-maker [must] provide a short statement of reasons. This requirement guards against arbitrary decision making while also providing the inmate a basis for objection.... The statement also serves as a guide for future behavior." *Id*. at *7 citing *William,* 662 F.3d at 1008 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 225–26 (2005)). No such recommendation was provided for Plaintiff here.

Plaintiff has also pled sufficient facts to support an Equal Protection Claim. He has alleged that he was entitled to the protections of Section 217.375. (Doc. 114, ¶¶ 95, 110.) He has alleged that he was not afforded the protections under Section 217.375 and that his due process rights were violated by his prolonged stay in Ad. Seg. without being told of the conduct that resulted in his being confined there. (Doc. 114, ¶¶ 95, 101, 110.) Further, the absence of a policy in this situation results in arbitrary use of the term "gang" to treat inmates engaging in identical activities differently than one another. The 5th Amended Complaint, when read as a whole, establishes that Plaintiff alleged he was treated differently than others similarly situated regarding his incarceration in Ad. Seg. Further, it establishes that the reason for this disparity in treatment was due to the wrongful purpose of retaliation for exercising his constitutional right to file Grievances concerning deliberate indifference to his medical needs and violation of his constitutional rights.

**Enemy Waiver**

The "enemy waiver" is a prison policy designed to protect inmates from harm by keeping them safe from those who have declared them enemies. It is, therefore, a policy designed to protect the life, liberty and property of the Plaintiff and protect his due process rights, and its violation deprives Plaintiff of those rights. It is a policy that is applicable to all inmates incarcerated in Ad. Seg. who have someone declare them an enemy. Plaintiff has alleged he was treated differently than others housed in Ad. Seg. with him, because some of those who were housed with him and declared him an enemy were allowed to sign enemy waivers when he was not even granted that opportunity. (Doc. 114, ¶ 130.) This establishes a violation of his Equal Protection rights. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Plaintiff has alleged that the purpose of treating him differently than other inmates regarding his incarceration in Ad. Seg. and the enemy waiver policy was intentional and for the wrongful purpose of retaliation for exercising his constitutional right to file Grievances concerning deliberate indifference to his medical needs and violation of his constitutional rights.

Contrary to Defendants' assertions, Plaintiff has alleged sufficient personal action by these Defendants to state a claim against each of them for violation of his constitutional rights. Here, Defendant Lombardi has control and jurisdiction over all persons who are legally sentenced, assigned and committed to the custody and supervision of the department. (*See* Section 217.025 R.S.Mo.) Defendants Hurley, Earls, and other administrative personnel (Defendants Griggs, Jones, Godert, and Butler) were all involved in failing to establish definitions of "gang affiliation" or "gang activity" or a policy requiring that a specific clear

description of the conduct or potential rule violation that is the basis for an investigation be clearly stated. (Doc. 114, ¶ 107) Furthermore, Plaintiff has alleged sufficient facts to establish personal involvement of each of these Defendants in his placement of a cell in Ad. Seg. and the failure to provide him with timely and fair hearings in accordance with Section 217.375. Additionally, the duty of prison officials to protect the Due Process and Equal Protection rights of inmates has been long established and Defendants undoubtedly knew it was against the law to deprive an inmate of those rights. Additionally, Plaintiff has alleged that Defendants Hurley, Earls and Butler were all involved in the violation of the enemy waiver policy. (Doc. 114, ¶¶ 126, 285)

For all of the foregoing reasons, the Motion of the Defendants to Dismiss Counts VIII should be denied.

## G. PLAINTIFF HAS STATED A CLAIM FOR DECLARATORY AND INJUNCTIVE RELEIF:

1. **COUNT XVII REGARDING PLAINTIFF'S AD. SEG. HEARINGS;**
2. **COUNT XVIII STATES REGARDING THE LACK OF OFFENDER INVESTIGATION POLICIES;**
3. **COUNT XX REGARDING THE PRESENCE OF THE STEEL GRATES ON THE AD. SEG. CELL DOORS;**
4. **COUNT XXI REGARDING THE LACK OF POLICIES DEFINING TERMS RELATED TO 'GANGS";**
5. **COUNT XXII REGARDING THE ENFORCEMENT OF THE ENEMY WAIVER POLICIES.**

Defendants essentially assert that all of Plaintiff's claims for Declaratory and Injunctive relief should be dismissed because:

a. Plaintiff has not pled sufficient facts to support his Due Process claim in that the claim is based on a failure to follow a policy and there is not federal constitutional liberty interest in having prison officials follow prison regulations and because Plaintiff failed to plead that he was deprived of life, liberty, or property;

b. Plaintiff's Equal Protection claims fail because he does not plead fact showing Defendants acted with discriminatory intent or purposeful action against and identifiable group of which Plaintiff was a member; and

c. Plaintiff did not allege sufficient personal involvement of certain Defendants in the enforcement of the enemy waiver policy.

Defendants' assertions in this regard are without merit. Plaintiff has alleged Due Process violations for all of the reasons stated in the forgoing argument sections of this brief. See specifically section F above citing to the allegations in his complaint and the law as set forth in *Hewitt v. Helms*, 459 US 460, 469 (US, 1983) and *Howard v. Armontrout*, 729 SW2d 547, 549 (HN 5&6) (Mo. App. 1987).

