**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| FRANKLIN G. ENDICOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:14 CV 107 DDN |
| | ) | |
| JAMES HURLEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

This action is before the court on the motion of defendants Larry Allen, Roger Avery, Jacob Baker, Tyree Butler, Lori Calvin, David Cutt, Kristin Cutt, Alan Earls, Joyce Edwards, Chantay Godert, Richard Griggs, James Hurley, William Jones, George Lombardi, Jeffrey Reid, James Rhodes, and Lisa Ruby[1] to dismiss Counts III, IV, VII, VIII, IX, X, XI, XII, XIII, XIV, XVII, XVIII, XX, XXI, and XXII of plaintiff's Fifth Amended Complaint (ECF No. 114) for failure to state a claim. (ECF No. 118). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court held a hearing on this matter November 15, 2016. The court grants the motion in part and denies the motion in part.

_____

[1] In the interests of the parties and judicial economy, this Court divided Plaintiff's claims into two groups for separate consideration on February 1, 2016. (ECF No. 75). Group 1 Defendants consist of Larry Allen, Roger Avery, Lori Calvin, David Cutt, Alan Earls, Chantay Godert, Richard Griggs, James Hurley, William Jones, George Lombardi, Jeffrey Reid, and Lisa Ruby. Group 2 Defendants consist of Larry Allen, Jacob Baker, Tyree Butler, David Cutt, Kristin Cutt, Alan Earls, Joyce Edwards, Chantay Godert, Richard Griggs, James Hurley, William Jones, George Lombardi, and James Rhodes. This motion is made by both groups of Defendants.

# I.  BACKGROUND

The relevant facts as alleged in the pleadings, taken in favor of plaintiff, are as follows.  Plaintiff Franklin G. Endicott is currently incarcerated at Northeast Correctional Center ("NECC") in Bowling Green, Missouri.  (ECF No. 114, ¶ 1).  All Defendants are or were employed by NECC or the Missouri Department of Corrections ("MDOC") or were otherwise tasked with assisting inmates at NECC at the times pertinent to this litigation.  (*Id*. at ¶¶ 2-23).  Larry Allen was a Lieutenant at NECC, Roger Avery is a Corrections Officer I ("CO I") at NECC, Jacob Baker is a Corrections Officer II ("CO II") at NECC, Tyree Butler is a Function Unit Manager at NECC, Lori Calvin is a Captain at NECC, David Cutt is a Lieutenant at NECC, Kristen Cutt is a caseworker and occasionally acts as a Functional Unit Manager and committee chair at NECC, Alan Earls is the Deputy Division Director of the Missouri Adult Institutions, Joyce Edwards is the librarian at NECC, Chantay Godert is an Assistant Warden at NECC, Richard Griggs is an assistant Warden at NECC, James Hurley is the Warden at NECC, William Jones is the Deputy Warden at NECC, George Lombardi is the Director of the MDOC, Jeffrey Reid is a CO I at NECC, James Rhodes is an investigator at NECC, and Lisa Ruby is a CO I at NECC.  *Id.*  In addition, medical services provider Corizon and/or Corizon, LLC ("Corizon") was under contract with the MDOC to provide medical services at NECC at the times pertinent to this litigation.  *Id.*

## A. Medical Claims

Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs.  (*Id.* at ¶¶ 154-200).  Specifically, plaintiff details conduct related to his need for a vein ablation procedure, his need for a supportive boot following an ankle fracture, and his need to visit sick call for prostate medication.  *Id.*  Plaintiff alleges that defendants Avery, Calvin, Cutt, Hurley, and Reid know that inmates at NECC need and are entitled to medical care.  (*Id.* at ¶¶ 177, 190).  Plaintiff further alleges that defendant Davis

participated in the review of and response to some of the grievances which plaintiff made concerning his treatment and therefore knew or should have known of the alleged deliberate indifference of Corizon staff at NECC.  (*Id.* at ¶¶ 82-84).

### i. Vein Ablation Procedure

Plaintiff alleges he was diagnosed with symptomatic varicose veins in his right leg on or about July 2010.  (*Id.* at ¶¶ 29-50).  His doctor wrote him a pain prescription for Valium and numbing gel, recommended an ultrasound, and noted that plaintiff would likely need an ablation procedure.  *Id.*  His doctor faxed orders to this effect to NECC on or about September 13, 2010.  *Id.*  Corizon employees made no effort to supply plaintiff with the prescribed medication or an alternative, because schedule II narcotics could not be provided to plaintiff.  *Id.*  On or about September 17, 2010, plaintiff requested medical services because his calf had become swollen, hardened, red, warm, and painful.  At this time, an ultrasound was requested for approval.  *Id.*

On September 20, 2010, plaintiff was seen at sick call in NECC and diagnosed with phlebitis and inflammation of a vein.  *Id.*  He was ordered to rest and ice the area and given aspirin.  An ultrasound had still not been performed.  *Id.*  On or about September 29, 2010, plaintiff was admitted to the Audrain Medical Center where an ultrasound was performed, showing a clot in his vein above his right ankle.  The results of this ultrasound are in the plaintiff's chart from Corizon, suggesting that Corizon employees knew or should have known of the blood clot.  *Id.*  Plaintiff was prescribed pre-operative medication for a vein ablation procedure to take place on or about October 1, 2010.  *Id.*  Corizon employees made no effort to provide these medications to plaintiff before the procedure.  *Id.*  The procedure was more painful and stressful than it would have been had plaintiff been given the prescribed medication.  *Id.*  Due in part to these factors, the procedure was only partially completed on October 1, 2010, and a follow-up procedure was scheduled for October 15, 2010.  *Id.*

For the October 15, 2010, appointment, no employee at Corizon made any effort to arrange for the pre-operative medication to be supplied to plaintiff, and they knowingly sent him to the appointment without the required medication being given. *Id.* Defendants Avery and Reid were assigned to take plaintiff to this appointment. *Id.* They were aware of plaintiff's blood clot and that the purpose of the appointment was for surgery on the blood clot. *Id.* Defendants Calvin and Cutt knew that defendants Avery and Reid had this assignment. (*Id.* at ¶ 193). All of these defendants knew when "count time" occurred and that no inmate movement was allowed during this time. (*Id.* at ¶ 194). The officers unnecessarily delayed plaintiff's transfer to his appointment such that it had to be rescheduled to November 5, 2010. (*Id.* at 29-50). Captain Calvin and Lt. Cutt contributed to this delay by intentionally distracting CO I Avery and CO I Reid from preparing for and leaving on the transportation assignment. *Id.* They called defendants Avery and Reid into an office area before count time and kept them there until after count time was cleared. *Id.* Defendants Avery and Reid then left the plastic cuffs required for the transfer at the institution. They had to return to obtain them. As a result of these actions, plaintiff missed his surgery and had to have it rescheduled. *Id.*

While waiting for his rescheduled surgery, on October 21, 2010, plaintiff went to the infirmary with a self-reported emergency because his left hand was tingling and his fingers and face were becoming numb. *Id.* Plaintiff informed an employee of Corizon of the blood clot and that he was concerned it was moving. *Id.* The nurse assessed the situation as "non-emergent, but urgent" and scheduled plaintiff to be seen at the next available sick call. *Id.* On October 22, 2010, plaintiff appeared at sick call and reported that he had experienced numbness from the top upper left side of his lip and his left upper arm down to his fifth digit the night before. He complained of dizziness and a headache. The nurse at sick call did not consult a physician, order any tests, or take any action to rule out complications or conditions related to his lower extremity blood clot, but referred plaintiff to Chronic Care. *Id.*

