**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

FRANKLIN G. ENDICOTT,      )
                           )
      Plaintiff,           )
                           )
      v.                   )           No. 2:14 CV 107 DDN
                           )
JAMES HURLEY, et al.,      )
                           )
      Defendants.          )

## MEMORANDUM AND ORDER

This action is before the court on the Missouri Department of Corrections defendants' motion for summary judgment. (Doc. 252.)  The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The Court heard oral argument on the motion on March 29, 2021.  The Court grants the motion and dismisses the action with prejudice for the reasons set forth below.

## BACKGROUND

Plaintiff Franklin G. Endicott filed this action pursuant to 42 U.S.C. § 1983 alleging medical, retaliation, and other claims while he was incarcerated at Northeast Correctional Center (NECC) in Bowling Green, Missouri.[1]  The remaining defendants are or were employed by NECC or the Missouri Department of Corrections (MDOC) or were otherwise tasked with assisting inmates at NECC at the time relevant to this litigation. Named as defendants are officials or employees: Larry Allen, Lieutenant; Roger Avery, Corrections Officer I; Jacob Baker, Corrections Officer II; Tyree Butler, Functional Unit Manager; Lori Calvin, Captain; David Cutt, Lieutenant; Kristin Cutt, caseworker, Functional Unit Manager, and committee chair; Joyce Edwards, librarian at NECC;

---

[1] Plaintiff was released from incarceration on November 14, 2020.

Chantay Godert, assistant warden; Richard Griggs, assistant warden; James Hurley, warden; William Jones, Deputy Warden; George Lombardi, Director of MDOC; Jeffrey Reid, corrections officer; and James Rhodes, investigator (MDOC defendants).  Plaintiff also named as a defendant medical services provider Corizon and/or Corizon, LLC (Corizon) who was under contract with MDOC to provide medical services at NECC at the times relevant to his litigation.

The Court dismissed counts 3, 7, 13, 14, 18, 21, and 22 of the Fifth Amended Complaint for failure to state a claim and counts 17 and 20 for lack of subject matter jurisdiction.  Plaintiff and the Corizon defendants settled their disputed claims.  Counts 4, 5, 6, 8, 9, 11, 12 and 15, directed against the MDOC defendants, remain.

The MDOC defendants move for summary judgment on those claims.  (Doc. 252.) Plaintiff opposes the motion.  (Doc. 263.)  In support of their motion, defendants submitted as evidence, among other things,  copies of plaintiff's medical records and doctor's notes, plaintiff's and others' depositions, NECC operations manual, prison policies, grievances, and affidavits.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party."  *Shrable v. Eaton Corp.*, 695 F.3d 768, 770 (8th Cir. 2012); *see also* Fed. R. Civ. P. 56(a).  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  A dispute is genuine if the evidence may prompt a reasonable jury to return a verdict for either the plaintiff or the defendant, and it is material if it would affect the resolution of a case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 252 (1986); *Rademacher v. HBE Corp.*, 645 F.3d 1005, 1010 (8th Cir. 2011).

- 2 -

The burden shifts to the non-moving party to demonstrate that disputes of fact do exist only after the movant has made its showing.  *Id.*  It is the nonmoving party's burden to set forth affirmative evidence and specific factual support by affidavit and other evidence to avoid summary judgment.  *Perry v. Martin*, 2013 WL 6331474, at *1 (E.D. Mo. Dec. 5, 2013).  If reasonable minds could differ as to the import of the evidence, then summary judgment is not appropriate.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).  Also, pursuant to Local Rule 4.01(E), the movant's statement of uncontroverted material facts is deemed admitted unless specifically controverted by the opposing party.

## APPLICABLE LAW

**Deliberate   Indifference**.   In   actions   by   prison   inmates   against   prison officials for deliberate indifference, plaintiff must evidence that: 1) he suffered from objectively  serious  medical  needs;  2)  defendant  knew  of  the  condition;  and  3) defendant deliberately disregarded the condition.  *Kitchen v. Miller*, 343 F.Supp.2d 820, 823 (E.D. Mo. 2004); *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). The absence of proof for any one of these three elements is dispositive in an action for deliberate indifference under 42 U.S.C. § 1983.

To  support  a  claim  of  deliberate  indifference  under  §  1983,  "[a]  prisoner  must show   more   than   negligence,   more   even   than   gross   negligence,   and   mere disagreement  with  treatment  decisions  does  not  rise  to  the  level  of  a  constitutional violation."  *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). A medical decision  not  to  order  a  particular  course  of  treatment  or  testing  does  not  represent cruel  and  unusual  punishment.  *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Likewise,  mere  displeasure  with  a  course  of  medical  treatment  is  not  sufficient  to rise to a constitutional violation.  *Kitchen*, 343 F.Supp.2d at 823.