Further, Plaintiff has stated claims for Equal Protection violations in that he has alleged the conduct against him in denying him a full administrative hearing, the absence of policies regarding offender investigation and "Gangs" and the enforcement of the enemy waiver. He alleged that he was a member of the class of offenders placed in Ad. Seg. and that he was treated differently than other offenders in that he was not given full, fair hearings while in Ad. Seg., written statements of the charges and findings so that he could avoid the allegedly offending conduct in the future and was not even offered the opportunity to sign an enemy waiver. He has alleged that all of the other offenders confined to Ad. Seg. were given full, fair hearings, written notice of the charges and findings against them and the opportunity to sign an enemy waiver. Plaintiff has alleged that he was singled out for the reasons of retaliation for complaints he made about medical care and other asserted deprivations of his constitutional rights. Plaintiff has alleged that he was entitled to a safe cell and the actions of placing him in Ad. Seg. with inmates known for assaulting sex offenders, double housing him in a cell with a steel grate that could be used as a weapon, and releasing him without allowing him the opportunity to sign an enemy

waiver so that he could at least attempt to protect himself from those who declared him an enemy in Ad. Seg., all deprived him of his right to life and liberty.  See specifically section F above citing to the allegations in his complaint and the law as set forth in *Wolf v. McDonnell,* 418 US 539, 563-66, 570 (1974); *Superintendent v. Hill* 472 US 445, 455(1985); *Morgan v. Wallace,* 2014 WL 3557643 ( US DC E.D. MO, 2016).

The allegations that Defendants Hurley and Earls were not personally involved in the violation of his Due Process and Equal Protection claims related to the violation of the enemy waiver policy and the allegations that Defendants Lombardi and Earls lacked sufficient personal involvement in the request for injunctive relief related to the Ad. Seg. hearings, are also without support. In Jackson v. Nixon, 747 F3d 537, 543 (8th Cir., 2014), the very case cited by Defendants, the court clearly stated that "[w]hile the doctrine of respondeat superior does not apply to § 1983 cases, a supervisor may still be liable under § 1983 if either his direct action or his 'failure to properly supervise and train the offending employee' caused the constitutional violation at issue. *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir.2001) (quotation omitted); *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir.1989). Even if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in 'creating, applying, or interpreting a policy' that gives rise to unconstitutional conditions. *Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir.2009) (citing *Trudeau v. Wyrick*, 713 F.2d 1360, 1367 (8th Cir.1983))." The court in Nixon went on to state that "[t]he authority of the state DOC director to make prison-wide policy decisions may be sufficient to give rise to liability under § 1983. We have found a DOC director may be 'responsible for his own failure to act,' based on his statutory duty to administer the Department of Corrections and 'supervise the administration of all institutions, facilities and services under the Department's jurisdiction' and his authority to change the challenged policies. *Messimer v. Lockhart*, 702 F.2d 729, 732 (8th Cir.1983) (quoting Ark. Stat.

Ann. § 46–105(a) (1977)). Moreover, an allegation that the DOC director authorized an unconstitutional policy may be sufficient to state a claim 'for actions allegedly taken directly by' the director. *Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir.1999).

In the present case, Plaintiff has pled that Defendant Hurley created and enforced a specific policy that denied Plaintiff access to health care when it was his constitutional duty to provide such access (Doc. 114, ¶¶ 73-81.) Plaintiff has also alleged that Defendant Hurley and others were personally involved in the decision to keep him in Ad. Seg. and that Defendants Hurley, Lombardi, and Earls were all involved in the failure to establish uniform definitions and policies relating to "gangs" which led to the violation of Plaintiff's constitutional rights relating to incarceration in Ad. Seg., and that they knew the presence of the steel grate which they were either responsible for placing or for not removing denied Plaintiff his rights to a safe cell. (Doc. 114, ¶¶ 107, 113, 212-217, 220-225, 236-242, 267-271, 273-280, 282-288.)  Plaintiff also alleged that Defendant Hurley was -responsible for making certain that all appropriate enemy waivers were signed before plaintiff was released back to general population. (Doc. 114, ¶¶ 128, 129.)

Plaintiff further has plead the existence of a steel grate on a cell door which creates an unsafe environment which is sufficient to state a constitutional violation. (Doc. 114, ¶ 112.) Although Plaintiff was not injured physically by the grate, a prisoner need not wait until he is injured to seek relief from such a condition. *Farmer,* 511 U.S. at 844–46 Additionally, Plaintiff has plead that the fact he was placed in Ad. Seg. under the investigation for gang activity has resulted in him being labeled a gang member although no such finding has ever been made and that the unsupported statement in his record will adversely impact his treatment within the prison, by the parole board and when he is released from prison. (Doc. 114, ¶ 111.)

**CONCLUSION**

For all of the forgoing reasons, Defendants' Motion to Dismiss Counts III, IV, VII, VIII,

IX, X, XI, XII, XIII, XIV, XVII, XVIII, XX, XXI and XXII should be denied.

Respectfully submitted,

GREENSFELDER, HEMKER & GALE, P.C.

   /s/ Mary L. Reitz
Mary L. Reitz, #37372MO
mlr@greensfelder.com
10 S. Broadway, Suite 2000
St. Louis, MO  63102
Ph: 314-241-9090; Fax: 314-241-1265

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 7th day of October, 2016, the foregoing document was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

   /s/ Mary L. Reitz