On November 3, 2010, plaintiff reported to a nurse that he had felt pressure to the brain, which worried him that he was having stroke-like symptoms. *Id.* He had not seen a physician even though he had reported the same symptoms on October 21, 2010. *Id.* Corizon made no other efforts to rule out a stroke, transient ischemic attack, or other complications due to the known blood clot in his left leg. *Id.*

On November 5, 2010, plaintiff attended his follow-up appointment, where the doctor recommended that plaintiff receive an ultrasound on his leg as follow-up to the October vein ablation procedure, as well as a carotid Doppler due to the transient ischemic attack symptoms. *Id.* On November 8, 2010, a Corizon employee reviewed the doctor's recommendation and referred it for approval. *Id.* It was approved on or about the same day and the carotid Doppler occurred on November 18, 2010. *Id.* The follow-up ultrasound was delayed until December 2, 2012, due to an alleged error in obtaining a referral. *Id.*

## ii. Fractured Ankle

Plaintiff alleges that on January 11, 2014, he injured his right ankle. (*Id.* at ¶¶ 51-61). He was sent via ambulance to Hannibal Regional Hospital's Emergency Department and diagnosed with an avulsion fracture of his right ankle. *Id.* He received discharge instructions to follow up with an orthopedic specialist in five days. When plaintiff returned to NECC the same day, a Corizon nurse saw him and noted only some of the discharge instructions, stating plaintiff was to follow up with a Corizon doctor in ten days, not an orthopedic specialist in five days. *Id.* The Corizon nurse failed to provide the Emergency Department's report to Corizon doctors, and although plaintiff was given tramadol and Ibuprofen for his pain, plaintiff did not receive any further aid until January 21, 2014. *Id.* This delay increased his risk for complications due to his pre-existing medical conditions. *Id.*

On January 21, 2014, a Corizon doctor refilled plaintiff's medication and ordered a referral to an orthopedic specialist. *Id.* On January 29, 2014, eighteen days after his Emergency Department visit, plaintiff saw an orthopedic specialist via teleconference and was prescribed a boot cast. *Id.* This cast was to be shipped overnight to arrive at NECC for plaintiff's immediate use. *Id.* On February 4, 2014, plaintiff went to sick call to inquire about his prescribed boot cast. *Id.* A Corizon nurse stated she knew something about a boot cast, left the room, and returned with the cast. *Id.* An x-ray technician fitted the boot and gave it to plaintiff to wear. *Id.* On March 5, 2014, the orthopedic specialist ordered plaintiff to remain in the boot cast for two weeks and then to wean out of the boot cast. *Id.* On March 19, 2014, the boot cast was taken away from plaintiff with no time to strengthen his leg and wean out of the boot cast. *Id.*

### iii. Prostate Medication

At the times pertinent to this litigation, plaintiff alleges that the contractual agreement between Corizon and the MDOC provided inmates with fifteen minutes to move from their housing unit to sick call in order to turn in a Medical Services Request form. (*Id.* at ¶¶ 60-81, 176-188). NECC Warden James Hurley and CO I Lisa Ruby were aware or should have been aware of the 15 minute contractual provision but defendant Hurley reduced this time to only ten minutes in NECC. *Id.* Defendants Hurley and Ruby knew that some inmates would be denied medical care if they arrived between ten and fifteen minutes, rather than in ten minutes or less. *Id.*

On or about August 1, 2014, a Corizon doctor renewed plaintiff's medications and, without seeing plaintiff, changed his prostate medication. *Id.* This was because plaintiff's medication was a "formula" medication, and a changed NECC policy prohibited formula medications from being prescribed for inmates. *Id.* This change in plaintiff's prostate medication caused him to experience a swollen prostate, with difficulty urinating, pain, and discomfort. *Id.* When plaintiff attempted to visit sick call

on August 29, 2014, to complain of this issue, he was denied because it took him between ten and fifteen minutes to arrive. Due to the NECC's reduced timeframe and the difficulty of movement in the prison environment, plaintiff was outside the Warden's ten-minute policy. *Id.* CO I Lisa Ruby enforced defendant Hurley's 10 minute time limit. *Id.* Plaintiff, therefore, continued to suffer the effects of the wrong prostate medication, resulting in continued difficulty urinating, pain, and discomfort. *Id.* CO I Ruby was aware that by enforcing the ten-minute window, she was denying inmates access to health care regardless of their medical condition. *Id.* MDOC Director George Lombardi made no meaningful attempt to change the NECC time-limit to reflect the contracted-for time of fifteen minutes. *Id.*

On or about September 5, 2014, plaintiff reported to a Corizon nurse that he needed to see a physician because of his continued difficulty urinating. *Id.* However, the nurse never discussed these complaints with a physician or scheduled an appointment for plaintiff to see a physician. *Id.* On or about September 20, 2014, plaintiff saw a doctor for a cardiology appointment and was finally able to change his prostate medication prescription. *Id.* He was able to begin taking that medication on September 30, 2014, after which it took 7-10 days for the medication to reduce the swelling in plaintiff's prostate and relieve his symptoms. *Id.* Throughout this time, in addition to difficulty urinating, he had a painful bladder, lack of sleep, emotional stress, and irritability. *Id.*

### B.  Retaliation Claims

Plaintiff alleges that he filed multiple grievances against Corizon and NECC personnel regarding his medical needs. (*Id.* at ¶¶ 60, 61, 78, 82-84). These were consistently denied with little to no remedial action taken at NECC. *Id.* Plaintiff alleges that he experienced retaliation as a result of filing these grievances, in that certain defendants transferred plaintiff to administrative segregation, placed him in hazardous conditions, and denied him access to the law library. (*Id.* at ¶¶ 85-145). Plaintiff further

alleges that defendants Hurley, Davis, Griggs, Jones, Godert, Earls, and Lombardi had actual knowledge of the retaliation against plaintiff, failed to fully investigate plaintiff's allegations, and authorized the NECC and Corizon retaliatory actions. (*Id.* at ¶¶ 251-258).

### i. Transfer to Administrative Segregation

Plaintiff alleges that as a result of the grievances he filed against a Corizon nurse, she was informed on or about March 19, 2014, not to delay or deny plaintiff's access to medical care. (*Id.* at ¶¶ 85-94). On or about the same day, the nurse's husband, Lt. Larry Allen, put plaintiff in administrative segregation for investigation of gang activity. *Id.* Other correctional officers objected to this classification, but defendant Allen insisted on it. *Id.* During the transfer of plaintiff to administrative segregation, defendant Allen treated him in an intimidating manner and arranged for his wife to perform a vital signs check before plaintiff was placed in administrative segregation. *Id.*

Prior to this time, plaintiff had been on honor status. *Id.* Upon placement in administrative segregation his honor status was revoked and all privileges were rescinded. *Id.* Additionally, while in administrative segregation plaintiff was unable to perform physical therapy on his ankle. *Id.* The initial decision to keep plaintiff incarcerated in administrative segregation on March 28, 2014, was approved by Assistant Warden Godert. (*Id.* at ¶¶ 100-105). The decisions to keep plaintiff in administrative segregation were approved by defendants Deputy Warden Jones and Assistant Warden Scott Griggs. *Id.* The decision to place plaintiff in administrative segregation and the decisions to keep him there were all also approved by defendant Warden Hurley. *Id.* Plaintiff was not released from administrative segregation until August 1, 2014. *Id.*

## ii. Hazardous Conditions

Plaintiff alleges that the cell doors in administrative segregation are solid steel with a solid glass window. (*Id.* at ¶¶ 112-130). Each steel door has eleven steel pieces welded to the inside of the door at chest level at a horizontal angle potentially allowing for severe injury to inmates. *Id.* Warden Hurley, Deputy Director Earls, and Director Lombardi permitted or required these steel plates to be placed inside the cells, with no penological purpose. *Id.*