"An  inmate  who  complains  that  delay  in  medical  treatment  rose  to  a constitutional  violation  must  place  verifying  medical  evidence  in  the  record  to

establish the detrimental effect of delay in medical treatment to succeed." *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997). The objective portion of the deliberate indifference standard requires a showing of "verifying medical evidence" that the defendants ignored an acute or escalating situation, or that delays adversely affected the prognosis given the type of injury in this case. *Dulany v. Carnahan*, 132 F.3d 1234, 1243 (8th Cir. 1997).

**Cellmate Selection**. An inmate has no right to choose his cellmate, particularly in administrative segregation (AdSeg). *Hayes v. Wimberly*, 625 F. Supp. 967, 970 (E.D. Ark. 1986).

**Following State Law and Prison Regulations**. There is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations. *McKee v. Missouri*, 2019 WL 1780567 (E.D. Mo), citing *Phillips v. Norris*, 320 F. 3d 844, 847 (8th Cir. 2003).  Nor does a Missouri statute that creates rights and duties under state law definitively establish rights and duties under federal law.  *Randolph v. Rodgers*, 170 F. 3d 850, 859 (8th Cir. 1999).

**Administrative Segregation**. A prisoner has no constitutionally protected liberty interest in remaining in a less restrictive prison environment. *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997). The Eighth Circuit has consistently held that administrative and disciplinary segregation are not atypical and significant hardships. *Portley–El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002). Moreover, a twenty-two month administrative segregation confinement is not in itself an atypical and significant hardship implicating the Due Process Clause. *Bunch v. Long*, 2008 WL 5082861 *4 (W.D. Mo. Nov. 24. 2008).

**First Amendment Retaliation**.  To establish retaliation under 42 U.S.C. § 1983, plaintiff must show that 1) he engaged in a protected activity; 2) the defendants took adverse action against him that would chill a person of ordinary means; and 3) the adverse action was motivated at least in part by the exercise of the protected

activity. *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). With respect to the third prong, plaintiff must demonstrate that the retaliatory motive was a "but-for" cause of the action. *Monroe v. Precythe*, 2020 WL 2322922, *17 (E.D. Mo. 2020). Although the causal connection is generally a jury question, it can provide a basis for summary judgment when the "question is so free from doubt as to justify taking it from the jury." *Revels*, 382 F.3d at 876. Plaintiff must also show that he was singled out for exercising his constitutional rights. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010).

A defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation. *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir.2008), citing *Goff v. Burton*, 7 F.3d 734, 738-39 (8th Cir. 1993). Accordingly, where some evidence shows that the offender violated rules, he cannot prevail on retaliatory discipline case against a hearing officer. *King v. Dingle*, 702 F. Supp. 2d 1049, 1081 (D. Minn. 2010).

Name calling and verbal threats by prison officials, without more, do not invade a federally protected right. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993). In fact, even when prison officials harass an inmate in an attempt to dissuade him from filing a grievance, there is no Eighth Amendment violation if the inmate was not denied access to the grievance procedure. *Harris v. Henneberry*, 2007 WL 4290739, *6 (E.D. Mo. 2007).

**Qualified Immunity**. Government officials, who are performing discretionary functions, are generally shielded from liability for civil damages, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *See, Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Young v. Harrison*, 284 F.3d 863, 866 (8th Cir. 2002); *Winters v. Adams*, 254 F.3d 758, 766 (8th Cir. 2001). The contours of the constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is

doing violates that right," but "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted); *Nelson v. Correctional Medical Services*, 583 F.3d 522, 531 (8th Cir. 2009); *Young v. Selk*, 508 F.3d 868, 875 (8th Cir.2007). Thus, "[t]he doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'" *Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996). As a result, where appropriate, courts are permitted to dispose of the qualified immunity issue on the issue of whether a violation of a clearly established constitutional right has occurred. *Parrish v. Ball*, 594 F.3d 993, 1001-02 (8th Cir. 2010).

**Conspiracy**. A conspiracy claim requires evidence of specific facts that show a 'meeting of minds' among conspirators. *Habhab v. Hon*, 536 F.3d 963, 969 (8th Cir. 2008), quoting *Barstad v. Murray County*, 420 F.3d 880, 887 (8th Cir. 2005).

**Denial of Library Privileges.** To state a claim that a law library violates his rights, an inmate must assert an actual injury to pending or contemplated legal claims. *Baughman v. Cradduck*, 2016 WL 5662054 (W.D. Ark. 2016). To sustain a claim based upon denial of access to legal materials, actual injury or prejudice must be shown. *Johnson v. Hamilton*, 452 F. 3d 967, 973 (8th Cir. 2006).