Prisoners housed in administrative segregation are double celled with anyone not on their list of known enemies. *Id.* At least three declared gang members refused to be housed with plaintiff, and plaintiff refused to be housed with any known gang member. *Id.* Plaintiff was housed in a single cell and then with a non-gang member for a least a portion of his time in administrative segregation. *Id.*

In July 2014, defendants Baker and Cutt moved plaintiff's property while plaintiff was showering and then ordered plaintiff shackled and cuffed on a steel bench until he agreed to be double celled. *Id.* Plaintiff agreed to a double cell if he would not be placed with a gang member. *Id.* Plaintiff was placed with a member of a prison gang known to assault sex offenders, which the plaintiff is. The corrections officer knew plaintiff was a convicted sex offender and that the other prisoner was a member of a prison gang known for assaulting sex offenders. *Id.*

Following this incident, when plaintiff was released from administrative segregation back into general population in August 2014, NECC failed to obtain an enemy waiver from plaintiff for each prisoner who declared him to be an enemy. *Id.* Under NECC policies, if two inmates declare themselves enemies in administrative segregation, each must sign a waiver before being placed back into general population. *Id.* If one refuses, one must be moved to a different prison. *Id.*

### iii.   Denial of Access to Law Library

Plaintiff alleges that while he was in administrative segregation from March to August 2014, he was denied access to the prison law library by the librarian, a corrections officer, Assistant Warden Griggs, and Warden Hurley.  (*Id.* at ¶¶ 131-145).  Plaintiff was then in the process of appealing his conviction in state court and preparing the lawsuit at issue here.  *Id.*  Plaintiff submitted multiple Special Unit Legal Request forms, which are required for inmates in administrative segregation to access case law and law clerk assistance.  *Id.*    Assistant Warden Griggs initially supported plaintiff's requests and stated he could have access to legal materials while in administrative segregation.  *Id.*  The librarian, however, denied plaintiff's forms and stated an additional Qualified Legal Claim form was required.  *Id.*  Defendant Griggs then responded to plaintiff's request by either saying a qualified legal claim verification was not required or that plaintiff could not access law materials as there was no court deadline to prepare for.  *Id.*  Plaintiff filed a grievance regarding the denials.  *Id.*

On July 23, 2014, defendants Butler, Kristin Cutt, and Griggs denied plaintiff's grievance and stated he needed an approved Qualified Legal Claim verification for such access.  *Id.*  Plaintiff appealed this decision to defendant Earls, who stated that "plaintiff failed to provide any evidence to substantiate that he was denied access to the materials in the law library."  (*Id.* at ¶ 138).  Other similarly situated prisoners were given access to the law library and offender law clerks.  *Id.*  Due to this denial, plaintiff was prevented from preparing and providing motions and research to his attorney who at that time was Larry Fleming.  *Id.*

Upon release from administrative segregation, plaintiff's access to the law library continued to be restricted.  *Id.*  Assistant Warden Griggs had plaintiff report to mandatory work detail during the free time plaintiff could have used in the law library.  *Id.*  Defendant Griggs also sent plaintiff's Qualified Legal Claim form back to plaintiff's case worker for verification of which days of the week plaintiff would be using the law

library.  *Id.*  Assistant Warden Griggs has not delayed another prisoner's request in this way. *Id.*

## II.  MOTION TO DISMISS

After plaintiff filed his fifth amended complaint, defendants Allen, Avery, Calvin, David Cutt, Earls, Godert, Griggs, Hurley, Jones, Lombardi, Reid, and Ruby moves to dismiss Counts III, IV, VII, VIII, IX, X, XI, XII, XIII, XIV, XVII, XVIII, XX, XXI, and XXII of that complaint for failure to state a claim.  Plaintiff opposes the motion.  (*See* ECF Nos. 114, 118-121, 132, 134).

### A.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss part or all of a case for its failure to state a claim upon which relief can be granted.  Fed. R. Civ. Pro. 12(b)(6).  A complaint "must include enough facts to state a claim to relief that is plausible on its face," providing more than just labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Such a complaint will "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and will state a claim for relief that rises above mere speculation.  *Twombly*, 550 U.S. at 555.

In reviewing the pleadings under this standard, the court accepts all of the plaintiff's factual allegations as true and draws all inferences in the plaintiff's favor, but the court is not required to accept the legal conclusions the plaintiff draws from the facts alleged.  *Retro Television Network, Inc. v. Luken Commc'ns, LLC,* 696 F.3d 766, 768-69 (8th Cir. 2012).  A motion to dismiss will be granted "when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law."  *Ashley Cnty, Ark. v. Pfizer, Inc.,* 552 F.3d 659, 665 (8th Cir. 2009).

### B.  Count III Does Not State a Claim

In Count III, plaintiff alleges defendants Hurley and Ruby were deliberately indifferent to his serious medical need when plaintiff was denied medical attention at sick call for arriving outside of the NECC ten-minute window.  (ECF No. 114, ¶¶ 176-188). Even construing all of the facts pled in the complaint in plaintiff's favor, the court concludes that this Count fails to state a claim for relief and that defendants Hurley and Ruby are entitled to judgment as a matter of law.

"To prevail on an Eighth Amendment claim of deliberate indifference to serious medical needs, an inmate must prove that he suffered from one or more objectively serious medical needs, and that prison officials actually knew of but deliberately disregarded those needs."  *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999).  A medical need is objectively serious if it has either "been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008).

At the time of the sick call visit in question, plaintiff had been previously diagnosed with prostate issues and prescribed medication, but had not yet been treated for the prostate issues for which he was making that particular sick call visit.  Furthermore, plaintiff does not allege nor can it be inferred that CO I Ruby or Warden Hurley were aware of this previous diagnosis or prescription.  Therefore, in order to be an objectively serious medical need, plaintiff's prostate symptoms needed to be so obvious that a layperson would recognize plaintiff's need for medical attention.  *Id.*  The Eighth Circuit has found a serious medical need was obvious to a layperson when an inmate was passing blood clots; complained of extreme tooth pain and had bleeding gums; or had excessive diarrhea, sweating, weight loss, and dehydration related to known diabetes.  *Id.* (citations omitted).  Under the facts alleged, the swollen prostate complained of on this occasion

would not have been obvious to a layperson. Furthermore, the mere act of requesting sick call is not sufficient to demonstrate a serious medical need.

Even if the swollen prostate was then a serious medical need, "[t]o establish a constitutional violation, it is not enough that a reasonable official should have known of the risk. Rather, a plaintiff must demonstrate the official actually knew of the risk and deliberately disregarded it." *Vaughn v. Greene County, Ark.,* 438 F.3d 845, 850 (8th Cir.2006). Deliberate indifference requires more than gross negligence. *Gibson v. Weber,* 433 F.3d 642, 646 (8th Cir. 2006). To be liable under the deliberate indifference standard, a prison official "'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Jenkins v. Cnty of Hennepin*, 557 F.3d 628, 633-34 (8th Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

In this case, plaintiff has not alleged any facts beyond conclusory statements that the ten-minute policy could constitute a substantial risk of serious harm and that defendants Hurley and Ruby actually drew this inference. Plaintiff has only alleged that defendants Hurley and Ruby were aware of the fifteen-minute contractual provision with Corizon. Plaintiff has not alleged that either defendant actually knew of plaintiff's swollen prostate on the night he attempted to visit sick call but took longer than ten minutes to arrive. In fact, plaintiff specifically alleges that the ten-minute window prevented him from informing anyone of his medical complaint at that time.