## DISCUSSION

### Count 4 –

In Count 4, plaintiff alleges that defendants Avery, Calvin, D. Cutt, Reid, and the Corizon defendants were deliberately indifferent to a serious medical need when they delayed his transfer for vein ablation surgery on October 15, 2010. (Doc. 114, ¶¶ 189-200.) Defendants contend there was no serious medical need, no condition was

intentionally ignored, and there was no detrimental effect from the delay in treatment. Plaintiff makes no argument in support of this claim in either his opposition to MDOC defendants' motion or in his response to defendants' uncontroverted material facts. (*See* Docs. 262, 263.)

The evidence revealed the following.  In 2010, Dr. Thomas Cabrera was employed by Corizon Health, Inc. and served as medical director at NECC.   Statement of Uncontroverted Material Facts in Support of Motion for Summary Judgment of MDOC Defendants, ¶ 1 (hereinafter ("SOF ¶__").  Plaintiff was Dr. Cabrera's patient.   SOF ¶ 2. Plaintiff had superficial phlebitis.  SOF ¶ 3.  The standard treatment for superficial phlebitis is rest, bedrest, aspirin, and support hose.  SOF ¶ 5.  Vein stripping/ablation procedures are also available.  SOF ¶ 6.  On July 30, 2010, Dr. Phillips saw plaintiff in consultation and recommended that plaintiff undergo two ablation procedures, one of the right lesser saphenous vein and the other of the right greater saphenous vein.  SOF ¶ 7.  After Dr. Phillips performed the first procedure, a second procedure was scheduled for October 15, 2010.  SOF ¶ 8.

On October 15, correction officer (CO) Jeffrey Reid and CO Roger Avery were assigned to transport plaintiff (an "out count") to Dr. Phillips's office in Jefferson City. SOF ¶ 9.  Due to a staff shortage, earlier that morning Reid and Avery had taken another offender to a medical appointment returning around 10-10:15 a.m.  SOF ¶ 10.  Avery reported that the first out count took longer than expected, and that upon their return they had to process the other offender and Reid had to receive a weapon along with the paperwork on plaintiff.  SOF ¶ 11.  Plaintiff does not know what Reid and Avery were required to do after returning from the previous out count and before taking him to Jefferson City.  SOF ¶ 12.  He claims that during this time Lt. Calvin and Sgt. Cutt called Reid and Avery into the office, although he does not know what transpired there.  SOF ¶ 13.  Plaintiff knows of no reason why Reid or Avery would delay taking him, although he believes that Calvin and Cutt disliked him.  SOF ¶ 14.

Once they departed NECC, Reid and Avery realized they neglected to bring plastic restraints and they had to drive back to NECC for those.  SOF ¶ 15.  Upon reaching Kingdom City, they called Dr. Phillips's office, and the COs reported to plaintiff that the doctor's office told them they would have to reschedule because the doctor's schedule would not allow the late arrival.  SOF ¶ 16.  The visit was rescheduled and the procedure was performed on November 5, 2010.  SOF ¶ 17.

As demonstrated, plaintiff had superficial phlebitis, a non-serious condition, The second ablation procedure had to be rescheduled when due to staff shortage and an earlier outcount, they would be arriving late.  Even assuming arguendo, that plaintiff's phlebitis was a serious medical condition, no serious medical needs were ignored.  *See Kitchen,* 343 F.Supp.2d at 823; *Coleman v. Rahija*, 114 F.3d 784.

Moreover, plaintiff concedes that Reid and Avery had been on an earlier out count, that they had to return for the plastic restraints, and that enroute they called the doctor's office to advise that they would be arriving late.  Nothing suggests deliberate indifference.  The Court concludes the evidence fails to support a claim for deliberate indifference.  *Estate of Rosenberg*, 56 F.3d 35, 37 (to support a claim of deliberate indifference, prisoner must show more than negligence, more even than gross negligence)

Further, to support a claim for deliberate indifference, there must be a detrimental effect.  *Crowley*, 109 F.3d at 502 (an inmate complaining that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed); *Dulany*, 132 F.3d at 1243 (the objective portion of the deliberate indifference standard requires a showing of "verifying medical evidence" that defendants ignored an acute or escalating situation, or that delays adversely affected the prognosis given the type of injury in this case).  Here, plaintiff offers no verifying medical evidence.  Instead,

- 8 -

the appointment was rescheduled, and the procedure was successfully performed. There was no detrimental effect, accordingly, under *Crowley* and *Dulany* the claim fails.

Moreover, plaintiff's speculation about what conversation took place when Reid and Avery were called to the office by Cutt and Calvin does not support his claim. Plaintiff has provided no evidence of an improper intent on the part of Avery, Reid, Cutt or Calvin. Finally, under these facts there was no violation of a clearly established constitutional right, and therefore defendants are entitled to qualified immunity. *See Anderson, Nelson, Young, Bagby and Parrish.*

### Count 5 -

In Count 5, plaintiff alleges Lt. Allen and Nurse Allen retaliated against him during and after his transfer to administrative segregation. (Doc. 114, ¶¶ 218–225.) Defendants contend any perceived or actual events fail to rise to the level of retaliation.