While a claim of deliberate indifference has been recognized in some circuits when prisoners are unable to make their medical problems known to medical staff, *see, e.g., Hoptowit v. Ray*, 682 F.2d 1237, 1253 (8th Cir. 1982), abrogated in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995), plaintiff alleges only that the NECC policy would deny some inmates medical care that the Corizon contract would have otherwise provided. Even liberally construing the complaint as alleging that the policy prevents prisoners from making their medical problems known, the facts alleged are

13

insufficient. Plaintiff alleges that he was unable to arrive to sick call within the ten-minute window from August 29, 2014, to December 5, 2014. (ECF No. 114, ¶ 77). However, he does not provide any facts as to why he had difficulties during this specific time period, or why he was later able to arrive within the ten-minute window after December 5, 2014. Plaintiff's complaint alleges that each housing unit had a specific sick-call time slot, and it details multiple successful visits to sick call under this system. Plaintiff alleges he spoke with a nurse about the prostate issue on September 5, 2014, during the period of the alleged inability to make sick call. (*Id.* at ¶ 65). Plaintiff does not allege that he was otherwise prevented from making his medical problems known between August 29 and December 5, 2014. He details multiple visits to sick call or doctor's appointments during this period. (*Id.* at ¶¶ 65-71).

The mere fact that defendant Hurley instituted a policy to give inmates ten minutes to arrive in sick care when NECC's contract with Corizon provided for a fifteen minute window is not sufficient for the court to infer that defendant Hurley thereby deliberately disregarded inmates' medical needs. Corizon's contractual provision did not confer to the inmates a new constitutional right to be seen if they arrived at sick call within fifteen minutes. Instead, the Eighth Amendment requires only "a system of ready access to adequate medical care." *Id.* "The Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. Cnty of Hennepin*, 557 F.3d 628, 633-34 (8th Cir. 2009).

For these reasons, the court grants defendants Hurley and Ruby's motion to dismiss Count III.

### C.  Count IV States a Claim

In Count IV, plaintiff alleges a deliberate indifference to a serious medical need by defendants Avery, Calvin, David Cutt, and Reid when they delayed his transfer for surgery on October 15, 2010. (ECF No. 114, ¶¶ 189-200). Construing all of the facts

pled in the complaint in plaintiff's favor, the court concludes that this Count states a claim for relief.

Applying the *Roberson* standard used above, plaintiff's claim of deliberate indifference requires proving that prison officials knew of but deliberately disregarded plaintiff's serious medical need. 198 F.3d at 647. Based on the facts alleged, it can be reasonably inferred that defendants Avery, Calvin, Cutt and Reid knew of plaintiff's appointment and the medical need giving rise to the appointment. It can also be inferred that plaintiff's medical need was objectively serious, as it had been diagnosed by a physician as requiring treatment and the appointment in question had been made in order to treat it. *Jones*, 512 F.3d at 481.

Plaintiff's allegations also provide facts from which the court can infer the mental state required. The complaint alleges that these defendants knew that no inmate movement was permitted during "count time." (ECF No. 114, ¶ 194). Defendants Calvin and Cutt are alleged to have "intentionally prevent[ed]" defendants Avery and Reid from preparing for and leaving for the assignment to transfer plaintiff by calling them into an office area prior to count time and holding them there until after count time. (*Id.* at ¶¶ 40-41). Defendants Avery and Reid are also alleged to have deliberately delayed the transfer of plaintiff by leaving behind the plastic cuffs they knew were necessary for the appointment, thus requiring a return to the institution. Drawing all inferences in plaintiff's favor, these facts could give rise to the inference that defendants knew of plaintiff's scheduled surgery but, "with deliberate indifference to the medical needs of plaintiff, all delayed the transfer of plaintiff to his appointment . . . to the point that [his appointment] needed to be rescheduled." (*Id.* at ¶ 196).

The determination of whether a delay is constitutionally actionable "depends on the seriousness of an inmate's medical condition and on the reason for the delay." *Plemmons v. Roberts*, 439 F.3d 818, 825 (8th Cir. 2006). A surgery is generally considered a serious medical procedure and the complaint has pled a plausible theory that

there was no proper reason for the delay. "[W]hen [an] inmate alleges that the delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment." *Keeper v. King*, 130 F.3d 1309, 1314–15 (8th Cir. 1997) (citations omitted). While the delay in his follow-up vein ablation appointment is not alleged to have had any effect on plaintiff's medical condition, plaintiff has pled a number of related detrimental effects: continued pain from the blood clot, fear and anxiety, tingling in his left hand and fingers, and numbness of the face. (ECF No. 114, ¶¶ 41-47). While tenuous, this is sufficient to state a claim. Plaintiff will need to present verifying medical evidence to show the detrimental effect of the delay. *Crowley v. Hedgepeth,* 109 F.3d 500, 502 (8th Cir.1997).

Defendants Avery, Calvin, Cutt, and Reid have not established that plaintiff's allegations show that they are entitled to qualified immunity on this claim. "Qualified immunity shields a government official from liability when his conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982)). To determine whether these defendants are entitled to qualified immunity, this court must determine whether (1) there has been a violation of a constitutional or statutory right and (2) the right was clearly established "such that a reasonable official would have known that his actions were unlawful." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). This court has already noted that plaintiff has alleged sufficient facts to make a claim that there was an Eighth Amendment violation of deliberate indifference in the failure of these defendants to transfer him to his surgical appointment. The issue is whether it was clearly established such that a reasonable official would have known that his actions were unlawful. The action in question need not have been previously held unlawful, but the unlawfulness must be "apparent" in "light of preexisting law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Eighth Circuit's decisions on delay in medical treatment make it clear that any reasonable officer should know that a delay in providing prompt, appropriate medical care is an Eighth Amendment violation. *See Plemmons*, 439 F.3d at 825; *Tlamka v. Serrell,* 244 F.3d 628, 635 (8th Cir. 2001). The current record before the court indicates that the officers were aware of plaintiff's medical needs. Therefore, defendants' motion to dismiss is denied as to Count IV.

### D. <u>Count VII Does Not State a Claim</u>

In Count VII, plaintiff alleges that defendants Allen, Baker, Butler, Cutt, Earls, Godert, Griggs, Hurley, Jones, Lombardi, and Rhodes retaliated against him by placing him in an administrative segregation cell with steel grates with sharp points on the inside of the door which may cause serious injury. (ECF No. 114, ¶¶ 218–225). This is separate from Count VI, which alleges retaliation in transferring plaintiff to administrative segregation. Even construing all of the facts pled in the complaint in plaintiff's favor, the court concludes that this Count fails to state a claim for relief.

To prevail on a First Amendment claim of retaliation, a plaintiff must prove that (1) he "exercised a constitutionally protected right," (2) was disciplined by prison officials, and (3) the plaintiff's exercise of the constitutional right "was the motivation for the discipline." *Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007). The filing of a prison grievance is protected First Amendment activity. *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994). Plaintiff has alleged that he filed multiple prison grievances. He has also alleged that he was placed in administrative segregation, which is a form of discipline, but which is addressed in Count VI. The specific condition of plaintiff's administrative segregation cell does not rise to an additional form of discipline sufficient to support a separate retaliation claim. While the condition of the cell might be dangerous and might not serve a legitimate penological purpose, the complaint fails to allege that defendants specifically created these cells or allowed them to be made in order

to discipline plaintiff for filing grievances. Therefore, Count VII is dismissed for failure to state a claim.

### E. **Count VIII States a Claim**

In Count VIII, plaintiff alleges that defendants Sergeant Baker and Lieutenant Cutt retaliated against plaintiff by placing him in a cell in administrative segregation with known gang members. (ECF No. 114, ¶¶ 112-24; 226-33). The court finds that plaintiff has alleged sufficient facts to state a claim.