On March 13, 2014, offender Brian Haynes provided a "kite" to Gang Task Force Coordinator Pamela Elliott requesting to meet. SOF ¶ 18. Haynes offered information that offender Albert Strutton had supplied drugs, marijuana, and K2 to plaintiff, and that plaintiff provided protection to Strutton in the yard. SOF ¶ 19. Offender Robert Lyle made similar claims against plaintiff. SOF ¶ 20. Elliott and NECC Administrative Inquiry Officer James Rhodes met with Haynes, who gave them a letter received from Strutton. SOF ¶ 21. In the letter, Strutton told Haynes that he (Strutton) and another offender, when released from AdSeg, were "planning mayhem & malice." SOF ¶ 22. Rhodes then undertook an investigation of nineteen subjects, including plaintiff, many of whom were known gang members. SOF ¶ 23. Rhodes did not think plaintiff was a gang member, but he had been identified as involved in incidents that had gang related components. SOF ¶ 24. Although there is no formal definition of "gang activity," the rules of conduct for offenders prohibit threats, assault, contraband, and organized disobedience. SOF ¶ 25. Plaintiff testified at his deposition that he knows of no reason Rhodes would invent the

story and concedes that fellow inmates may have had an incentive to associate his name with gang activities.  SOF ¶ 26.

On March 19, 2014, because he was the subject of an investigation, plaintiff was placed in Temporary Administrative Segregation Confinement (TASC or AdSeg), as were the other eighteen subjects, some of whom were already in AdSeg.  SOF ¶ 27. Upon transfer to TASC, plaintiff was told that he was there pending investigation of gang related activities.  SOF ¶ 28

Although plaintiff believes that Larry Allen arranged to have him transferred to TASC, he concedes that he does not know whether Rhodes asked Allen to place him in AdSeg.  SOF ¶ 29.  Allen placed plaintiff in cuffs, which is standard procedure, and handed plaintiff to the correctional officers who took him to medical.  SOF ¶ 30.  Plaintiff claims that Allen made a snide comment, gritted his teeth and jaw, and handcuffed him in a rough manner.  However, there was no assault, and Allen did not accompany plaintiff to medical.  SOF ¶ 31.  It is standard procedure to go to medical for a "vitals" check before going to AdSeg.  SOF ¶ 32.

On November 20, 2014, following release from TASC, plaintiff was given a medical slip to go for vitals at 9:00 p.m.   SOF ¶ 33.  While plaintiff was in medical, Allen was sitting with another officer.  After several minutes, five other officers came in and sat down. No officer spoke to plaintiff and he only heard them speaking under their breath.  After 15 to 20 minutes, the other officers left, and Allen remained there with the other officer. Plaintiff understood this as an attempt to intimidate him.  SOF ¶ 34.

Plaintiff does not know whether Allen and his wife, non-MDOC nurse defendant Pascha Allen, ever talked about him.  SOF ¶ 71.

It is undisputed that two offenders, Haynes and Lyles, implicated plaintiff in gang related activities.  Plaintiff concedes there could be reasons for offenders to implicate him, albeit "falsely," as well as the serious danger of gang activity, and that it ought to be investigated.  SOF ¶ 36.

That two offenders implicated him in gang activity constitutes "some evidence" that plaintiff committed a rule violation. Such evidence defeats plaintiff's claim for retaliatory discipline. *Hartsfield*, 511 F.3d at 829, citing *Goff,* 7 F.3d at 738-39. Accordingly, because defendants have some evidence showing that plaintiff violated the rules, he cannot prevail on retaliatory discipline claim against hearing officers. *King*, 702 F. Supp. 2d at 1081.

Moreover, to establish a claim for retaliation under § 1983, plaintiff must show that the adverse action was motivated at least in part by the exercise of the protected activity. *Revels*, 382 F.3d at 876. To do this plaintiff must demonstrate that the retaliatory motive was a "but-for" cause of the action. *Monroe*, 2020 WL 2322922,*17. Here, the evidence shows that after being assigned to AdSeg, Lt. Allen made a snide comment, gritted his teeth and jaw, hand-cuffed plaintiff roughly, and handed him to other officers to accompany plaintiff to medical and then to AdSeg. This fails to establish that Allen was responsible for assigning plaintiff to AdSeg, or that Allen had a motive to retaliate. It also fails to meet the "but-for" causation requirement.