Under the *Meuir* test for First Amendment retaliation, a plaintiff must prove that he was disciplined by prison officials and this discipline was motivated by the plaintiff's exercise of a constitutionally protected right. Plaintiff has alleged that he filed multiple grievances at NECC related to his medical care. However, he has not alleged any facts that give rise to the inference that defendants Baker and Cutt even knew about these grievances, and only states conclusorily that plaintiff was placed in cells with known gang members "in retaliation for plaintiff filing grievances against Corizon and NECC Staff[.]" (ECF No. 114, ¶ 119). This is insufficient for the court to infer the required motivation for a retaliation claim.

However, plaintiff has also alleged that he made informal complaints to defendants Baker and Cutt about the dangerous nature of the cell doors. (ECF No. 114, ¶ 116). The Eighth Circuit has not addressed the question of whether an inmate's oral grievance constitutes the exercise of a constitutional right. It has only addressed an inmate's filing of a formal grievance "pursuant to established procedures," recognizing it as the exercise of a constitutional right. *Sprouse v. Babcock*, 870 F.2d 450, 452. Other circuits, however, have addressed this question. Both the Third and the Seventh Circuits have found that the First Amendment's Petition Clause "embraces a broad range of communication, and the availability of its protections has never turned on a perceived distinction between written and oral speech." *Mack v. Warden Loretto FCI*, No. 14-2738,

2016 WL 5899173, at *7-8 (3d Cir. Oct. 11, 2016) (citing *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a certain form")).

While prisoners do not enjoy the same constitutional protections as civilians, they are not deprived of their First Amendment right to petition simply because they are incarcerated. *Turner v. Safley*, 482 U.S. 78 , 84 (1987). An inmate "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). The facts presented here are not inconsistent with plaintiff's status as a prisoner. He orally complained to defendants Baker and Cutt to inform them of and to seek redress for a hazardous prison condition. This condition posed a danger to plaintiff and to the other inmates in these cells. He also complained that he would be in danger if he had to share a cell with a gang member. This kind of petitioning is not incompatible with imprisonment. *See Pearson*, 471 F.3d at 741 (noting that marches or group protests would be incompatible with imprisonment).

For the purposes of this motion to dismiss, construing all alleged facts in favor of the plaintiff, the court finds that plaintiff's oral grievance to defendants Baker and Cutt constitutes protected activity under the First Amendment. The remaining elements of plaintiff's retaliation claim can be easily inferred: where he had initially been allowed to stay in a single cell or in a double-cell with a non-gang member, after plaintiff's continued complaints, defendants Baker and Cutt forced plaintiff to be double-celled with a gang member. Plaintiff is a sex offender, a class of offenders that is allegedly often the target of inmate violence, and he was housed with a gang member who had previously attacked a sex offender. The court concludes that this kind of discipline would "chill a person of ordinary firmness from engaging in [the First Amendment-protected activity],"

*Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007), and that plaintiff states a claim for retaliation in Count VIII.

The court further finds that defendants Baker and Cutt are not entitled to qualified immunity on this claim. The right to be free from retaliation and the duty of prison officials to protect those in their custody was well-established at the time of defendants' conduct. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). A reasonable official would have known that it was unlawful to, as a result of plaintiff's oral grievances, place him in a hazardous cell with a gang member who had targeted sex offenders in the past. Thus, defendants' motion to dismiss Count VIII for failure to state a claim is denied as to these defendants.

### F. <u>Count IX Does Not State a Claim as to Defendants Earls and Hurley</u>

In Count IX, plaintiff alleges that defendants Butler, Kristen Cutt, Earls, Edwards, Griggs, Hurley, and Jones retaliated against plaintiff for filing grievances by denying him access to the law library. Defendants moved to dismiss this count for failure to state a claim as to defendants Earls and Hurley. Defendants Earls and Hurley are supervisors. (ECF No. 114, ¶¶ 2, 8). Defendants argue that "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights," *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990), and plaintiff must show that defendants "personally violated the plaintiff's constitutional rights." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014).

The court concludes that plaintiff has not stated a claim as to defendant Earls, who purportedly knew of plaintiff's medical grievances (ECF No. 114, ¶ 82) and denied plaintiff's Grievance Appeal relating to his access to the law library while he was in administrative segregation. (*Id.* at ¶ 138). Defendants Butler, Kristin Cutt, and Griggs

had denied this grievance on the grounds that plaintiff needed "an approved Qualified Legal Claim verification" to obtain access. (*Id.* at ¶ 137). Plaintiff appealed this decision to defendant Earls, who responded in October 2014 that "plaintiff failed to provide any evidence to substantiate that he was denied access to the materials in the law library." (*Id.* at ¶ 138). Construing all the facts in plaintiff's favor, this is sufficient to support the inference that, while Earls is a supervisor, he personally took adverse action motivated by plaintiff's constitutionally-protected actions. However, while inmates have a clearly established right to adequate access to legal materials, *see, e.g., Bounds v. Smith*, 430 U.S. 817, 828 (1977) (holding that a prisoner's right to meaningful access placed an affirmative duty on prison officials to provide adequate legal resources), plaintiff has alleged that his complaint was about his access to legal materials *while he was in administrative segregation*. By the time defendant Earls responded to the appeal, on October 14, 2014, plaintiff had been out of administrative segregation for over two months. A retaliation claim requires the adverse action to constitute discipline, and defendant Earls' denial of the complaint would have had no effect on plaintiff's access as he was no longer in administrative segregation. Furthermore, if affirming a moot denial is unlawful retaliation, it was not so clearly established as such that a reasonable official would have known it to be unlawful. Defendant Earls is therefore entitled to qualified immunity.

As to defendant Hurley, plaintiff has not alleged sufficient personal involvement to state a claim. Plaintiff only alleges that defendant Hurley established movement policies limiting access to the law libraries. Whatever the constitutionality of these policies, there is no indication that they were implemented in response to or even after plaintiff filed his grievances, which precludes any claim that this policy was made to retaliate against plaintiff's actions. Thus, defendants' motion to dismiss this count is granted as to defendants Earls and Hurley.

## G. Count X Does Not State a Claim

In Count X, plaintiff alleges that defendants Davis, Earls, Godert, Griggs, Hurley, Jones, and Lombardi tacitly authorized Corizon's alleged Eighth Amendment violations by knowing of them but never taking any action to address them. (ECF No. 114, ¶¶ 243-250). All defendants but Davis move to dismiss this claim. Even construing all of the facts pled in the complaint in plaintiff's favor, the court concludes that this Count fails to state a claim for relief as to these defendants.

The supervisors of Eighth Amendment violators cannot be held vicariously liable on the theory of respondeat superior, but they may nevertheless be liable for (1) their own violative actions or (2) their supervisory inaction if it amounts to "tacit authorization" of violative practices. *See, e.g., Schaub v. VonWald*, 638 F.3d 905, 924 (8th Cir. 2011). The Eighth Circuit does not require actual knowledge in order to find tacit authorization but has "consistently held that reckless disregard on the part of a supervisor will suffice to impose liability." *Howard v. Adkison*, 887 F.2d 134, 137–38 (8th Cir. 1989) (citations omitted). Generally, a single incident is insufficient to support supervisor liability, but a pattern of multiple incidents makes a finding of reckless disregard more plausible. *Lenz v. Wade*, 490 F.3d 991, 996 (8th Cir. 2007) (citations omitted). "Thus, the issue is not whether [defendants] had actual knowledge of the violations, but whether they knew or should have known of them." *Howard*, 887 F.2d at 138.