While it is not clear how the November 20, 2014 event, which took place after plaintiff's release from AdSeg, is related to plaintiff's AdSeg claim, the events in this case do not rise to the level of retaliation. *See McDowell*, 990 F.2d at 434 (name calling and verbal threats by prison officials, without more, do not invade a federally protected right). Even when prison officials harass an inmate in an effort to dissuade him from filing a grievance, there is no Eighth Amendment violation if the inmate was not denied access to the grievance procedure. Harris, 2007 WL 4290739, *6.

As is seen, under these facts there was no violation of a clearly established constitutional right and under *Anderson, Nelson, Young, Bagby and Parrish* qualified immunity bars the claim. Finally, there is no evidence of a conspiracy because plaintiff admits in his deposition that he does not know whether Larry Allen and his wife ever talked

about him.   Absent facts showing a meeting of the minds, the conspiracy claim fails. *Habhab*, 536 F.3d at 969.

**Count 6 –**

In Count 6, plaintiff alleges defendants Hurley, Griggs, Jones, Godert, Rhodes, K. Cutt, and Butler retaliated against him by transferring him to AdSeg and by failing to provide a hearing and identify the charges against him. (Doc. 114, ¶¶ 218–25.) Defendants argue that plaintiff was advised he was under investigation based on reports of gang related activity and that he was provided a hearing.

When transferred to AdSeg, plaintiff was advised that he was under investigation for gang related activity.  SOF ¶ 35.  He concedes that gangs are a serious issue in prison, that they can create a danger for offenders and officers, and that gang activity should be investigated.  SOF ¶ 36.  Upon arrival in TASC on March 19, 2014, a hearing was scheduled for March 26, 2014.  SOF ¶ 37.  The TASC hearing, which plaintiff attended, however, took place on March 28, 2014.   SOF ¶¶ 38-39.   Plaintiff cannot say what different information he could have provided had the hearing taken place two days earlier. SOF ¶ 40.

Monthly TASC meetings were held.  SOF ¶ 41.  Although invited to each hearing, plaintiff attended only the first and last hearing because the institution would not give him information and he was not permitted to ask questions.  SOF ¶ 42.  Plaintiff does not know whether an investigation actually took place.  SOF ¶ 43.  On August 1, 2014, he was released from TASC.  SOF ¶ 44.

In response to Grievance NECC14-1322, plaintiff was advised by memorandum dated November 14, 2014, that offenders were not allowed access administrator inquiry policy and that he was named as one of 19 offenders as subject to gang related administrative inquiry.  SOF ¶ 45. With respect to individuals sued in Count VI, plaintiff believes:

> a. James Hurley was motivated to retaliate against him because he was friends with Larry Allen. The only evidence he can give

regarding Hurley are the "records" pertaining to his case ordering him to AdSeg.

b.  Griggs said that he had a stack of plaintiff's IRRs on his desk, indicating he was retaliating.

c.  William Jones was over the AdSeg and had a meeting with Hurley upon placement in AdSeg. Plaintiff knows of no animosity or of a reason Jones would have to retaliate.

d.  Godert signed off on the AdSeg "without being provided and information as to why I'm being held" and she never provided any information as to the delay or the reason for AdSeg.

e.  Rhodes has no known motive to retaliate, but plaintiff believes the release of others from AdSeg before him shows there was no investigation; he concedes that he does not know when the investigation concluded.

f.  Kristin Cutt is motivated by the library grievance plaintiff filed and she is married to Lt. Cutt.

g.  Butler's ill will is shown by his not allowing plaintiff to ask questions or make a statement at his AdSeg hearing.

SOF ¶ 46.

Plaintiff has no constitutional liberty interest in having state officers follow state law or in having prison officials follow prison regulations. *McKee*, 2019 WL 1780567, citing *Phillips*, 320 F. 3d at 847.  Nor does a Missouri statute that creates rights and duties under state law definitively establish rights and duties under federal law.  *Randolph*, 170 F. 3d at 859.  Accordingly, plaintiff had no right to have the TASC hearing on March 26 rather than March 28, 2014.  Moreover, he cannot say what additional information would have been provided.  Accordingly, the two-day delay was not a constitutional deprivation.

Moreover, plaintiff's assertion that he was not told why he was placed in AdSeg is refuted by his admission that he was told he was there pending investigation for gang-related activities.  While he was not given information about the investigation itself, which

- 13 -

was part of the institutional policy for investigations, he cannot deny that an investigation took place.  Monthly TASC hearings were conducted but he declined to attend all but the first and the last hearing.  Although he infers ill motives on the part of Hurley, Griggs, Jones, Godert, Rhodes, Cutt and Butler, he has presented no evidence of such.  The facts do not support a claim for a constitutional violation.

Finally, these facts fail to establish a violation of a clearly established constitutional right occurred.  Accordingly, under *Anderson, Nelson, Young, Bagby and Parrish* qualified immunity bars the action.