Plaintiff has alleged that he filed multiple grievances at NECC to address his medical complaints and that defendant Roschell Davis participated in the review and response to some of these grievances. (ECF No. 114, ¶¶ 78-84). He has also alleged that the defendants referred grievances against Corizon to Corizon alone, with no oversight from the prison officials. (*Id.* at ¶¶ 245-48). Prison officials have a constitutional duty to see that prisoners receive medical treatment, and "where the duty to furnish treatment is unfulfilled, the mere contracting of services with an independent contractor does not immunize the State from liability for damages in failing to provide a prisoner with the

opportunity for such treatment." *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (citing *West v. Atkins*, 487 U.S. 42, 55 (1988)).

At the same time, "a general responsibility for supervising the operations of a prison is insufficient to establish [supervisor liability]." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). To be liable for tacit authorization, the supervisor must have "received notice of a pattern of unconstitutional acts committed by subordinates." *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997). Plaintiff alleges that the defendants had actual knowledge of the deliberate indifference to plaintiff's serious medical needs through plaintiff's grievances. The court can make the reasonable inference for purposes of this motion that defendants Godert, Griggs, Hurley, and Jones, by virtue of their administrative roles at NECC, knew or should have known of plaintiff's multiple grievances, or at least the system for making grievances. It can also infer that defendants Earls and Lombardi knew or should have known of the system for making grievances at NECC, if not plaintiff's actual grievances themselves.

On this claim, however, defendants Earls, Godert, Griggs, Hurley, Jones, and Lombardi are entitled to qualified immunity. "Qualified immunity shields a government official from liability when his conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982)). To determine whether these defendants are entitled to qualified immunity, this court must determine whether (1) there has been a violation of a constitutional or statutory right and (2) the right was clearly established "such that a reasonable official would have known that his actions were unlawful." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). For purposes of this motion to dismiss, this court has already noted that plaintiff has alleged sufficient facts to make a claim that there was an Eighth Amendment violation of deliberate indifference as to at least some defendants. The issue is whether it was clearly established such that a reasonable official would have known

that his actions were unlawful. The action in question need not have been previously held unlawful, but the unlawfulness must be "apparent" in "light of preexisting law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Other than the single delay in plaintiff's vein ablation procedure, the health claims at issue here were not clearly established. Preexisting law would tend to support the actions taken by defendants and their subordinates. Preexisting law supported the change in plaintiff's prostate prescription. S*ee Steele v. Weber,* 278 Fed. Appx. 699, 700 (8th Cir. 2008) (per curiam) (rejecting inmate's claim that Eighth Amendment rights were violated when prison doctors refused to prescribe him high-dose narcotic pain medication; claim described "mere disagreement with course of treatment"). Second, the treatment of the fractured ankle, while perhaps negligent or even grossly negligent, does not rise to the level of deliberate indifference based on the alleged facts. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (finding an Eighth Amendment violation only when defendants acted with "more than negligence, more even than gross negligence"). Additionally, the defendants would only be liable for a defective medical grievance process if it led to unconstitutional medical treatment. *Langford v. Norris*, 614 F.3d 445, 464 (8th Cir. 2010) (holding that deliberate indifference can be demonstrated by proving there are such systemic and gross deficiencies in procedures that the inmate population is effectively denied access to adequate medical care). Even if they had personal knowledge of plaintiff's medical status, defendants were entitled to reasonably rely on medical professionals' determinations. *McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009).

At the same time that plaintiff alleges defendants completely abdicated their responsibility to investigate by referring all matters to Corizon, he also alleges that defendants Godert, Griggs, Hurley, Jones, and "other NECC staff" personally reviewed plaintiff's medical grievances. Accepting one set of facts defeats personal involvement, while accepting the other set of facts defeats abdication.

For these reasons, defendants Earls, Godert, Griggs, Hurley, Jones, and Lombardi are entitled to qualified immunity on Count X and their motion to dismiss this count is sustained.

### H. <u>Count XI States a Claim as to Defendants Godert, Griggs, Hurley, and Jones</u>

In Count XI, plaintiff alleges that defendants Earls, Godert, Griggs, Hurley, Jones, and Lombardi tacitly authorized the retaliation against plaintiff by NECC and Corizon for his exercising of his First Amendment right to redress in violation of his Eighth Amendment rights. (ECF No. 114, ¶¶ 251-258). Defendants move to dismiss this count. Construing all of the facts pled in the complaint in plaintiff's favor, the court grants this motion in part and denies it in part.

A claim of First Amendment retaliation requires that "(1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." *Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007) (citations omitted). When he filed his medical grievances, plaintiff exercised the constitutionally protected right of expression, and he has alleged that prison officials retaliated against him for this by placing him in administrative segregation. (ECF No. 114, ¶¶ 85-94). The court will construe the count as referring to both medical and non-medical retaliation claims. (*See* ECF Nos. 49, 75, 114). The facts as pled sufficiently support the inference that prison officials disciplined the prisoner by placing him in administrative segregation. Additionally, at least to some prison officials, the facts as pled support the inference that plaintiff's grievances motivated the discipline. (ECF No. 114, ¶¶ 85-94).

The supervisors of Eighth Amendment violators may be liable for (1) their own violative actions or (2) their supervisory inaction if it amounts to "tacit authorization" of violative practices. *See, e.g., Schaub v. VonWald*, 638 F.3d 905, 924 (8th Cir. 2011).

The Corizon nurse received some directive from administration regarding plaintiff, and plaintiff alleges that defendants Godert, Griggs, Hurley, and Jones each personally approved decisions to put or keep plaintiff in administrative segregation. (ECF No. 114, ¶¶ 95, 101-103). This is sufficient to infer that they tacitly authorized, if not expressly authorized and were personally involved in, the constitutional violation alleged.

As to defendants Earls and Lombardi, however, plaintiff alleges no personal involvement whatsoever. The complaint merely states that these defendants had "actual knowledge" of the retaliation against plaintiff, without providing any supporting facts. (*Id.* at ¶ 252). This is a conclusory statement that cannot be plausibly inferred from any facts. Furthermore, to be liable for tacit authorization, the supervisor must have "received notice of a pattern of unconstitutional acts committed by subordinates." *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997). A single instance is generally insufficient. *See Lenz*, 490 F.3d at 996. It cannot be plausibly inferred that these MDOC officials were aware of plaintiff's administrative segregation, and even if they were aware, plaintiff does not properly allege that his administrative segregation was one event in a pattern of unconstitutional acts. For these reasons, the motion for judgment on the pleadings as to defendants Earls and Lombardi is granted.

As to defendants Godert, Griggs, Hurley, and Jones, the motion is denied. The court finds that, taking all of the facts as alleged in the complaint as true, these defendants are not entitled to qualified immunity under the *Krout* standard. *Krout*, 583 F.3d at 564. This court has determined that a claim has been made for a violation of a constitutional or statutory right as to these defendants. Furthermore, the right against First Amendment retaliation was clearly established at the time of plaintiff's administrative segregation in 2014, such that a reasonable official would have known that the subordinate's actions were unlawful. *See, e.g., Trobaugh v. Hall*, 176 F.3d 1087, 1089 (8th Cir. 1999).

## I.  Count XII States a Claim as to Defendants Baker and Cutt

Plaintiff alleges in Count XII that defendants Allen, Baker, Butler, Lt. Cutt, Earls, Godert, Griggs, Hurley, Jones, Lombardi, and Rhodes subjected him to cruel and unusual punishment in violation of his Eighth Amendment right by placing him in a cell with steel grates on the door.  (ECF No. 114, ¶¶ 112-24, 259-71).  Defendants' motion to dismiss this count is granted in part and denied in part.