**Count 8** –

In Count 8, plaintiff alleges defendants Baker and D. Cutt retaliated against him by placing him in a cell with a known gang member while in AdSeg.  (Doc. 114, ¶¶ 112-24; 226-33.)  Defendants contend the record evidence shows that there was no retaliation as defendants followed institutional cell assignment policy.   (Doc. 253 at 16.)

The evidence demonstrates plaintiff was assigned to a cell in AdSeg according to the institutional classification system.  SOF ¶ 47.  He was not celled with someone on his enemy's list, or with someone on whose enemy's list he was on.  SOF ¶ 48.  While in AdSeg, he was not in a fight, nor was he physically injured.  SOF ¶ 49.  When plaintiff refused to accept the cell assignment, he was secured to a bench until an assignment could be found pursuant to standard procedure.  SOF ¶ 50.

The facts before the Court do not demonstrate retaliation. The evidence establishes that the defendants followed the cell assignment policy; the classification system was applied and neither plaintiff nor his cellmates were declared enemies. Nor is there any evidence of retaliatory motive.  The evidence fails to establish a cause of action for retaliation.

Moreover, plaintiff's claim against defendants Baker and David Cutt are barred by the doctrine of qualified immunity.  Plaintiff has no right to select his cellmate, particularly in AdSeg.  *Hayes,* 625 F.Supp. at 970.  Plaintiff was assigned a cellmate based upon the

- 14 -

institutional classification system; he was not celled with someone on his enemy's list or someone whose enemy's list he was on.  The question is whether Baker and David Cutt should have known that by celling plaintiff, a convicted sex-offender, with a member of a gang that was known to dislike sex offenders, they were violating plaintiff's clearly established constitutional right.  *Parrish*, 594 F. 3d at 1001-02. More than mere mistaken judgment must be involved.  *Bagby*, 98 F.3d at 1098.

Neither party has presented case authority, addressing whether plaintiff had a constitutional right to be reassigned a cellmate in these particular circumstances.  Plaintiff has presented no evidence Baker and David Cutt should have known they were violating plaintiff's rights by applying the institution's policy for cell-mate selection.  Moreover, the validity of the policy was demonstrated by the fact that no fight took place, and no one was injured.  Under *Parrish and Bagby, Baker and David Cutt* have qualified immunity from this claim.

**Count 9 –**

In Count 9, plaintiff alleges that defendants Griggs, Jones, Butler, K. Cutt, and Edwards retaliated against him for filing grievances by denying him access to the law library resulting in a delay in filing a motion to recall a mandate that had been entered in a criminal case 18 years earlier.

NECC policy IS8-1.4 "Access to Law Library Materials" provides:

II DEFINITIONS:

J. **Qualified Legal Claims**: Any legal action challenging an offender's conviction or sentence...this includes direct appeals of conviction, federal and state habeas corpus actions, and civil rights complaints pertaining to conditions of confinement.

K. **Special Units**: Those units who do not have open access to the library including...temporary administrative segregation units.....

III. PROCEDURES:

- 15 -

D. Schedule:
1.c. The warden...may grant an offender with a qualified legal
claim special access...if the offender demonstrates an
exception need, such as:...(2) an identifiable deadline imposed
by court rule or statute within 30 calendar days of the request....

***
F.  Special Units:

  1.  Offenders in special units may not be afforded direct access
to the law library; however, limited access shall be provided as
follows:

  a. offenders in special units must show proof that they are
working on a qualified legal claim.... (1) Classification staff will
verify its using the Qualified Legal Claim Verification form.

  b.  classification staff will provide Special Unit Legal Request
form..., to offenders needing legal material or assistance from
a law library staff member.

SOF ¶ 52.

In applying IS8-1.4, there were differing views as to whether plaintiff needed a Qualified Legal Claim to access the library; the assistant warden thought materials could be obtained upon filing a Special Unit Legal Request, and the law librarian thought a Qualified Legal Claim was needed.  SOF ¶ 53.

No time limit applied to plaintiff's motion, and the motion was ultimately filed and subsequently denied.  SOF ¶¶54-55.  Plaintiff cannot complain that any delay in filing his motion affected the outcome.  SOF ¶ 56.  Nor does he know why Griggs, Edwards, Butler Jones or Cutt would be motivated to deny him library access.   SOF ¶ 72.

 Plaintiff's claim for denial of access to the library fails because plaintiff suffered no actual injury or prejudice. *Baughman*, 2016 WL 5662054 (to state a claim that a law library violates his rights inmate must assert an actual injury to pending or contemplated legal claims.); *Johnson*, 452 F. 3d at 973 (to sustain a claim based

- 16 -

upon denial of access to legal materials, actual injury or prejudice must be shown). Here, plaintiff was under no time limit to file his motion and his motion was ultimately filed.