The Eighth Amendment imposes duties on prison officials to provide human conditions of confinement, including the duty to "take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). But the Supreme Court has held that failure to alleviate an objectively significant risk of harm does not rise to an Eighth Amendment violation; the prison official must have actually perceived the risk of harm and "consciously disregarded" it.  *Id.* at 837-38. Where harm is alleged, a plaintiff may recover damages.  *Id.*  Where the risk of harm has not yet ripened into actual injury, a plaintiff may still recover nominal damages.  *See, e.g., Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 308 (1986).  Plaintiff has alleged that the cell doors in administrative segregation contained what allegedly amounts to a trap of eleven, horizontal punji sticks at chest-level.  This condition would appear to pose a substantial threat of wanton and unnecessary harm to inmates in those cells. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

Plaintiff's complaint states only that defendants Earls, Hurley, and Lombardi permitted or required the steel slats to be place on the doors and that defendants Butler, Earls, Godert, Griggs, Jones, and Rhodes "were all aware" of the steel slats.  (ECF No. 114, ¶¶ 112-16, 340).  The allegations against defendants Earls and Lombardi are too conclusory to "nudge [plaintiff's] claims . . . across the line from conceivable to plausible."  *Ashcroft v. Iqbal*, 5565 U.S. 662, 680 (2009) (citations omitted).  As far-removed supervisors, the court cannot infer the subjective knowledge and disregard required for this claim.  The same is true of defendants Butler, Godert, Griggs, Jones, and

Rhodes, who are only alleged to have participated in the administrative process of putting and keeping plaintiff in administrative segregation. This, too, is insufficient to infer that these defendants actually knew of the grates and consciously disregarded the risk they posed to plaintiff.

As to defendants Baker and Lt. Cutt, however, plaintiff personally informed of the risk of the doors, but they continued to keep him in the dangerous cells. Construing all of the facts in plaintiff's favor, the court finds that he has stated a claim as to defendants Lt. Cutt and Baker, but his claim as to all other defendants is dismissed. Defendants are not entitled to qualified immunity at this time, as a reasonable official would have known that placing inmates in the hazardous environment alleged by plaintiff was unlawful. *See Estelle*, 429 U.S. at 103.

## J. <u>Counts XIII and XIV Do Not State Due Process Claims</u>

Plaintiff alleges in Count XIII that defendants Butler, Earls, Godert, Griggs, Hurley, Jones, and Lombardi violated plaintiff's due process rights under the Fourteenth Amendment by failing to have a policy defining the term "gang." (ECF No. 114, ¶¶ 272-280). Plaintiff alleges in Count XIV that defendants Butler, Earls, Hurley, and Jones violated plaintiff's due process rights by failing to follow the prison's enemy waiver policies. (*Id.* at ¶¶ 281-88). Defendants move to dismiss both counts on the grounds that a liberty interest was not implicated.

Determining whether defendants violated plaintiff's due process rights involves a two-step inquiry: the court must first determine whether a liberty interest was at stake and, second, what process is necessary to protect that liberty interest. *See Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011). Plaintiff argues that a state may create a constitutional liberty interest by enacting certain statutes or regulations. *Hewitt v. Helms*, 459 U.S. 460, 469 (1983). He alleges that Missouri has enacted such a statute in Mo. Rev. Stat. § 217.375, arguing that this grants Missouri state inmates a state-created liberty

interest by outlining procedures to be taken in the administrative segregation process. However, the Supreme Court has refused to hold that "the mere fact that [a state] has created a careful procedural structure to regulate the use of administrative segregation indicates the existence of a protected liberty interest." *Id.* at 471. Instead, in *Sandin v. Conner*,[2] the Supreme Court held that while states may under certain circumstances create liberty interests,

> these interests will be generally limited to freedom from restraint which, while not exceeding the [prison] sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

515 U.S. 472, 472–73 (1995) (citations omitted). The Eighth Circuit has consistently held that placement in administrative segregation, even without cause, "is not in itself an atypical and significant hardship." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). It has determined that "if the plaintiff has a liberty interest, it is an interest in the nature of his confinement, not an interest in the procedures by which the state believes it can best determine how he should be confined." *Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir.

---

[2] *Sandin v. Conner* held that "[t]he methodology used in *Hewitt v. Helms* . . . and later cases has impermissibly shifted the focus of the liberty interest inquiry from one based on the nature of the deprivation to one based on language of a particular regulation. Under *Hewitt* 's methodology, prison regulations . . . have been examined to see whether mandatory language and substantive predicates create an enforceable expectation that the State would produce a particular outcome with respect to the prisoner's confinement conditions. This shift in focus has encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges. Courts have, in response, drawn negative inferences from that language. *Hewitt* creates disincentives for States to codify prison management procedures in the interest of uniform treatment in order to avoid the creation of 'liberty' interests, and it has led to the involvement of federal courts in the day-to-day management of prisons. The time has come to return to those due process principles that were correctly established and applied in [earlier cases]." *Sandin*, 515 U.S. at 472–73.

2010); *see also Phillips*, 320 F.3d, 847 ("there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations.").

Plaintiff's due process claim in Count XIII is based entirely on the prison failing to implement a definition of "gang" as a basis for placing an inmate in administrative segregation. Plaintiff's due process claim in Count XIV is based entirely on the prison official's failure to have plaintiff sign an enemy waiver form when he was released from administrative segregation. Plaintiff's claims are based on the procedure the prison officials did or did not follow, not the nature of plaintiff's confinement. Accordingly, plaintiff fails to allege a liberty interest in the prisoner context. *See, e.g., Santas v. Wood*, 2007 WL 781832, at *3 (W.D. Mo. Mar. 13, 2007) (holding that an inmate signing an enemy waiver does not create a liberty interest, and there is no constitutional liberty interest in having prison officials follow prison regulations). The due process claims of Counts XIII and XIV are dismissed as to all defendants for failure to state claim upon which relief can be granted.

### K. Counts XIII and XIV Do Not State Equal Protection Claims

Plaintiff alleges in Count XIII that defendants Butler, Earls, Godert, Griggs, Hurley, Jones, and Lombardi violated plaintiff's equal protection rights by failing to have a policy defining the term "gang." (ECF No. 114, ¶¶ 272-280). Plaintiff alleges in Count XIV that defendants Butler, Earls, Hurley, and Jones violated his equal protection rights by administering the enemy waiver policies to some inmates but not to him. (*Id.* at ¶¶ 281-88). Defendants move to dismiss Count XII's equal protection claim on the ground that plaintiff did not sufficiently plead that he was treated differently than other similarly situated inmates because of the lack of the policy. They move to dismiss Count XIV's equal protection claim on the ground that plaintiff has not pled facts showing defendants purposefully acted with discriminatory intent against an identifiable group of which plaintiff was a member.

To succeed on an equal protection claim, a plaintiff must demonstrate both that he has been treated differently from similarly-situated people and that this dissimilar treatment was the result of the state's intentional or purposeful discrimination. *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731-33 (8th Cir. 1994). Different treatment of dissimilarly-situated people, therefore, does not violate the equal protection clause. *Id.*

Plaintiff alleges in Count XIII that the absence of any prison policies defining the terms "'gang,' 'gang member,' or 'gang activity' . . . results in disparate treatment between inmates for the same or similar conduct." (ECF No. 114, ¶¶ 274-75). Plaintiff has not demonstrated that he was treated dissimilarly from other prison inmates. Furthermore, deciding whether or not to place an inmate in administrative segregation is "left to the informed judgment, including discretionary judgment, of prison administrators." *Hobbs*, 662 F.3d at 1007 (citations omitted). Missouri's administrative segregation statute gives prison officials broad discretion to place an inmate in administrative segregation "for the security and good order of the correctional facility." Mo. Rev. Stat. § 217.375. Accordingly, Count XIII fails to state a claim.