Moreover, the facts do not demonstrate ill will but uncertainty about the interpretation of policy IS8-1.4.   Plaintiff has produced no evidence that Griggs, Jones, Butler, K.Cutt and Edwards acted with a retaliatory intent and he knows of no reason they would do so.  Therefore there is no factual basis for the retaliation claim.

Finally, these facts fail to evidence a violation of a clearly established constitutional right.  Defendants, therefore, are entitled to qualified immunity.

**Count 11 -**

In Count 11, plaintiff alleges that defendants Hurley, Griggs, Jones, and Godert tacitly authorized retaliation against him, specifically by abrogating their responsibility to investigate his grievances.  (Doc 114, ¶¶ 251-58.)   Defendants argue plaintiff has offered no evidence or motive for retaliation and that his grievances show investigations and responses on the face of the grievances.  (Doc. 254 ¶¶ 58-59.)

In support of their motion, defendants offered evidence in the form of the grievances themselves demonstrating that investigations occurred and that responses were made to plaintiff.  Specifically:

 a.  NECC-10-1786 (Corizon's failure to send numbing gel for first ablation procedure).  The 13-page grievance packet includes medical records and comments from medical providers. The response admits that medical staff inadvertently omitted sending the gel but noted that it was sent for the second procedure, p. 03465. Plaintiff's appeal thanked them for admitting the mistake.

 b.  NECC 10-1842 (Missed medical procedure on 10/15/10).  The 9-page Informal Resolution Request (IRR) packet contains statements from the two CO's explaining that due to staff shortage they had to take an earlier out count that went longer than expected and resulted in leaving NECC late for plaintiff's appointment in Jefferson City, and while in route the doctor's office advised of the need to reschedule.

- 17 -

Plaintiff was sent an explanatory response.

c.  NECC 11-332 (Deletion of medical records). The 30-page grievance packet contains medical records and statements from medical providers explaining the archiving of the hard-chart and their relation to electronic records.  Responses to plaintiff are provided by medical personnel.

d.  NECC 14-136 (Deliberate delay in providing boot cast). The 30-page grievance packet contains medical records and statements from healthcare providers. Responses to plaintiff are provided by medical personnel.

e.  NECC 14-430 (AdSeg placement). The 3-page IRR contains statements from James Rhodes and Larry Allen explaining the reason for the AdSeg placement. The IRR recounts the discussion between plaintiff and K. Cutt and contains plaintiff's signature stating the "IRR Resolved by discussion/withdrawn."

f.  NECC 14-712 (Library access). The 25-page grievance packet contains the applicable policies, statements from witnesses, plaintiff's statement, and explanatory responses from the acting assistant warden, acting warden and Deputy Division Director.

g.  NECC 14-878 (Cellmate/kill grate AdSeg assignment). The 30-page grievance packet contains applicable policy provisions, statements from the Functional Unit Manager and statements to him from the assistant warden, warden and Deputy Division Director explaining the purpose of the metal fins on the doors and the cellmate selection policy.

 h.  NECC 14-1322 (Library access/AdSeg placement). The 78-page grievance packet contains applicable policies, various forms signed by plaintiff, records of the AdSeg hearings, statements of staff involved, including that plaintiff refused to meet with AIO Rhodes, and explanatory responses from the assistant warden, acting warden and Deputy Division Director.

SOF ¶ 59.

As is demonstrated, contrary to plaintiff's assertion, plaintiff's IRRs and grievances were taken seriously.  Witnesses were contacted, statements were obtained, and policies were reviewed.  Plaintiff was responded to directly and in detail.  In one case, plaintiff thanked the medical staff for admitting its mistake.  Plaintiff presented no evidence that Hurley, Griggs, Jones or Godert had any motive to retaliate against him.   SOF ¶ 60.  On this basis, there is no factual basis to support plaintiff's claim that defendants tacitly authorized retaliation.

Under these facts, in addition to failing to state a claim, there was no violation of a clearly established constitutional right and, as a result, defendants are entitled to qualified immunity.

**Count 12 -**

Plaintiff alleges in Count 12 that defendants Baker and D. Cutt subjected him to cruel and unusual punishment in violation of the Eighth Amendment by placing him in a cell with horizontal, chest-level, steel grates or fins on the door.  (Doc. 114, ¶¶ 112-24, 259-71.)

The Eighth Amendment imposes duties on prison officials to provide human conditions of confinement, including the duty to "take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). The Supreme Court has held that failure to alleviate an objectively significant risk of harm does not rise to an Eighth Amendment violation; the prison official must have actually perceived the risk of harm and "consciously disregarded" it.  *Id.* at 837-38.  Where harm is alleged, a plaintiff may recover damages.  *Id.*  Where the risk of harm has not yet ripened into actual injury, a plaintiff may still recover nominal damages. *See, e.g., Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 308 (1986).