In Count XIV, Plaintiff alleges that defendants violated his right to equal protection by allowing some inmates to sign enemy waivers upon release from administrative segregation, but not allowing him to sign an enemy waiver. (ECF No. 114, ¶ 130). According to NECC policies, if inmates have declared they are enemies in administrative segregation, they must each sign an "enemy waiver" before being placed back into general population, or one of the inmates must be moved to a new prison. (*Id.* at ¶ 125).

A prison policy cannot serve as the basis of a constitutional liberty interest. *Orr*, 610 F.3d at 1034. Because plaintiff does not allege that he is a member of a protected class or that his fundamental rights have been violated, this is a "class-of-one" equal protection claim. *Nolan v. Thompson*, 521 F.3d 983, 990 (8th Cir. 2008). Accordingly, plaintiff must allege that defendants "intentionally treated him differently from others

similarly situated and that there is no rational basis for the difference in treatment." *Id.*
Plaintiff has failed to allege that defendants' omission was intentional or purposeful.[3]
Even construing his allegations to do so, the Supreme Court has held that class-of-one
equal protection claims have their limits, and *discretionary* forms of state action are not
violated when one person is treated differently from others, "because treating like
individuals differently is an accepted consequence of the discretion granted." *Engquist v.
Or. Dep't of Agric.,* 553 U.S. 591, 602–04 (2008) (illustrating the point with a
hypothetical involving a traffic officer on a busy highway frequented by speeders
exercising discretion in deciding which vehicle to stop).

"[A] prison's internal security is peculiarly a matter normally left to the discretion
of prison administrators." *Hobbs*, 662 F.3d at 1006 (citations omitted). Prison officials
exercise discretion in determining how to keep inmates safe, and an accepted
consequence of this discretion is that one person might be treated differently from others.
*Engquist*, 553 U.S. at 603. For these reasons, Count XIV's equal protection claim is
dismissed for failure to state a claim.

### L. **Count XVII Does Not State a Claim**

Count XVII seeks a declaratory judgment and injunctive relief in the form of "a
preliminary and permanent injunction requiring defendants to uniformly enforce [prison]
policies and rules" related to administrative segregation hearings. (ECF No. 114, ¶ 314).
However, this claim does not present a case or controversy for judicial review. Plaintiff
has not brought an action on behalf of the inmates in the prison, and he has only alleged
that he "will suffer irreparable harm" unless the court grants this relief. *Id.* This claim is
too speculative. While plaintiff has alleged that prison officials failed to follow proper
hearings procedures when he was placed in administrative segregation in 2014, this does

---

[3] Plaintiff only alleges that officials deliberately failed to review his DOC file upon
release from administrative segregation. (ECF No. 114, ¶ 128).

not establish a real and immediate threat that plaintiff will again be placed in administrative segregation, or, indeed, that if he is placed in administrative segregation again, prison officials will fail to follow Missouri law again. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102-04 (1983). Accordingly, plaintiff fails to allege a case or controversy in Count XVII, and it must be dismissed for lack of subject matter jurisdiction.

### M. <u>Count XVIII Does Not State a Claim</u>

In Count XVII, plaintiff alleges that the absence of a policy "requiring a clear statement of what conduct or rule violation is the basis for an investigation" violated his due process and equal protection rights, as he was placed in administrative segregation "pending investigation." (ECF No. 114, ¶¶ 318-26). He seeks a declaratory judgment and preliminary and permanent injunction enjoining defendants Earls, Hurley, and Lombardi from placing inmates in administrative segregation "pending investigation" until they have established more specific policies. (*Id.* at ¶ 326). As discussed above with respect to plaintiff's due process and equal protection claims in Counts XIII and XIV, placement in administrative segregation, even without cause, "is not in itself an atypical and significant hardship" *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). Furthermore, a prison policy (or lack thereof) cannot serve as the basis of a constitutional liberty interest. *Orr*, 610 F.3d at 1034. Because plaintiff has failed to state a due process or equal protection violation, his claim for injunctive relief based on these alleged violations must also be dismissed.

### N. <u>Count XX Does Not State a Claim</u>

Count XX seeks declaratory and injunctive relief requiring defendants Earls, Godoert, Griggs, Hurley, Jones, and Lombardi to remove the steel grates form the inside of the administrative segregation cell doors. (ECF No. 114 ¶ 346). As with Count XVII,

this claim does not present a case or controversy for judicial review. Plaintiff has not brought an action on behalf of the inmates in the prison, and he has only alleged that he "will suffer irreparable harm unless the Court grants [this] injunctive relief." (*Id.*) This claim is too speculative. While plaintiff has stated a claim in Count XII, this does not establish a real and immediate threat that plaintiff will again be placed in administrative segregation. *See Lyons*, 461 U.S. at 102-04. Accordingly, plaintiff fails to allege a case or controversy in Count XVII, and it must be dismissed for lack of subject matter jurisdiction.

### O. Counts XXI and XXII Do Not State Claims

In Counts XXI and XXII, plaintiff seeks declaratory and injunctive relief based on his claims in Counts XIII and XIV. (ECF No. 114, ¶¶ 350-73). Specifically, plaintiff alleges he will suffer irreparable harm unless the court issues injunctions requiring defendants to, in Count XXI, "establish definitions of a 'gang member' and what conduct constitutes 'gang affiliation' or 'gang activity,'" (ECF No. 114, ¶ 361), and, in Count XXII, "uniformly enforce the policies and rules regarding enemy waivers within NECC" (*Id.* at ¶ 370). The court has concluded that Counts XIII and XIV fail to state claims upon which relief can be granted. This includes injunctive relief. Accordingly, Counts XXI and XXII must also be dismissed for failing to state claims.

### III. ORDER

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of defendants to dismiss (ECF No. 118) is granted in part and denied in part as follows:

> **Count III** is dismissed, in that it fails to state a claim upon which relief can be
> granted;

**Count VII** is dismissed, in that it fails to state a claim upon which relief can be granted;

**Count IX** is dismissed as to defendants Earls and Hurley, in that it fails to state a claim as to these defendants upon which relief can be granted;

**Count X** is dismissed as to defendants Earls, Godert, Griggs, Hurley, Jones, and Lombardi, in that they are entitled to qualified immunity;

**Count XI** is dismissed as to defendants Earls and Lombardi, in that it fails to state a claim as to these defendants upon which relief can be granted;

**Count XII** is dismissed as to defendants Allen, Butler, Earls, Godert, Griggs, Hurley, Jones, Lombardi, and Rhodes, in that it fails to state a claim as to these defendants upon which relief can be granted;

**Count XIII** is dismissed, in that it fails to state a claim upon which relief can be granted;

**Count XIV** is dismissed, in that it fails to state a claim upon which relief can be granted;

**Count XVII** is dismissed, in that the court does not have subject matter jurisdiction over the claim;

**Count XVIII** is dismissed, in that it fails to state a claim upon which relief can be granted;

**Count XX** is dismissed, in that the court does not have subject matter jurisdiction over the claim;

**Count XXI** is dismissed, in that it fails to state a claim upon which relief can be granted;

**Count XXII** is dismissed, in that it fails to state a claim upon which relief can be granted.

Defendants' motion is denied as to the following counts:

**Count IV** states a claim;

**Count VIII** states a claim;

**Count X** states a claim as to defendant Davis;

**Count XI** states a claim as to defendants Godert, Griggs, Hurley, and Jones; and

**Count XII** states a claim as to defendants Baker and Cutt.


_____/S/___David D. Noce_____
**UNITED STATES MAGISTRATE JUDGE**

Signed on January 9, 2017.