Defendants presented evidence that the fins are there to prevent offenders from kicking cell doors and to enhance safety and security of the institution.  SOF ¶ 62.  The cell doors can be damaged by kicking, which can cause the doors to pop open.  SOF ¶ 63.

- 19 -

Plaintiff knows the name of one person who was cut on such a door, but knows no one seriously injured, and is aware that some offenders kick the inside of doors.  SOF ¶ 64. Plaintiff acknowledges that there are other hard objects in the cell, such as the concrete floor, stainless steel toilet, bed frame, and the door itself.  SOF ¶ 65.  The cells have emergency call buttons.  SOF ¶ 66.

The metal fins on the inside of the AdSeg cell doors serve the legitimate penal interest of preventing offenders from kicking the doors, which can be damaged and pop open, and thereby enhance safety and security.  Plaintiff testified about knowing one person who was cut on the fins, but he did not know of anyone seriously injured.  Nor is there any evidence that the metal fins pose a greater hazard than the steel door, the steel toilet, the metal bedframe, or the concrete floor.  There is no basis to find that the fins constitute a danger, much less a showing necessary for an Eighth Amendment violation.

**Count 15 -**

In Count 15, plaintiff alleges that Lt. Allen and Nurse Allen conspired to deprive him of medical care and his constitutional rights in retaliation for filing grievances against Nurse Allen and others concerning his medical care and treatment. (Doc. 114.)  Defendants contend there is no evidence of conspiracy or meeting of the minds.

On November 20, 2014, at about 9:15 p.m., plaintiff was given a slip to go to medical to have his vital signs taken.  SOF ¶ 67.  While plaintiff sat in an area where there were no cameras, six guards were present, including Lieutenant Allen, whispering to each other, sitting, and looking at plaintiff.  SOF ¶ 68.  Although no one spoke to him, plaintiff believed from their body language they were attempting to intimidate him.  SOF ¶ 69-70. Plaintiff does not know if Larry Allen and his wife ever talked about him.  SOF ¶ 71.

As with Count 6, to establish retaliation under §1983, plaintiff must show that the adverse action was motivated at least in part by the exercise of the protected activity. *Revels*, 382 F.3d at 876.  To do this, plaintiff must demonstrate that the retaliatory motive was a "but-for" cause of the action.  *Monroe,* 2020 WL 2322922, *17.   Here, the evidence

reveals that on November 20, 2014, plaintiff was given a slip to go to medical to have his vital signs taken. While he sat in an area where there were no cameras, six guards were present, including Larry Allen, whispering to each other, sitting, and looking at plaintiff. From their body language, plaintiff assumed they were attempting to intimidate him. No one spoke to him.  Plaintiff does not know if Larry Allen and his wife ever talked about him.

Name calling and verbal threats by prison officials, without more, do not invade a federally protected right.  *McDowell,* 990 F.2d at 434.  And even when prison officials harass an inmate in an attempt to dissuade him from filing a grievance, there is no Eighth Amendment violation if the inmate was not denied access to the grievance procedure. *Harris,* 2007 WL 4290739, *6.  Applying *McDowell* and *Harris,* plaintiff's assertion, that a group of guards were standing and whispering in his presence in an attempt to intimate him, without further evidence, fails to support a cause of action.

Likewise, plaintiff has not presented any evidence of a conspiracy.  Plaintiff admits that he does not know whether Larry Allen and his wife ever talked about him.  He rests on argument and speculation that the defendants conspired with one another but provides no evidence to support his allegation.  He also has not provided any evidence of an agreement between the defendants.  *See Habhab*, 536 F.3d at 969 (absent facts showing a meeting of the minds, a conspiracy claim fails).  Both the facts of the event itself and the lack of evidence of a meeting of the minds, defeats any claim for conspiracy.

Moreover, the facts fail to establish a violation of a clearly established constitutional right. Defendant Larry Allen, therefore, has qualified immunity under *Anderson, Nelson, Young, Bagby and Parrish*.

## **CONCLUSION**

For the reasons set forth above,

- 21 -

**IT IS HEREBY ORDERED** that the motion of defendants Larry Allen, Roger Avery, Jacob Baker, Tyree Butler, Lori Calvin, David Cutt, Kristin Cutt, Joyce Edwards, Chantay Godert, Richard Griggs, James Hurley, William Jones, George Lombardi, Jeffrey Reid, and James Rhodes for summary judgment (Doc. 252) **is GRANTED.**

**IT IS FURTHER ORDERED** that there being no remaining claims, this action is dismissed with prejudice.  An appropriate judgment order is filed herewith.


_____/s/   David D. Noce_____
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 27, 2021.

- 22 -